# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| KOREA ADVANCED INSTITUTE OF SCIENCE AND TECHNOLOGY<br><br>    Plaintiff,<br><br>v.<br><br>KIP CO., LTD. f/k/a KAIST IP Co., Ltd.;<br>P&IB CO., LTD.;<br>IN GYOO KANG;<br>KIPB LLC f/k/a KAIST IP US LLC;<br>PAULINA FUNDINGCO, LLC; and<br>U.S. BANK NATIONAL ASSOCIATION<br><br>    Defendants. | CASE NO.:<br><br>Circuit Court of Milwaukee County Case No. 2022CV001342<br><br>**NOTICE OF REMOVAL BY DEFENDANT PAULINA FUNDINGCO, LLC FROM THE CIRCUIT COURT OF MILWAUKEE COUNTY, WISCONSIN**<br><br>Action Filed: March 12, 2022 |

## DEFENDANT PAULINA FUNDINGCO, LLC'S NOTICE OF REMOVAL

Defendant Paulina FundingCo, LLC ("Paulina") hereby removes this Action from the Circuit Court of Milwaukee County, Wisconsin, to the United States District Court for the Eastern District of Wisconsin pursuant to the implementing legislation for the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 9 U.S.C. §§ 203, 205. In this Action, Plaintiff Korea Advanced Institute of Science and Technology ("KAIST") seeks to freeze funds in an escrow account created by emergency order of an international arbitrator seated in Chicago. Because the subject matter of this Action "relates to an arbitration agreement or award falling under the Convention," this Court has original subject matter jurisdiction over the action. Paulina provides the following statement of the grounds for removal:

I.  **RELEVANT BACKGROUND**

1. Pursuant to 28 U.S.C. § 1446(a), a copy of the state court docket, including KAIST's complaint, is attached hereto as Exhibit A ("Compl.").

2. Plaintiff KAIST is a Korean university that owns a Korean patent for FinFET ("Korean Patent"), a technology in nanoelectric semiconductor devices used by companies such as Samsung and Apple. (Compl. ¶¶ 17-18.)

3. In 2012, KAIST entered into a joint venture agreement with Defendant P&IB Co., Ltd., a Korean patent monetization firm, to find ways to monetize and enforce the Korean Patent. (*Id.* ¶ 20.) Together, Plaintiff KAIST and Defendant P&IB incorporated Defendant entity KIP Co. Ltd. ("KIP") for that purpose. (*Id.*)

4. Defendant In-Gyoo Kang is the Chief Executive Officer of P&IB, as well as part owner of KIP. (*Id.* ¶ 9.)

5. In addition to the Korean Patent, Defendant P&IB—through its CEO, Mr. Kang—sought to monetize a U.S. Patent, No. 6,885,055 (the "U.S. Patent"), which covered similar FinFET technology, but is not owned by KAIST. (*Id.* ¶¶ 25-26.)

6. In 2016, P&IB approached a U.S. litigation finance firm about funding litigation to enforce the U.S. Patent against companies such as Samsung (Ex. B, Declaration of Jason Murray ¶ 2.)

7. Both parties created special purpose entities to carry out the investment: KIP created Defendant KAIST IP US LLC, which is now known as KIPB LLC ("KIPB"), as a U.S. subsidiary to hold the rights to enforce and license the U.S. Patent, while the U.S. litigation finance firm created Defendant Paulina FundingCo, LLC ("Paulina") to disburse and receive payments related to the litigation. (Compl. ¶ 34.)

2

8. On or around July 29, 2016, Defendants Paulina, KIP, KIPB, and P&IB (along with third-party Professor Jong-Ho Lee) entered into a Purchase Agreement ("Purchase Agreement") to memorialize the terms of the investment. (Ex. B ¶ 3.)

9. Section 7.4 of the Purchase Agreement contains a mandatory Arbitration provision, which states in relevant part:

> "Any controversy or claim arising out of or relating to this Agreement or any other Transaction Document, or the breach thereof, shall be settled by confidential arbitration in Chicago, Illinois administered by the American Arbitration Association under its Commercial Arbitration Rules, and judgment on the award rendered by the arbitrator(s) may be entered in any court having jurisdiction. For the avoidance of doubt, Seller, the Owners, and Purchaser agree that even claims of emergency equitable relief, such as a temporary restraining order, may be sought only in arbitration pursuant to this Section 7.4…"

(*Id*. ¶ 4.)

10. After the parties executed the Purchase Agreement, Paulina provided KIPB with funds to finance litigation on the U.S. Patent against Samsung in the Eastern District of Texas. (Compl. ¶¶ 36, 56.) That litigation against Samsung resulted in a $400 million jury verdict in KIPB's favor against Samsung, which ultimately culminated in a final damages award of around $203 million after the court ruled on post-trial motions. (*Id*. ¶¶ 27-29.)

11. After the Samsung verdict, a dispute developed between Paulina on the one hand, and KIPB, KIP, P&IB, and third-party Professor Jong-Ho Lee on the other hand, about the amount of proceeds Paulina was entitled to receive under the parties' Purchase Agreement. (Ex. B, ¶ 5.)

12. On August 31, 2020, invoking the arbitration clause in Section 7.4 of the Purchase Agreement, Paulina initiated an American Arbitration Association ("AAA") arbitration against KIPB, KIP, P&IB, and Professor Lee to recover proceeds in connection with the U.S. Patent

litigation. (*Id.* ¶ 6.) The arbitration proceeding was instituted under the AAA's international arbitration division, the International Centre for Dispute Resolution ("ICDR").

13. As part of the relief it sought, Paulina requested an emergency order "directing the Respondents [KIPB, KIP, P&IB, and third-party Professor Lee] to place settlement proceeds in trust pending this arbitration." (*Id.* ¶ 8.)

14. On September 8, 2020, finding that Paulina was likely to succeed on its claims against the respondents and that Paulina was likely to suffer irreparable harm in the form of "loss of the security for which the Applicant bargained under the [Purchase Agreement]," Emergency Arbitrator Walker ordered KIPB, KIP, P&IB, and Professor Lee to place $21 million into an escrow account pending the resolution of the arbitration:

> "For the reasons explained in this Award, and rejecting all requests to the contrary, and subject to any contrary order of the Arbitral Tribunal once constituted, the Emergency Arbitrator orders that: the Respondents direct USD$21 million from any payment from Samsung into … a trust account of another mutually acceptable third-party located in the United States, until such time as ordered by the Emergency Arbitrator or by the Arbitral Tribunal in this Arbitration once constituted …"

(*Id.* ¶ 9.)

15. In compliance with Arbitrator Walker's order, the parties signed an escrow agreement establishing an escrow fund managed by Defendant U.S. Bank National Association (the "Arbitration Escrow Fund"). (*Id.* ¶ 10.) On October 13, 2020, KIPB placed $21 million into the Arbitration Escrow Fund to fulfill Arbitrator Walker's order. (Compl. ¶ 48.)

16. Since the September 8, 2020 order of the Emergency Arbitrator, the parties to the arbitration have entered into two partial settlement agreements under which Paulina has received payment out of the Arbitration Escrow Fund, and KIPB has placed additional money into the Arbitration Escrow Fund. (*Id.* ¶¶ 49-50.)

17. The parties have started the arbitration, which remains ongoing and does not yet have an expected date for a Final Award. (Ex. B, ¶ 11.)

**II.   KAIST'S ACTION**

18. KAIST filed this Action in the Circuit Court of Milwaukee County on March 2, 2022. (No. 2022CV001342, Dkt. No. 7.) At the center of KAIST's claims is the Arbitration Escrow Fund established by order of Emergency Arbitrator Janet Walker. (Compl. ¶ 1.) KAIST seeks an injunction freezing the funds in the Arbitration Escrow Fund. (*Id*. ¶¶ 1, 5.) KAIST claims that P&IB, KIP, and KIPB have improperly diverted Korean Patent proceeds away from KAIST, and that KAIST's only recourse is to collect the money it is owed from the Arbitration Escrow Fund. (*Id*. ¶¶ 1, 4.)

19. In addition to seeking to freeze the Arbitration Escrow Fund, KAIST seeks a declaratory judgment that "KIP must (1) provide KAIST with all documents and information relevant to the Arbitration, (2) keep providing KAIST with all such documents and information for the duration of the Arbitration, and (3) consult with KAIST on strategy and decisions related to the Arbitration." (*Id*. ¶ 57(c).)

20. KAIST asserts various additional claims against KIP, KIPB, P&IB, and In-Gyoo Kang. Among other claims, KAIST alleges KIP breached a 2012 "Business Agreement" between KIP and KAIST in Korea (Compl. ¶¶ 66-73). The Business Agreement contains an arbitration clause that provides: "In the event of a dispute over the contents of this Agreement, it shall be finally resolved in accordance with the arbitration rules of the Korea Commercial Arbitration Board." (Ex. C, Declaration of In-Gyoo Kang ¶ 4.) KAIST has also asserted a claim against P&IB for breach of a 2019 "Management Agreement" entered into between KAIST and P&IB in Korea, (Compl. ¶¶ 74-78), which contains an arbitration provision that provides:

> "In the event that any dispute arises between the parties to the agreement related to the performance of the duties stipulated under this agreement, violation of this agreement, and so on, the parties shall try to resolve such a dispute smoothly based on mutual agreement first, and any issues that still remain to be resolved based on the arbitration of Korea Commercial Arbitration Board."

(Ex. C, ¶ 6.) KAIST's remaining causes of action against KIP, KIPB, P&IB, and In-Gyoo Kang are related to, and arise out of, purported duties under the Business Agreement and Management Agreement. (Compl. ¶¶ 79-94.)

### III. GROUNDS FOR REMOVAL

21. This Court has original subject matter jurisdiction because KAIST's Action relates to an arbitration agreement falling under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("the Convention"), which is codified in Chapter 2 of the Federal Arbitration Act ("FAA"). 9 U.S.C. § 203.

22. District courts have subject matter jurisdiction over "any action or proceeding falling under the Convention," regardless of the amount in controversy. *Felland v. Clifton*, No. 10-CV-664-SLC, 2013 WL 3778967, at *4 (W.D. Wis. July 18, 2013); 9 U.S.C. § 203 ("An action or proceeding falling under the Convention shall be deemed to arise under the laws and treaties of the United States."); *see also Rual Trade Ltd. v. Viva Trade LLC*, 549 F. Supp. 2d 1067, 1071 (E.D. Wis. 2008) (Adelman, J.) (Convention provides a statutory basis for subject matter jurisdiction).

23. A defendant may remove a case brought in state court "[w]here the subject matter of an action or proceeding pending in a State court relates to an arbitration agreement or award falling under the Convention." *Felland*, 2013 WL 3778967, at *4 (citing 9 U.S.C. § 205).

24. The FAA "overrides the well-pleaded complaint rule" as "the ground for removal provided in this section need not appear on the face of the complaint but may be shown in the petition for removal." 9 U.S.C. § 205; *Vaden v. Discover Bank*, 556 U.S. 49, 59 n.9 (2009).

### A. The Underlying Arbitration Agreements Fall Under The Convention

25. The Convention "generally governs any arbitration agreement or arbitral award arising out of a legal relationship, whether contractual or not, which is considered as commercial." *Felland,* 2013 WL 3778967, at *4 (citing 9 U.S. C. § 202).

26. Here, the arbitration agreement in the Purchase Agreement arises out of a legal relationship between Defendants Paulina, KIPB, and KIP, with the parties' legal rights and obligations set forth in the Purchase Agreement. (Ex. B, ¶ 2.) The parties' relationship is commercial in nature, stemming from a litigation funding agreement to finance a patent infringement lawsuit and share the proceeds thereof. (*Id.* ¶¶ 2-3.)

27. Additionally, to fall under the Convention, the arbitration agreement must have some "reasonable relation with one or more foreign states." 9 U.S. C. § 202. The Seventh Circuit has interpreted this provision to mean that the arbitration agreement must "have a significant international element, such as foreign parties, or a dispute about property located abroad, or 'some other reasonable relation with one or more foreign states.'" *Bartlit Beck LLP v. Okada*, 25 F.4th 519 (7th Cir. 2022) (citing *Pine Top Receivables of Ill., LLC v. Banco de Seguros del Estado*, 771 F.3d 980, 988 (7th Cir. 2014) (per curiam)).

28. Here, the underlying arbitration agreement has a "significant international element" and a "reasonable relation with one more foreign states." Three of the five parties to the Purchase Agreement containing the arbitration provision are Korean entities: KIP Co. (Daejeon, Republic of Korea), P&IB (Daejeon, Republic of Korea), and Professor Jong-Ho Lee (a Korean national

7

residing in Seoul, Republic of Korea). (Ex. B, ¶ 3; Compl. ¶¶ 7-9.) The AAA recognized the international element of this arbitration by assigning it to the AAA's international dispute resolution subdivision, the ICDR. (Ex. B, ¶ 6.)

29. Moreover, Plaintiffs' third and fourth causes of action against KIP and P&IB are based on alleged violations of agreements that KAIST entered into with those Korean entities. (Compl. ¶¶ 66-78.) The agreements upon which such claims are based contain arbitration clauses compelling arbitration in Korea with respect to such claims. (Ex. C, ¶¶ 4, 6.)

### B. KAIST's State Court Claims "Relate To" Arbitration Agreements Falling Under The Convention

30. "Where the subject matter of an action or proceeding pending in a State court relates to an arbitration agreement or award falling under the Convention, the defendant or the defendants may, at any time before the trial thereof, remove such action or proceeding to the district court of the United States for the district and division embracing the place where the action or proceeding is pending." 9 U.S. Code § 205.

31. Because "uniformity is best served by trying all [Convention] cases in federal court," Congress enacted the Convention with "one of the broadest removal provisions, § 205, in the statute books." *Acosta v. Master Maint. & Const. Inc.*, 452 F.3d 373, 377 (5th Cir. 2006). Accordingly, "[t]he phrase 'relates to' is plainly broad, and has been interpreted to convey sweeping removal jurisdiction in analogous statutes." *Infuturia Glob. Ltd. v. Sequus Pharms., Inc.*, 631 F.3d 1133, 1137–39 (9th Cir. 2011); *see also Beiser v. Weyler*, 284 F.3d 665, 669 (5th Cir. 2002) (construing "relates to" to mean that "whenever an arbitration agreement falling under the Convention could *conceivably* affect the outcome of the plaintiff's case, the agreement 'relates to' the plaintiff's suit.") (emphasis in original). As long as "it is at least conceivable that the arbitration

8

clause will impact the disposition of the case, that is all that is required to meet the low bar of 'relates to.'" *Infuturia Glob. Ltd.*, 631 F.3d at 1137–39.

33. KAIST's claims "relate to" an arbitration provision which falls under the Convention. The relief KAIST seeks centers around the Arbitration Escrow Fund, which was established at the behest of a AAA arbitrator pending the resolution of claims in an ongoing arbitration under the Convention. (Ex. B, ¶¶ 9-10.)

33. The release of funds from the Arbitration Escrow Fund is directly at issue in the underlying arbitration and will be resolved by order of the arbitration panel once the arbitration concludes. (*Id*. ¶¶ 9-11.)

34. KAIST seeks further remedies related to the arbitration, including requesting that KIP "(1) provide KAIST with all documents and information relevant to the Arbitration, (2) keep providing KAIST with all such documents and information for the duration of the Arbitration, and (3) consult with KAIST on strategy and decisions related to the Arbitration." (Compl. ¶ 57(c).)

35. Additionally, KAIST's third and fourth causes of action allege breach of a Business Agreement between KAIST and KIP, and a Management Agreement between KAIST and P&IB. (Compl. ¶¶ 66-73). Both of those agreements contain express arbitration clauses requiring that such claims be resolved through arbitration in Korea. (Ex. C, ¶¶ 4, 6). Claims alleging breach of an agreement containing an arbitration clause plainly "relate to" that arbitration agreement.

### IV. REMOVAL IS PROPER EVEN THOUGH KAIST IS NOT A PARTY TO ALL OF THE UNDERLYING ARBITRATION AGREEMENTS

36. The Convention is applicable even where the plaintiff is not a party to the underlying arbitration agreement. *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*, 863 F. Supp. 2d 351, 355–56 (S.D.N.Y. 2012) ("[F]or the purposes of removal pursuant to § 205, the relevant inquiry is not whether the parties to the removed action were bound by the

9

relevant arbitration agreement, but whether the state action 'relates to' the arbitration agreement."); *see also Infuturia Glob. Ltd.*, 631 F.3d at 1137–39 (holding that privity of contract is not prerequisite to removal under § 205 because "§ 205 focuses only on the relatedness of the subject matter of [the] action ... to an arbitration agreement"); *Beiser*, 284 F.3d at 669-70 (even though plaintiff did not sign arbitration agreement in his personal capacity, his tortious interference claims were removable under § 205, because the arbitration could conceivably affect his claims).

37. Although Plaintiff KAIST is not a party to the Purchase Agreement—and therefore not a party to the arbitration clause between Paulina, KIP, KIPB, and P&IB—the Convention and its removal procedure applies here because the arbitration could, and indeed certainly does, affect KAIST's claims. The arbitration panel is to decide who has a right to the money currently held in the Arbitration Escrow Fund, and KAIST seeks to collect the same money from the same Arbitration Escrow Fund.

38. The funds KAIST seeks to collect were placed in the account by emergency order of an arbitrator, and will be disbursed once the arbitration panel has issued an Award. (Ex. B, ¶ 9.) Based on these facts, KAIST's action undoubtedly "relates to" the subject matter of the arbitration.

39. In addition, KAIST is a party to arbitration agreements that apply with respect to KAIST's third and fourth causes of action against KIP and P&IB. (Ex. C, ¶¶ 3, 5.)

## V. PAULINA'S NOTICE OF REMOVAL IS TIMELY

40. Paulina timely filed its Notice of Removal. KAIST filed this Action on March 2, 2022, and Paulina accepted service on March 4, 2022. Seven days later, Paulina filed this Notice of Removal. The Convention allows any defendant to remove an action "at any time before the trial thereof." 9 U.S.C. § 205. Neither this Court nor the state court has entered any rulings or orders in this Action, much less set a trial date or started a trial. Paulina's Notice of Removal is therefore timely.

## VI. ALL DEFENDANTS CONSENT TO THE REMOVAL

41. All defendants in this Action consent to removal, as indicated by their signing below (*infra*, signature page).

42. By filing this Notice of Removal, Paulina understands that no Defendant hereby waives its rights (if any) to object to service of process, the sufficiency of process, jurisdiction over the person, or venue, and Paulina specifically reserves the rights of all Defendants to assert any defenses and/or objections to which they may be entitled.

## CONCLUSION

WHEREFORE, Paulina hereby removes this action from the Circuit Court of Milwaukee County, Wisconsin, to the United States District Court of the Eastern District of Wisconsin pursuant to 9 U.S.C. § 205.

Dated: March 12, 2022

Respectfully submitted,

*/s/ Steven M. Biskupic*
Steven M. Biskupic, SBN 1018217
Justin J. Dreikosen, SBN 1094426
BISKUPIC & JACOBS, S.C.
1045 West Glen Oaks Lane, Suite 106
Mequon, WI 53092
sbiskupic@biskupicjacobs.com
Office: 262-241-3300
Fax: 866-700-7640

*/s/ Adam L. Hoeflich*
Adam L. Hoeflich (No. 6209163)
Anastasiya Maione (*admission pending*)
Lee Mason (*admission pending*)
BARTLIT BECK LLP
54 W. Hubbard Street, Suite 300
Chicago, IL 60654
(312) 494-4400
adam.hoeflich@bartlitbeck.com
stacy.maione@bartlitbeck.com
lee.mason@bartlitbeck.com

Jason C. Murray (*admission pending*)
BARTLIT BECK LLP
1801 Wewatta Street, Suite 1200
Denver, CO 80202
(303) 592-3100
jason.murray@bartlitbeck.com

*Counsel for Defendant Paulina FundingCo, LLC*

12

Consent to Remove this Action from the Circuit Court of Milwaukee County, Wisconsin, to the United States District Court of the Eastern District of Wisconsin on behalf of Defendants:

_____
Authorized Signatory for:
P&IB CO., LTD., Defendant

_____
Authorized Signatory for:
KIPB LLC f/k/a KAIST IP US LLC, Defendant

_____
In-Gyoo Kang, Defendant

_____
Authorized Signatory for:
KIP CO., LTD. f/k/a KAIST IP Co., Ltd., Defendant


_____
Authorized Signatory for:
U.S. Bank National Association, Defendant

**Consent to Remove this Action from the Circuit Court of Milwaukee County, Wisconsin, to the United States District Court of the Eastern District of Wisconsin on behalf of Defendants:**


_____
Authorized Signatory for:
P&IB CO., LTD., Defendant


_____
Authorized Signatory for:
KIPB LLC f/k/a KAIST IP US LLC,
Defendant


_____
In-Gyoo Kang, Defendant


_____
Authorized Signatory for:
KIP CO., LTD. f/k/a KAIST IP Co., Ltd.,
Defendant

*/s/ [signature]*
_____
Authorized Signatory for:
U.S. Bank National Association, Defendant

13

# CERTIFICATE OF SERVICE

I hereby certify that on this 12th day of March, 2022, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing. Based on the records currently on file, the foregoing was served by electronic mail to the following:

| | |
|---|---|
| Jerome C. Mohsen<br>Daniel Manna<br>Gass Turek LLC<br>241 N. Broadway, Suite 300<br>Milwaukee, Wisconsin 53202<br>(414) 223-3300<br>mohsen@gassturek.com<br>manna@gassturek.com | Ted Cheesebrough<br>U.S. Bank<br>U.S. Bank Center<br>101 E. 5th St.<br>Saint Paul, MN 55101<br>(651) 466-8057<br>ted.cheesebrough@usbank.com |
| Derek H. Swanson<br>Hyung-Gyu (Leo) Sun<br>Dunlap Bennett & Lidwig<br>8003 Franklin Farms Dr., Suite 220<br>Richmond, VA 23229<br>(703) 777-7319<br>dswanson@dblawyers.com<br>hsun@dbllawyers.com | |

                                                */s/ Steven M. Biskupic*
                                                Steven M. Biskupic