# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WISCONSIN

KOREA ADVANCED INSTITUTE OF
SCIENCE AND TECHNOLOGY

       Plaintiff,

      v.

KIP CO., LTD. f/k/a KAIST IP CO., LTD.;
P&IB CO., LTD.;
IN GYOO KANG;
KIPB LLC f/k/a KAIST IP US LLC;
PAULINA FUNDINGCO, LLC; and
U.S. BANK NATIONAL ASSOCIATION

       Defendants.

CASE NO.:  2022-CV-00317

## MEMORANDUM IN SUPPORT OF PAULINA FUNDINGCO, LLC'S MOTION TO DISMISS UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................................................... 1

BACKGROUND ...................................................................................................................... 3

ARGUMENT ............................................................................................................................ 6

I.      LEGAL STANDARD .................................................................................................. 7

II.     THE COURT SHOULD DISMISS KAIST'S TORTIOUS INTERFERENCE
        CLAIM AGAINST PAULINA ...................................................................................... 7

        A.      KAIST Failed To Plead That Paulina Intentionally Interfered With Its
                Contractual Rights ............................................................................................. 8

        B.      KAIST's Acknowledgment That Paulina Was Justified In Protecting Its
                Contractual Rights Forecloses KAIST's Claim ................................................ 12

III.    THE COURT SHOULD DISMISS KAIST'S UNJUST ENRICHMENT CLAIM
        AGAINST PAULINA ................................................................................................... 14

        A.      KAIST Fails To Allege That Paulina's Recovery Of Funds From The
                Arbitration Escrow Fund Is Inequitable Or Unjust ............................................ 15

        B.      KAIST's Unjust Enrichment Claim Turns Creditor Priority On Its Head ........... 19

CONCLUSION ......................................................................................................................... 20

# TABLE OF AUTHORITIES

**Cases**

*Always Towing & Recovery, Inc. v. City of Milwaukee*,
  2 F.4th 695 (7th Cir. 2021) ................................................................................. 20

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ..................................................................................... 7, 9

*Athey Prods. Corp. v. Harris Bank Roselle*,
  89 F.3d 430 (7th Cir. 1996) ............................................................................. 16

*Augustine v. Anti–Defamation League of B'nai B'rith*,
  249 N.W.2d 547 (Wis. 1977) .............................................................................. 9

*B.E.L.T., Inc. v. Wachovia Corp.*,
  403 F.3d 474 (7th Cir. 2005) ............................................................................ 19

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ..................................................................................... 7, 9

*Blake v. Levy*,
  464 A.2d 52 (Conn. 1983) ................................................................................ 13

*Briesemeister v. Lehner*,
  720 N.W.2d 531 (Wis. Ct. App. 2006) .......................................................... 8, 12, 13

*Car Carriers, Inc. v. Ford Motor Co.*,
  745 F.2d 1101 (7th Cir. 1984) ............................................................................ 7

*Cudd v. Crownhart*,
  364 N.W.2d 158 (Wis. Ct. App. 1985) .................................................................. 13

*Dinerstein v. Google, LLC*,
  484 F. Supp. 3d 561 (N.D. Ill. 2020) .................................................................... 9

*Fischer v. Renner*,
  348 Wis. 2d 763, 833 N.W.2d 873 (Table), 2013 WL 2319487 (Wis. Ct. App. 2013)..... passim

*Foseid v. St. Bank of Cross Plains*,
  541 N.W.2d 203 (Wis. Ct. App. 1995) ............................................................... 9, 10

*Gould v. Artisoft, Inc.*,
  1 F.3d 544 (7th Cir. 1993) ................................................................................. 7

*Gruen Indus., Inc. v. Biller*,
  608 F.2d 274 (7th Cir. 1979) ........................................................................... 9, 10

ii

*High Falls Brewing Co., LLC v. Bos. Beer Corp.*,
  852 F. Supp. 2d 306 (W.D.N.Y. 2011) ................................................................. 10

*In re Wright*,
  192 B.R. 946 (Bankr. W.D. Wis. 1996) ................................................................ 20

*Korea Advanced Inst. of Sci. & Tech. v. KIP Co., et al*,
  No. 2022CV001342 (Wis. Cir. Ct. Mar. 2, 2022) ................................................. 5

*MB Fin. Bank, N.A. v. Kartel Plastics, Inc.*,
  No. ED CV 17-24-RGK (SPx), 2017 WL 7201875 (C.D. Cal. Mar. 9, 2017) ......... 19

*McCauley v. City of Chi.*,
  671 F.3d 611 (7th Cir. 2011) ............................................................................ 7

*Nat'l Am. Ins. Co. v. Ind. Lumbermens Mut. Ins. Co.*,
  221 F.3d 1339 (Table) (per curiam), 2000 WL 975176 (7th Cir. 2000) ........... 14, 17, 18

*Noble Sys. Corp. v. Alorica Cent., LLC*,
  543 F.3d 978 (8th Cir. 2008) ........................................................................... 14

*Puttkammer v. Minth*,
  83 Wis. 2d 686, 266 N.W.2d 361 (1978) ........................................................ 15

*Season Comfort Corp. v. Ben A. Borenstein Co.*,
  655 N.E.2d 1065 (Ill.App.Ct. 1995) ................................................................. 18

*Small v. Beverly Bank*,
  936 F.2d 945 (7th Cir. 1991) ........................................................................... 20

*Suffield Dev. Assocs. Ltd. P'ship v. Nat'l Loan Invs., L.P.*,
  779 A.2d 822 (Conn. App. 2001), *aff'd in relevant part*,
  *rev'd on other grounds*, 802 A.2d 44 (Conn. 2002) ........................................ 11

*Tamayo v. Blagojevich*,
  526 F.3d 1074 (7th Cir. 2008) ......................................................................... 12

*Tax Servs. Of Am., Inc. v. Mitchell*,
  No. 07-CV-00249-REB-PAC, 2007 WL 4522472 (D. Colo. Dec. 18, 2007) ......... 13

*Tri-State Mech., Inc. v. Northland Coll.*,
  273 Wis. 2d 471, 681 N.W.2d 302 (Wis. Ct. App. 2004) .................................. 14

*United States v. Goforth*,
  465 F.3d 730 (6th Cir. 2006) ................................................................ 14, 17, 18, 19

*Universal Forest Prods. E. Div., Inc. v. Morris Forest Prods., LLC*,
  558 F. Supp. 2d 893 (E.D. Wis. 2008) ............................................................. 16

iii

*Vill. of Rockton, Ill. v. Sonoco Prod. Co.*,
   135 F. Supp. 3d 700 (N.D. Ill. 2015) .................................................................... 17

*Wolverine World Wide, Inc. v. CAMS, Inc.*,
   No. 1:07-CV-1229, 2009 WL 701010 (W.D. Mich. Mar. 13, 2009) .......................... 8

**Statutes**

Uniform Commercial Code § 9-103(3)(b) .................................................................... 20

**Other Authorities**

17 Texas Forms Legal & Bus. § 42:59 ........................................................................ 19

Dan B. Dobbs, *Law of Remedies* § 4.1(2) (1993) ....................................................... 18

*Restatement (Second) of Torts* § 766 (1979) ......................................................... 9, 10

*Restatement (Second) of Torts* § 767 (1979) ............................................................. 12

*Restatement (Second) of Torts* § 773 (1979) ............................................................. 12

Restatement of Restitution § 14(a) (1937) ................................................................... 18

*Wisconsin Civil Jury Instructions*, JI-2780 ................................................................ 9

## INTRODUCTION

Plaintiff Korea Institute of Science and Technology ("KAIST") alleges that Paulina FundingCo, LLC ("Paulina") has committed a tort by engaging in *successful* breach of contract litigation. KAIST's theory is that, if Paulina continues to prevail in its litigation, the parties that Paulina sued in that earlier proceeding (who are also defendants here) may not have enough money to satisfy debts they supposedly owe to KAIST. Because meritorious litigation is not a tort, KAIST's claims against Paulina must be dismissed.

This case is the second of two legal actions brought against the "KIP entities."[1] The first action is an arbitration Paulina brought nearly two years ago to enforce a litigation funding contract. Among other things, Paulina alleges that the KIP entities obtained a $200+ million final judgment and subsequent settlement in patent infringement litigation funded by Paulina, but then refused to pay Paulina its bargained-for investment return. Paulina's arbitration is ongoing but has already been successful. Paulina has obtained tens of millions of dollars in partial settlement payments from the KIP entities through the arbitration, and has also obtained an order from an emergency arbitrator directing the KIP entities to place yet more money into an escrow account pending the final resolution of the case.

The second action against the KIP entities is this one. Here, KAIST seeks to recover against the KIP entities (KAIST's business partners) for breach of contract and related torts. The gravamen

---

[1] The KIP entities are comprised of all defendants aside from Paulina and U.S. Bank National Association: the related entities KIP Co., Ltd. (f/k/a KAIST IP Co., Ltd.), P&IB Co., Ltd., and KIPB LLC (f/k/a KAIST IP US LLC), as well as In Gyoo Kang, the Chief Executive Officer of P&IB and part owner of KIP Co., Ltd. (Compl. ¶ 8.) For the sake of simplicity, since the specific entities are not relevant to the arguments presented here, this motion will refer to the KIP entities collectively.

1

of KAIST's complaint is that the KIP entities wrongfully withheld KAIST's portion of certain patent litigation settlement proceeds.

But KAIST also throws in claims against Paulina. In its original complaint here, KAIST named Paulina as a defendant without even attempting to identify any alleged wrongdoing by Paulina. Dkt. 1-1 ("Original Compl."). After Paulina's motion to dismiss pointed out that glaring omission, Dkt. 27, KAIST filed an amended complaint against Paulina asserting two classic claims-of-last-resort: unjust enrichment and tortious interference. Dkt. 30 ("Compl."). The Amended Complaint asserts that Paulina acted wrongfully by enforcing its contractual rights against the KIP entities, merely because those entities *also* allegedly owe money to KAIST.

KAIST's claims against Paulina are not cognizable and must be dismissed. Even if KAIST has a claim against the KIP entities (and we do not know if it does), Paulina's efforts to collect against those same debtors cannot amount to a tort against KAIST. KAIST's tortious interference claim faults Paulina for successfully litigating a contract that predates **by three years** KAIST's own contracts with the KIP entities. KAIST has failed to allege that Paulina's enforcement of its own rights could rise to the level of interference, or that Paulina acted with the requisite intent to interfere with KAIST's alleged rights, or that Paulina's successful litigation could somehow be legally unjustified. KAIST's unjust enrichment claim is legally deficient for a similar reason: courts have consistently rejected the notion that enforcing rights under a valid contract is "unjust" or "inequitable" in any way contemplated by the tort. To the contrary, given that Paulina is a *secured* creditor, while KAIST is not, the well-settled system for creditor priority would give Paulina the right to collect before KAIST—not the other way around.

A creditor does not commit a tort against another creditor merely by litigating to collect on a debt. Both of KAIST's claims against Paulina should be dismissed with prejudice.

2

Plaintiff KAIST is a Korean university that owns a Korean patent for certain fin field-effect transistor ("FinFET") technology used in semiconductor devices by companies such as Samsung and Apple ("Korean Patent"). (Compl. ¶¶ 5, 16–17.) In 2012, KAIST entered into a joint venture with a Korean patent monetization firm, Defendant P&IB Co., Ltd. ("P&IB") to monetize the Korean Patent. (*Id*. ¶ 19.) Together, KAIST and P&IB incorporated Defendant KIP Co. Ltd. ("KIP") in Korea for that purpose. (*Id*.) On July 2, 2012, KAIST and KIP signed a Business Agreement dictating the terms of their arrangement. (*Id.* ¶ 20.) KAIST does not allege that Paulina tortiously interfered with the Business Agreement. (*Id.* ¶ 93.)

In July 2016, P&IB also sought to monetize Patent No. 6,885,055, a U.S. patent covering similar FinFET technology ("U.S. Patent"). (*Id*. ¶ 24.) At the time, third-party Professor Jong-Ho Lee owned the rights to the U.S. Patent; KAIST did not claim, and has never claimed, any ownership stake in the U.S. Patent. (*Id*.) Unable to shoulder the costs of litigating against giants such as Samsung and Apple on its own, P&IB approached a U.S. litigation finance firm about funding litigation to enforce the U.S. Patent. (*Id*. ¶ 43.) Both parties created new companies to carry out the litigation funding arrangement: KIP created Defendant KIPB LLC ("KIPB") and the U.S. litigation finance firm created Defendant Paulina. (*Id*. ¶ 24.) On July 29, 2016, KIPB and Paulina executed a Purchase Agreement to memorialize the terms of the litigating funding arrangement ("Purchase Agreement"). (*Id*. ¶ 44.)

Under the Purchase Agreement, Paulina provided KIPB with $6 million to fund litigation related to the U.S. Patent in exchange for a portion of any resulting profits. (*Id*. ¶ 43.) KIPB used

---

[2] For purposes of this motion only, Paulina assumes the truth of the factual allegations contained in the Amended Complaint. Paulina does not admit the truth of KAIST's allegations.

Paulina's money to initiate a lawsuit against Samsung in the Eastern District of Texas for infringement of the U.S. Patent. (*Id*. ¶ 25.) That lawsuit resulted in a $400 million verdict against Samsung, which culminated in a final judgment of about $203 million after post-trial motions. (*Id*. ¶¶ 26–28.)

After the Samsung verdict, a dispute developed between Paulina and the KIP entities about the amount of litigation proceeds Paulina was entitled to receive under the Purchase Agreement. (*Id*. ¶¶ 45–46.) Invoking the Purchase Agreement's arbitration clause, Paulina filed an arbitration demand on August 31, 2020. (*Id*. ¶ 45.) Paulina also sought and obtained an emergency order directing KIPB to place proceeds from the U.S. Patent lawsuit in an escrow account pending a final award in the arbitration ("Arbitration Escrow Fund"). (*Id*. ¶¶ 46–47.) In granting emergency relief, the emergency arbitrator relied on the fact that Paulina is not merely a general creditor of KIPB, but has an established security interest in KIPB's settlement proceeds. *See* Exhibit A (Paulina FundingCo UCC-1 Financing Statement, Initial Filing No. 16-0025292693 Texas Dept. of State (Aug. 1, 2016); Continuation, No. 21-00293716 (July 13, 2021); Amendment, No. 22-00113571 (Mar. 7, 2022); Initial Filing No. 22-0011357233 (Mar. 7, 2022); Amendment, No. 22-00134535 (Mar. 17, 2022); Amendment, No. 22-00134536 (Mar. 17, 2022) (hereinafter "Paulina UCC Statements")). KAIST is not a party to the arbitration, the Purchase Agreement, or the escrow agreement governing the Arbitration Escrow Fund.

Paulina's arbitration against the KIP entities has been very successful. The KIP entities have already paid Paulina about $24 million in connection with the arbitration and have deposited another $23 million in trust pending the final outcome of the case. Compl. ¶¶ 1, 42. The arbitration remains ongoing, and the parties do not expect a final award for several months. (*Id.* ¶ 51.)

Meanwhile, a separate dispute developed between KAIST and the KIP entities over the revenue owed to KAIST under its contracts with the KIP entities for the Korean Patent. On October 2, 2019, KAIST entered into two agreements (the Management Agreement and Revenue Sharing Agreement) with the KIP entities which "sought to formalize the manner in which KAIST would receive revenue from the use of FinFET intellectual property from KIP." (*Id.* ¶¶ 29-31.) These contracts were signed *three years* after the 2016 Purchase Agreement between Paulina and the KIP entities. *Id.*

On March 2, 2022, KAIST filed a complaint in the Circuit Court of Milwaukee County (which Paulina removed to this Court, Dkt. 1) asserting claims for breach of contract, breach of good faith and fair dealing, and breach of fiduciary duty against the KIP entities. *See Korea Advanced Inst. of Sci. & Tech. v. KIP Co., et al*, No. 2022CV001342 (Wis. Cir. Ct. Mar. 2, 2022), Dkt. 1-1 (KAIST's "Original Complaint"), at ¶¶ 56–83. Even though the $203 million judgment against Samsung arose from the U.S. Patent (in which KAIST alleges no ownership interest) rather than the Korean Patent, KAIST claims that its contracts with the KIP entities entitle it to a portion of the money in the Arbitration Escrow Fund. (*Id.* ¶¶ 24–28, 53.)

KAIST's Original Complaint also named Paulina and U.S. Bank as defendants alongside the KIP entities but pleaded only claims for declaratory judgment and injunctive relief without asserting any wrongdoing by, or underlying cause of action against, Paulina or U.S. Bank. *See* Original Compl. at 4. KAIST did not—and cannot—plead any contract claims against Paulina or U.S. Bank because, as it admits, it has no privity with either. Compl. ¶ 61. On March 30, 2022, Paulina and U.S. Bank filed a joint Motion to Dismiss KAIST's Original Complaint on the grounds that KAIST's allegations violated longstanding legal principles by (1) asserting only remedial

claims against Paulina and U.S. Bank without any underlying legal claims and (2) seeking a freeze on the Arbitration Escrow Fund before securing a judgment entitling it to any relief. Dkt. 27.

In lieu of responding to Paulina and U.S. Bank's Motion to Dismiss, KAIST filed an amended complaint on April 20, 2022. Dkt. 30. KAIST's Amended Complaint asserts against Paulina, for the first time, claims for tortious interference with contract and unjust enrichment. *Id.* at Counts VI & VII. Remarkably, however, KAIST's Amended Complaint does not include any new factual allegations to support its new claims against Paulina. KAIST does not allege, for example, that Paulina committed fraud, misrepresentation, breach of contract, or any other wrongdoing in its dealings with the KIP entities. Nor does KAIST dispute that the Purchase Agreement under which Paulina seeks to collect from the Arbitration Escrow Fund is a binding, valid, and enforceable contract.

To the contrary, KAIST's claims are based on the allegation that KAIST will be harmed because Paulina will continue to succeed in its arbitration. KAIST alleges that "millions of dollars have been *and will be diverted to Paulina* instead of going to KAIST." *Id.* ¶ 82 (emphasis added); *see also id.* ¶ 1. KAIST claims that it will suffer harm because Paulina's success will dampen the prospects of KAIST collecting on its own debts from the KIP entities. *Id.* ¶ 95.

## ARGUMENT

KAIST's allegations are based on the misguided assumption that one creditor commits a tort by seeking to collect from a debtor who also owes money to another creditor. Wisconsin law squarely forecloses this claim. If the KIP entities owe KAIST money, then KAIST is free to pursue its own claims against them, just as Paulina has done. And to the extent that the KIP entities lack money to pay both creditors, there are well-established rules for assigning priority between creditors. But tort law is not among them.

6

## I. LEGAL STANDARD

To survive a motion to dismiss, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). That standard requires the plaintiff to plead "factual content" that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *McCauley v. City of Chi.*, 671 F.3d 611, 615 (7th Cir. 2011). A complaint will not survive a motion to dismiss unless it alleges facts that support a plausible inference that the plaintiff will be able "to sustain recovery under *some* viable legal theory." *Twombly*, 550 U.S. at 562 (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984) (emphasis in original)).

KAIST does not specify the state law under which it brings its common law claims against Paulina. *See* Compl. at Counts VI & VII. However, "[w]here the parties have not identified a conflict between the two bodies of state law that might apply to their dispute, [courts] will apply the law of the forum state[.]" *Gould v. Artisoft, Inc.*, 1 F.3d 544, 549 n.7 (7th Cir. 1993). Paulina is not aware of any conflict between Wisconsin law and any other state that would negate the fundamental deficiencies in KAIST's unjust enrichment and tortious interference claims. For that reason, Paulina assumes Wisconsin law applies for purposes of this motion only, while reserving its right to argue for application of a different state law at a later stage in this proceeding if a relevant conflict of law arises.

## II. THE COURT SHOULD DISMISS KAIST'S TORTIOUS INTERFERENCE CLAIM AGAINST PAULINA

KAIST's tortious interference with contract claim against Paulina alleges that Paulina interfered with two contracts KAIST entered into with the KIP entities in 2019, by bringing an arbitration to enforce a Purchase Agreement Paulina signed with the KIP entities ***three years***

*earlier* in 2016. KAIST's effort to recast its non-existent claims against Paulina as tortious interference fails as a matter of law.

Wisconsin has adopted the Restatement (Second) of Torts for tortious interference with contract claims. *Wolverine World Wide, Inc. v. CAMS, Inc.*, No. 1:07-CV-1229, 2009 WL 701010, at *4 (W.D. Mich. Mar. 13, 2009) (cataloging cases); *see also Briesemeister v. Lehner*, 720 N.W.2d 531, 543 n.8 (Wis. Ct. App. 2006). ("We have adopted § 766 of the *Restatement (Second) of Torts*"). "The elements of a claim for tortious interference with a contract are: (1) the plaintiff had a contract or a prospective contractual relationship with a third party, (2) the defendant interfered with that relationship, (3) the interference by the defendant was intentional, (4) there was a causal connection between the interference and damages, and (5) the defendant was not justified or privileged to interfere." *Id.* at 542.

KAIST's claims fall short for two independent reasons. First, KAIST has failed to plead facts establishing the core second and third elements of the claim, that Paulina intentionally interfered with KAIST's contract. Second, KAIST has pleaded facts that conclusively establish that, even if Paulina interfered with KAIST's contracts with the KIP Entities, it was justified in doing so by enforcing its own rightful contractual rights through litigation. Each of these failures requires dismissal of Count VII of KAIST's Amended Complaint.

### A. KAIST Failed To Plead That Paulina Intentionally Interfered With Its Contractual Rights

KAIST has failed to plead the core element of its tortious interference claim, that Paulina intentionally interfered with its two 2019 contracts with the KIP entities. At best, KAIST pleads that the KIP entities cannot perform both their contracts with KAIST and their contract with Paulina, but that is insufficient to allege tortious interference as a matter of law.

8

"To recover for interference with contract under Wisconsin law, it is essential that the defendant act intentionally. To have the requisite intent, the defendant must act with a purpose to interfere with the contract." *Gruen Indus., Inc. v. Biller*, 608 F.2d 274, 282 (7th Cir. 1979). While the Restatement notes that interference may also be found where the defendant "knows that the interference is certain or substantially certain to occur as a result of his action," *Restatement (Second) of Torts* § 766, cmt. J (1979), the Wisconsin Supreme Court has limited its application:

> The supreme court has held, however, that this section applies only where 'it is apparent *at the outset* that the alleged tortfeasor acted with the intention to interfere with the [prospective contract] or acted in such a fashion and for such purpose that he knew that the interference was certain, or substantially certain, to occur.'

*Foseid v. St. Bank of Cross Plains*, 541 N.W.2d 203, 210 n.11 (Wis. Ct. App. 1995) (quoting *Augustine v. Anti–Defamation League of B'nai B'rith*, 249 N.W.2d 547, 554 (Wis. 1977)); *see also Wisconsin Civil Jury Instructions*, JI-2780 (Intentional Interference with Contractual Relationship) (2020), at 5 (noting the same limitation).

KAIST does not attempt to plead facts showing Paulina's intent. The only allegations that even touch on the issue are that Paulina "is intentionally inducing KIP to breach the contracts" and that such conduct "is wrongful, unjustified, and improper." Compl. ¶¶ 94–95. But "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Removing these "'[t]hreadbare recitals of the elements,'" KAIST "has not pleaded that [the defendant] acted with such a purpose." *Dinerstein v. Google, LLC*, 484 F. Supp. 3d 561, 594 (N.D. Ill. 2020) (quoting *Iqbal*, 556 U.S. at 678) (dismissing tortious interference with contract claim for failure to plead intent).

Likewise, KAIST fails to plead (and cannot plead) that Paulina had knowledge of KAIST's contracts with the KIP entities at the relevant time. "To show that a defendant had the requisite intent to interfere, it is necessary to show that he had actual knowledge or sufficient

9

notice of the existence of a contract." *Gruen Indus.*, 608 F.2d at 282. The Complaint alleges that "Paulina is aware of the contractual relationships and has access to the original as well as certified translations of the contracts." Compl. ¶ 94. But Paulina's alleged knowledge of those contracts today says nothing about whether Paulina knew of them at the time of the alleged interference. KAIST pleads that Paulina tortiously interfered with two contracts: the Management Agreement and the Revenue Sharing Agreement, *Id*. ¶ 93, both of which were executed on October 2, 2019. *Id*. ¶¶ 30, 31, 37, 93. Paulina and KIPB executed the Purchase Agreement ***three years earlier*** on July 29, 2016. *Id*. ¶ 44. It is temporally impossible for Paulina to have known about KAIST's future contracts when Paulina entered the allegedly interfering Purchase Agreement. Nor does KAIST allege that Paulina had knowledge of these subsequent contracts with the KIP entities at the time Paulina initiated arbitration to enforce the Purchase Agreement. Given the facts KAIST has pleaded, Paulina cannot possibly have had "knowledge" or "notice" "*at the outset*," as required by Wisconsin law. *Gruen Indus.*, 608 F.2d at 282; *Foseid*, 541 N.W.2d at 210 n.11.

Even were KAIST able to plead Paulina's knowledge of the contracts at the relevant time, its allegations fall short of showing interference. "One does not induce another to commit a breach of contract with a third person … when he merely enters into an agreement with the other with knowledge that the other cannot perform both it and his contract with the third person." *Restatement (Second) of Torts* § 766, cmt. n (1979). Even if KAIST had pleaded Paulina's knowledge of KAIST's contracts and of the KIP entities' inability to perform them—and it has not—entering a separate contract that precludes KAIST's contract from being performed is not tortious interference.

Courts applying the Restatement have dismissed similar claims. *High Falls Brewing Co., LLC v. Bos. Beer Corp.*, 852 F. Supp. 2d 306, 312 (W.D.N.Y. 2011) (dismissing complaint because

10

"as a matter of law, that Defendant has not pleaded a plausible claim for tortious interference with contract, since, at most, Movants entered a contract with HFBC, while knowing that HFBC could not perform both its contract with Movants and its contract with Defendant."); *see also Suffield Dev. Assocs. Ltd. P'ship v. Nat'l Loan Invs., L.P.*, 779 A.2d 822, 830–31 (Conn. App. 2001), *aff'd in relevant part, rev'd on other grounds*, 802 A.2d 44 (Conn. 2002) ("In other words, the plaintiff is essentially complaining that it is not able to keep all of the money that it thought that it was going to be able to keep from its contract with BankBoston due to the defendants' actions in executing on the stipulated judgment proceeds that the plaintiff had received. Although this may have harmed the plaintiff financially, it does not amount to a tortious interference with contractual relations.").

In addition to being foreclosed by controlling law, KAIST's theory would lead to absurd results. If Paulina has tortiously interfered with KAIST's contract merely by enforcing Paulina's own contract, then the reverse is equally true: KAIST is tortiously interfering with Paulina's rights by bringing this suit. After all, KAIST knew of Paulina's contract with (and arbitration against) the KIP entities at the outset of this lawsuit, yet KAIST seeks to enjoin the KIP entities from paying Paulina money they contractually owe to Paulina. Original Compl. ¶¶ 60–65. It cannot possibly be the case that both creditors tortiously interfere with each other merely by enforcing their own respective rights.

In short, KAIST has failed to plead intent, or that Paulina's actions, even with intent, would amount to tortious interference of contract. KAIST's attempts to stretch tortious interference liability fail as a matter of law.

**B.      KAIST's Acknowledgment That Paulina Was Justified In Protecting Its Contractual Rights Forecloses KAIST's Claim**

Separately, KAIST's tortious interference claim must be dismissed because KAIST has affirmatively pleaded that Paulina was "justified" for any interference that occurred. KAIST claims that "Paulina, by seeking to recover funds contractually owed to KAIST and causing them to remain frozen in the Trust Account, is intentionally inducing KIP to breach the contracts." Compl. ¶ 95. But Wisconsin law is clear that "[a] party has a right to protect what he believes to be his legal interest" through litigation. *Briesemeister*, 720 N.W.2d at 543–44. While Paulina bears the burden of showing justification, *id.*, "a plaintiff pleads himself out of court when it would be necessary to contradict the complaint in order to prevail on the merits." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1086 (7th Cir. 2008) (citation omitted).  KAIST has pleaded facts that definitively prove Paulina's justification.

The Restatement prescribes narrow circumstances wherein the initiation of litigation can constitute tortious interference. "Prosecution of civil suits" is "ordinarily wrongful if the actor has no belief in the merit of the litigation or if, through having some belief in its merit, he nevertheless institutes or threatens to institute the litigation in bad faith, intending only to harass the third parties and not bring his claim to definitive adjudication." *Restatement (Second) of Torts* § 767, cmt. on clause a (1979). By contrast, "[o]ne who, by asserting in good faith a legally protected interest of his own or threatening in good faith to protect the interest by appropriate means, … does not interfere improperly with the other's relation…" *Id.* § 773.

KAIST's pleadings definitively establish that Paulina's arbitration—to enforce a contract that, again, predates KAIST's contracts by three years—was instituted in good faith. KAIST pleads that Paulina has already achieved preliminary relief from the arbitral tribunal: "In response to the arbitrator's order, KIP or KIPB deposited $21 million into a U.S. Bank trust account." Compl.

12

¶ 48. KAIST also pleads that Paulina has already obtained $24 million in settlement payments from the arbitration. *Id.* ¶¶ 1, 50. In its allegations against P&IB and KIP, KAIST expressly contemplates that Paulina's arbitration against the KIP entities will continue to be successful: "millions of dollars in settlement proceeds have been and will be diverted to Paulina instead of going to KAIST." *Id.* ¶¶ 78, 82. Indeed, KAIST's claim is that it will be harmed if Paulina's arbitration **is successful**, allegedly leaving the KIP entities with no money to pay KAIST.

But successful litigation cannot be tortious interference as a matter of law. Wisconsin courts have recognized that even *unsuccessful* litigation can be justified, defeating the elements of tortious interference. *Briesemeister*, 720 N.W.2d at 544 (finding that Defendants "may have been mistaken [in merits of their lawsuit], but we cannot say their actions were unjustified"); *see also Cudd v. Crownhart*, 364 N.W.2d 158, 161 (Wis. Ct. App. 1985) ("As the Restatement makes clear, a party has a right to protect what he believes to be his legal interest. If Crownhart's position is ultimately incorrect, liability should nevertheless not be imposed on that lone factor."). KAIST has already pleaded that Paulina was vindicated through preliminary relief and $24 million in settlement payments—its actions were justified, and thus not tortious interference.

Courts around the country have reached the same conclusion. Federal courts, relying on the Restatement, have dismissed similar complaints for failure to plead bad faith. *See Tax Servs. Of Am., Inc. v. Mitchell*, No. 07-CV-00249-REB-PAC, 2007 WL 4522472, at *2 (D. Colo. Dec. 18, 2007) ("Yet apart from the mere recitation of this standard, Dyles's counterclaim alleges no facts suggesting that plaintiff had no belief in the merit of this litigation or that it instituted the lawsuit solely to harass Dyles."). Other courts applying the Restatement have recognized that tortious interference claims centering on legal claims cannot "be maintained when the underlying lawsuit whose propriety is at issue terminated in a good faith negotiated settlement." *Blake v. Levy*,

464 A.2d 52, 56 (Conn. 1983). Likewise, in a related context, "[a] junior creditor cannot sue a senior creditor for tortious interference solely because the senior creditor forces a foreclosure sale against the junior creditor's wishes or because the sale does not generate enough income to satisfy the junior creditor." *Noble Sys. Corp. v. Alorica Cent., LLC*, 543 F.3d 978, 984 (8th Cir. 2008) (granting motion to dismiss). As discussed more fully below, *infra* Part III.B, Paulina has a superior claim to any Samsung settlement proceeds due to its security interest. *Noble Sys.*, 543 F.3d at 982 (taking judicial notice of financing statement filed with Minnesota Secretary of State).

In short, KAIST has pleaded itself out of court. Not only has KAIST failed to allege any facts suggesting bad faith, *supra* Part II.A, it has affirmatively alleged the success of Paulina's arbitration against the KIP Entities. As a matter of law, successful litigation is not tortious interference.

## III. THE COURT SHOULD DISMISS KAIST'S UNJUST ENRICHMENT CLAIM AGAINST PAULINA

KAIST also fails to plausibly allege the principal element of its unjust enrichment claim: that Paulina's enforcement of its contractual rights under the Purchase Agreement is in any way unjust or inequitable. *See Tri-State Mech., Inc. v. Northland Coll.*, 273 Wis. 2d 471, 479, 681 N.W.2d 302, 306 (Wis. Ct. App. 2004) (unjust enrichment requires proof of "the acceptance or retention by the defendant of the benefit under circumstances that makes its retention inequitable"). Longstanding precedent makes clear that a creditor has no claim for unjust enrichment against another creditor for collecting on a legally valid contract. *See Fischer v. Renner*, 348 Wis. 2d 763, 833 N.W.2d 873 (Table), 2013 WL 2319487 (Wis. Ct. App. 2013); *Nat'l Am. Ins. Co. v. Ind. Lumbermens Mut. Ins. Co.*, 221 F.3d 1339 (Table) (per curiam), 2000 WL 975176 (7th Cir. 2000); *United States v. Goforth*, 465 F.3d 730 (6th Cir. 2006). The critical defect in KAIST's unjust enrichment claim is underscored by the fact that Paulina's perfected security interest takes priority

over any interest KAIST may have as an *unsecured* creditor of the KIP entities. KAIST's claim against Paulina should be dismissed with prejudice.

### A. KAIST Fails To Allege That Paulina's Recovery Of Funds From The Arbitration Escrow Fund Is Inequitable Or Unjust

KAIST does not allege any facts showing that Paulina's recovery of funds owed to it by the KIP entities under a valid contract is unjust or inequitable. Consider first what KAIST does not—and cannot—allege against Paulina. KAIST does not allege that Paulina engaged in fraud, duress, undue influence, misrepresentation, or any other wrongdoing in executing the Purchase Agreement with the KIP entities. KAIST does not allege that the Purchase Agreement is void or unenforceable for any reason. KAIST does not allege that the emergency arbitrator's order requiring KIPB to place $21 million into the Arbitration Escrow Fund was legally or factually erroneous. KAIST does not allege that Paulina has no rightful claim to the funds it has already received from the KIP entities, or to the other money in the Arbitration Escrow Fund. And KAIST does not allege that Paulina seeks to collect anything beyond what Paulina believes it is owed under its Purchase Agreement with the KIP entities.

KAIST's only gripe is that Paulina has successfully enforced its contractual rights under the Purchase Agreement to obtain funds from the KIP entities—and that this may leave the KIP entities too cash-strapped to someday pay their debts to KAIST. Compl. ¶¶ 45, 95 (alleging that Paulina's recovery of Arbitration Escrow Funds is "rendering KIP's performance under [its contracts with KAIST] impossible"). But "[u]njust enrichment does not operate to make a third party the insurer of a failed business venture." *Fischer*, 2013 WL 2319487, at *5; *see also Puttkammer v. Minth*, 83 Wis. 2d 686, 693, 266 N.W.2d 361, 365 (1978) (plaintiff who was "performing his contract with another and now dissatisfied because the return promised under the contract is not forthcoming" failed to state a claim for unjust enrichment). KAIST cannot sue

15

Paulina for unjust enrichment simply for collecting on its debts. *See e.g.*, *Athey Prods. Corp. v. Harris Bank Roselle*, 89 F.3d 430, 436 (7th Cir. 1996) (plaintiff cannot establish an unjust enrichment claim against a debtor's lender in the absence of clear and convincing evidence of fraud by the lender).

Wisconsin law forecloses unjust enrichment claims like the one KAIST asserts against Paulina. In *Fischer*, for example, the Wisconsin Court of Appeals held that plaintiffs failed to show defendant's enrichment was unjust. 2013 WL 2319487, at *1. Plaintiffs invested in a car dealership, Car Guys LLC. *Id.* Certain of Car Guys' company assets were personally guaranteed by defendant James Renner. *Id.* When creditors called on Car Guys for unpaid debts, Car Guys' corporate assets (and therefore some of the plaintiffs' investment monies) were used to pay the creditors' debts, obviating the need for Renner to fulfill his personal guarantee. *Id.* The plaintiffs sued Renner for unjust enrichment, alleging that because Car Guys used corporate assets to pay off creditors instead of calling upon Renner's personal guarantee, Renner was unjustly enriched. *Id.* The Wisconsin Court of Appeals affirmed the district court's grant of summary judgment in favor of Renner on the unjust enrichment claim because, while the plaintiffs' cash infusion may have been used to pay off company debts to Renner's benefit, "that outcome was contractually established" and there was "nothing in their respective contractual obligations for the company's debt that is inherently unjust or unfair." *Id.* at *4. The Court concluded that "the mere fact that there may have been incidental benefit to [Renner], and that [Renner] may have known about it, does not require [Renner] as a guarantor to make restitution to the investors of Car Guys; the incidental benefit does not violate fundamental principles of justice, equity, and good conscience." *Id.* at *5. *See also Universal Forest Prods. E. Div., Inc. v. Morris Forest Prods., LLC*, 558 F. Supp.

16

2d 893, 908 (E.D. Wis. 2008) (rejecting unjust enrichment claim where party was "merely fulfilling the terms of a contract it voluntarily agreed to sign").

The Wisconsin Court of Appeals in *Fischer* relied on two federal Courts of Appeal cases which also squarely rejected KAIST's theory. *Fischer*, 2013 WL 2319487 at *3, *4. In *United States v. Goforth*, the Sixth Circuit considered an unjust enrichment claim brought by the U.S. Government. 465 F.3d at 734. In a prior case, the Government had obtained a judgment against a health care company under the False Claims Act. *Id.* at 732. That same health care company had paid back a loan it owed to one of its creditors (Sheila Gilley), and the company ultimately did not have enough money to pay the False Claims Act judgment. *Id.* So the Government tried to collect that debt from Gilley instead, on a theory of unjust enrichment. *Id.* The Sixth Circuit rejected the Government's claim, holding that "the theory of unjust enrichment may not be used to allow a stranger to a loan contract or promissory note to seek funds repaid pursuant to such an agreement." *Id.* at 734 (collecting cases). Gilley had "received nothing more than that to which [she] was contractually entitled." *Id.* at 735. In dismissing the claim, the Sixth Circuit relied on prior precedent holding that "the repayment of loans by a company who fraudulently pledged the same collateral to different lenders did not unjustly enrich the lender who was repaid while other lenders' loans went unsatisfied." *Id.* KAIST's claim here fares even worse, since KAIST does not plead that Paulina or the KIP entities engaged in fraud.

The Seventh Circuit reached a similar conclusion in *National American Insurance*,[3] 2000 WL 975176. There, plaintiffs sued defendants for receiving payments from a debtor who plaintiffs

---

[3] Although *National American Insurance* is an unpublished opinion, the Wisconsin Court of Appeals has cited it favorably in interpreting Wisconsin law on unjust enrichment. *Fischer*, 2013 WL 2319487, at *4. Other district courts in this circuit have also cited *National American Insurance* when reviewing unjust enrichment claims. *See, e.g.*, *Vill. of Rockton, Ill. v. Sonoco Prod. Co.*, 135 F. Supp. 3d 700, 711 (N.D. Ill. 2015).

allege otherwise would not have defaulted on their contract. 2000 WL 975176 at *1. And there, as here, the plaintiffs failed to allege that the defendant obtained those payments in bad faith. *Id.* The Seventh Circuit ruled that plaintiffs' unjust enrichment claim against defendants failed as a matter of law because "the payments to the creditors were required by contract, and the only benefit enjoyed by the defendants was a necessary consequence of those payments." *Id.* at *3. In other words, "where the enrichment was innocently conferred by a third party according to a contractual or legal obligation, the enrichment cannot be unjust." *Id.* at *3 (citing Dan B. Dobbs, *Law of Remedies* § 4.1(2) (1993) ("one who is enriched by what he is entitled to under a contract or otherwise is not unjustly enriched"); *Season Comfort Corp. v. Ben A. Borenstein Co.*, 655 N.E.2d 1065, 1071 (Ill.App.Ct. 1995) ("An uncollectible debt … by one party does not transfer into an unjust enrichment claim against a third party who is solvent"). The Seventh Circuit went on to note that "***no court has ever allowed*** a restitution [on an unjust enrichment theory] in a case like this one." *National American Insurance*, 2000 WL 975176, at *3 (emphasis added) (citing Restatement of Restitution § 14(a) (1937)).

The weight of this precedent forecloses KAIST's claim against Paulina. Just as in *Fischer*, *Goforth*, and *National American Insurance*, the only benefit conferred on Paulina is a contractually established one—the payment of patent proceeds by the KIP entities to Paulina under the Purchase Agreement. Any past and future payments to Paulina from the Arbitration Escrow Fund are merely "that to which [Paulina] was contractually entitled." *Goforth*, 465 F.3d at 735. The mere fact that Paulina may now know about the KIP entities' separate agreements with KAIST does not require Paulina to make restitution to KAIST for getting paid. *Fischer,* 2013 WL 2319487, at *5. Nothing about Paulina collecting on its valid contract with the KIP entities "violate[s] fundamental principles of justice, equity, and good conscience." *Id.* And as a stranger to the Purchase

18

Agreement, KAIST cannot use an unjust enrichment claim to "seek funds repaid pursuant to such an agreement." *Goforth*, 465 F.3d 730 at 734.

Simply put, "repayment of a [debt] is not unjust enrichment." *B.E.L.T., Inc. v. Wachovia Corp.*, 403 F.3d 474, 477 (7th Cir. 2005). KAIST does not—and cannot—allege that the KIP entities' payment to Paulina from the Arbitration Escrow Fund is anything more than that. To allow KAIST's claim to survive is to allow any bitter creditor to sue another creditor merely for successfully collecting from the same debtor. Every court presented with the type of unjust enrichment claim KAIST alleges here has rejected it. Paulina asks this Court to follow that longstanding precedent and dismiss KAIST's unjust enrichment claim with prejudice.

### B.      KAIST's Unjust Enrichment Claim Turns Creditor Priority On Its Head

KAIST's unjust enrichment claim against Paulina is particularly meritless given that Paulina's interest in the Arbitration Escrow Fund takes priority over any interest claimed by KAIST. While KAIST does not allege that it is anything more than a general creditor, Paulina has a perfected security interest in the assets of KIPB—one of the KIP entities. (*See* Exhibit A (Paulina UCC Statements)); *see also, e.g., MB Fin. Bank, N.A. v. Kartel Plastics, Inc.*, No. ED CV 17-24-RGK (SPx), 2017 WL 7201875, at *2–9 & n.1 (C.D. Cal. Mar. 9, 2017) (noting that it is appropriate to take judicial notice of UCC financing statement and subsequent amendment because they are indisputable matters of public record). The emergency arbitrator cited this very fact—Paulina's status as a secured creditor—in her order requiring the KIP entities to place money into the Arbitration Escrow Fund until the conclusion of Paulina's arbitration proceeding against them. Under established rules of creditor preference and debt collection, Paulina's secured interest takes priority over KAIST's alleged unsecured interest in KIPB's assets. *See* 17 Texas Forms Legal & Bus. § 42:59 ("[A] secured party has priority over a general or unsecured creditor, even if the secured creditor has not perfected its security interest. In addition, paramount status is accorded to

the secured creditor who files a financing statement first."); *Small v. Beverly Bank*, 936 F.2d 945, 947 (7th Cir. 1991) ("the law (including the choice of law rules) of the jurisdiction in which the debtor is located governs the perfection and effect of perfection or non-perfection of the security interest.") (quoting Uniform Commercial Code § 9-103(3)(b)); Compl. ¶ 10 (KIPB, the debtor, is a limited liability company organized under the laws of Texas).

It defies logic (and is contrary to law) for KAIST to allege that Paulina's collection of debts from the KIP entities before KAIST amounts to unjust enrichment, when it is Paulina who has creditor priority. *See Small*, 936 F.2d at 950 (a secured creditor with priority over a debtor's assets is not unjustly enriched by enforcing its priority interest); *In re Wright*, 192 B.R. 946, 949 (Bankr. W.D. Wis. 1996) (if an unsecured creditor "could overcome prior secured creditors through the doctrines of unjust enrichment or equitable subordination, [the Uniform Commercial Code] would be rendered meaningless and the integrity of the filing system would be substantially undermined"). If anything, it is KAIST who would be unjustly enriched if it is allowed to cut ahead of Paulina in the usual line of creditor priority.

## CONCLUSION

Paulina has no place in this case, which is fundamentally a dispute between KAIST and the KIP entities. Paulina respectfully asks the Court to dismiss KAIST's claims for unjust enrichment (Count VI) and tortious interference with the performance of a contract (Count VII). Because "Plaintiffs have [] already received an opportunity to remedy these deficiencies" by amending their Complaint in response to Paulina's previous motion to dismiss, and any further amendment would be futile, those claims should be dismissed with prejudice. *Always Towing & Recovery, Inc. v. City of Milwaukee*, 2 F.4th 695, 707 (7th Cir. 2021).

20

Dated: June 3, 2022

Respectfully submitted,

/s/ Steven M. Biskupic

Steven M. Biskupic, SBN 1018217
Justin J. Dreikosen, SBN 1094426
BISKUPIC & JACOBS, S.C.
1045 West Glen Oaks Lane, Suite 106
Mequon, WI 53092
sbiskupic@biskupicjacobs.com
jdreikosen@biskupicjacobs.com
Telephone: (262) 241-3300

/s/ Adam L. Hoeflich

Adam L. Hoeflich (No. IL 6209163)
Anastasiya Maione (No. IL 6327120)
Lee Mason (No. IL 6330090)
BARTLIT BECK LLP
54 W. Hubbard Street, Suite 300
Chicago, IL 60654
Telephone: (312) 494-4400
adam.hoeflich@bartlitbeck.com
stacy.maione@bartlitbeck.com
lee.mason@bartlitbeck.com

Jason C. Murray (No. CO 43652)
BARTLIT BECK LLP
1801 Wewatta Street, Suite 1200
Denver, CO 80202
Telephone: (303) 592-3100
jason.murray@bartlitbeck.com

*Counsel for Defendant Paulina FundingCo, LLC*

21

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 3rd day of June, 2022, a copy of the foregoing document was

served via electronic service through the Court's electronic filing system on all counsel of record.


*/s/ Steven M. Biskupic*

Steven M. Biskupic