# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WISCONSIN
### MILWAUKEE DIVISION

KOREA ADVANCED INSTITUTE OF
SCIENCE AND TECHNOLOGY

        Plaintiff,

   v.

KIP CO., LTD. f/k/a KAIST IP Co., Ltd.;
P&IB CO., LTD.;
IN GYOO KANG;
KIPB LLC f/k/a KAIST IP US LLC;
PAULINA FUNDINGCO, LLC; and
U.S. BANK NATIONAL ASSOCIATION

        Defendants.

Case No. 2:22-CV-00317-WED

Action Filed: March 5, 2022

---

## DEFENDANTS KIP CO., LTD., P&IB CO., LTD., IN GYOO KANG, AND KIPB LLC'S MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

# **TABLE OF CONTENTS**

FACTUAL BACKGROUND ..................................................................................... 2

    *2012 Business Agreement with KAIST and the Korean Patent* ............................... 2

    *Funding Agreement with Paulina and U.S. Patent Infringement Litigation* ......................... 3

    *2019 Management and Revenue Sharing Agreements and the Korean Patent* ..................... 4

    *Arbitration Between Paulina and KIP Entities and Non-Party Jong-Ho Lee* ....................... 5

ARGUMENT ..................................................................................................... 7

    I.   Standard of Review ......................................................................................... 7

    II.  KAIST's Counts I through V Should Be Dismissed Because KAIST and
        KIP Entities Are Parties to Binding, Enforceable Arbitration Agreements........................ 8

        A.  2012 Business Agreement ......................................................................... 9

        B.  2019 Management Agreement and Revenue Sharing Agreement ........................... 10

    III. KAIST's Counts I and II Should Be Dismissed Because KIP Has No Obligations
        Concerning the U.S. Patent Under the Business Agreement and P&IB Has No
        Obligations Concerning the Actions of a Non-Party Under the
        Management Agreement ......................................................................... 16

        A.  KAIST's Business Agreement with KIP ..................................................... 17

        B.  KAIST's Management Agreement with P&IB................................................. 19

CONCLUSION..................................................................................................... 20

# TABLE OF AUTHORITIES

| Cases | Page(s) |
|---|---|

*188 LLC v. Trinity Indus., Inc.*,
  300 F.3d 730 (7th Cir. 2002) ...................................................................8

*AMSOIL, Inc. v. Remver, LLC*,
  2021 U.S. Dist. LEXIS 152642, *15 (W.D. Wis. 2021) ...............................15

*Arnold v. Arnold Corp.*,
  920 F.2d 1269 (6th Cir. 1990) ...............................................................13

*Ashcroft v. Iqbal*,
  556 U.S. 662, 678 (2019) ........................................................................7

*Atl. Marine Constr. Co. v. United States Dist. Court*,
  571 U.S. 49 (2013) ...............................................................................16

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544, 570 (2007) ........................................................................7

*Benefits in a Card, LLC v. TALX Corp.*,
  No. 6:06-cv-03655-GRA, 2007 U.S. Dist. LEXIS 16321, 2007 WL 750638
  (D.S.C. Mar. 7, 2007) ............................................................................13

*Brunclik v. Keystone Insights*,
  2019 Wisc. App. LEXIS 356 (Ct. App. 2019) ............................................16

*Collie v. Wehr Dissolution Corp.*,
  345 F. Supp. 2d 555 (M.D.N.C. 2004) .....................................................13

*Deb v. Sirva, Inc.*,
  832 F.3d 800 (7th Cir. 2016) ...................................................................7

*Faulkenberg v. CB Tax Franchise Sys., LP*,
  637 F.3d 801 (7th Cir. 2011) ...................................................................9

*Fischer v. Magyar Allamvasutak Zrt.*,
  777 F.3d 847, *cert. denied*, 135 S. Ct. 2817, 192 L. Ed. 2d 850 (2015) ........................7

*Gore v. Alltel Communs., LLC*,
  666 F.3d 1027 (7th Cir. 2012) ................................................................11

*Haber v. Biomet, Inc.*,
  578 F.3d 553 (7th Cir. 2009) ................................................................8, 9

*Hecker v. Deere & Co.*,
  556 F.3d 575 (7th Cir. 2009) ...................................................................8

*Hupy & Abraham, S.C. v. Quintessa LLC*,
  2021 U.S. Dist. LEXIS 223633 (E.D. Wis. 2021) ......................................15

*International Union of Operating Engineers v. Carl A. Morse, Inc.*,
529 F.2d 574 (7th Cir. 1976) ...................................................................10

*ISI Int'l, Inc. v. Borden Ladner Gervais LLP*,
256 F.3d 548 (7th Cir. 2001) ...................................................................7

*Long v. Silver*,
248 F.3d 309 (4th Cir. 2001) ...................................................................13

*McCready v. eBay, Inc.*,
453 F.3d 882 (7th Cir. 2006) ...................................................................8

*McPheely v. Adams*,
2013 U.S. Dist. LEXIS 177591 (D.S.C. 2013) ......................................13

*Merrill Lynch, Pierce, Fenner & Smith v. Lauer*,
49 F.3d 323 (7th Cir. 1995) .....................................................................8

*Moses H. Cone Mem'l. Hosp. v. Mercury Constr. Corp.*,
460 U.S. 1 (1983) .....................................................................................8

*Mueller v. Apple Leisure Corp.*,
2016 U.S. Dist. LEXIS 79817 (E.D. Wis. 2016), *aff'd*, 880 F.3d 890 (7th Cir. 2018)
....................................................................................................................9

*Mueller v. Apple Leisure Corp.*,
880 F.3d 890 (7th Cir. 2018)
...............................................................................................................7,8

*Nolde Bros., Inc. v. Local No. 358, Bakery & Confectionery Workers Union*,
430 U.S. 243 (1977) ...............................................................................10

*Pessin v. Fox Head Waukesha Corp.*,
230 Wis. 277 (1938) ...............................................................................16

*Renken v. Gregory*,
2005 U.S. Dist. LEXIS 45484 (E.D. Wis. 2005). ...................................7

Seoul Eastern District Court [Dist. Ct.], 2010Ga-Hap4217,
Dec. 10, 2010 (S. Kor.), aff'd, Seoul High Court [Seoul High. Ct.],
2011Na8463, Oct. 27, 2011 (S. Kor.) .....................................................17

*Shriner v. Signal Fin.* Co.,
92 Fed. Appx. 322 (7th Cir. 2003) ..........................................................11

*Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*,
549 U.S. 429 .............................................................................................7

Supreme Court [S. Ct.], 96Da24385, Feb. 25, 1997 (S. Kor.) ..............................11

Supreme Court [S. Ct.], 95Da5615, Sep. 6, 1996 (S. Kor.) .................................17

*Volling v. Kurtz Paramedic Servs.*,
840 F.3d 378 (7th Cir. 2016) ...................................................................7

iii

*Watch & Accessory Co. v. Garmin Int'l, Inc.*,
  2021 U.S. Dist. LEXIS 247893 (E.D. Wis. 2021 .......................................................15

**Rules**

Federal Rule of Civil Procedure 10(c) ...............................................................................7

Federal Rule of Civil Procedure 12(b)(6) ...................................................................7, 20

**Statutes**

9 U.S.C. § 1, *et seq*............................................................................................................8, 9

28 U.S. Code § 1404(a)...................................................................................................9, 15

**Other Authorities**

Joongjaebeob [Arbitration Act], Act No. 1767,
Mar. 16, 1966, *amended by* Act No. 16918, Feb. 4, 2020 (S. Kor.)..................................14

This is a Korean dispute among mostly Korean actors under Korean contracts specifying arbitration in Korea. The Seventh Circuit has consistently held that when a party asserting breach of contract relies on a contract with a forum selection clause that points to a non-federal forum, courts must dismiss the action.

Defendant KIP Co., Ltd. ("KIP") entered into an agreement in 2012 with Plaintiff Korea Advanced Institute of Science & Technology ("Plaintiff" or "KAIST"), which contains a binding arbitration clause. In 2019, Defendant P&IB Co., Ltd. ("P&IB") entered into an agreement with KAIST which also contains a binding arbitration clause. On the same day, Defendants KIP and KIPB LLC ("KIPB") entered into an agreement with KAIST, the terms of which were fully incorporated by reference in the 2019 agreement between P&IB and KAIST (containing a binding arbitration clause).

However, completely ignoring the binding arbitration provisions of the 2012 and 2019 agreements, KAIST impermissibly filed this lawsuit alleging breaches of the aforementioned three agreements and other related duties supposedly stemming from those agreements.

Under the common law doctrine of *forum non conveniens*, the first through fifth counts of the Plaintiff's complaint (alleging breaches of duties and obligations under the agreements) should be dismissed by this Court as it is logical and equitable for KAIST, P&IB, and KIP, all of which are organized under the laws of and reside in Korea,[1] to resolve their disputes arising from the agreements before the agreed-upon, non-federal arbitral forum in Korea. Moreover, the first and second counts must be dismissed on a separate ground of the Plaintiff's failure to plead any plausible claim as KIP and P&IB do not owe to KAIST the obligations that KAIST erroneously

---

[1] Defendant KIPB is the wholly owned subsidiary of KIP that is controlled by the Korean parent company. (*See* Dkt. 1-1, ¶ 25.)

1

believes they do under their agreements. Because all the underlying breach claims by Plaintiff should be dismissed, Plaintiff's request for declaratory relief concerning KIP, P&IB, and KIPB should be denied.

## FACTUAL BACKGROUND

Plaintiff KAIST is a national research university established by the Korean government and has its principal place of business in Daejeon, Republic of Korea. (Dkt. 30, ¶ 5.) Defendant KIP is a corporation organized under the laws of Republic of Korea with its principal place of business in Daejeon, Republic of Korea. (*Id.* ¶ 6.) KAIST alleges Defendant P&IB is a corporation organized under the laws of Republic of Korea with its principal place of business in Seoul, Republic of Korea. (*Id.* ¶ 7.) In 2012, KAIST and P&IB incorporated KIP for the purpose of generating revenue through utilization of KAIST's intellectual property. (*Id.* ¶ 19.) Defendants KIP, KIPB, and P&IB will hereinafter be referred to collectively as "KIP Entities."

### *2012 Business Agreement with KAIST and the Korean Patent*

On or around July 2, 2012, KIP (referred to in the contract as KAIST-IP Co., Ltd.) and KAIST entered into a Business Agreement under which KIP was to enforce KAIST's intellectual property in Korea. Under that agreement, the parties agreed to "utilize the grant of exclusive license or assignment of rights from KAIST to focus the efforts on generating the maximum revenue possible" from intellectual property **owned by KAIST** (the "Business Agreement"). (*Id.* ¶ 20 (emphasis added).) KAIST owns Korean patent number 10-0458288 for certain fin field-effect transistor (FinFET) (the "Korean Patent"), a component manufactured mostly in the Republic of Korea and used for modern nanoelectric semiconductor devices. (*Id.* ¶ 16.)

Article 6 of the Business Agreement, titled "Performance in good faith" states that both KAIST and KIP shall do their best to faithfully perform their respective tasks prescribed in the

2

agreement as early as possible. (Ex. A, at 3.) Article 9 of the Business Agreement provides that matters not stated in this agreement must be discussed mutually by KAIST and KIP *to achieve the purpose of this Agreement*. (*Id*.) Article 1 of the agreement, titled "Purpose," states, among other things, that the purpose of the agreement is "to promote maximum profit generation through active exercise of such Strong Intellectual Property Rights." (*Id*. at 1.)  Article 2-2 of the agreement, titled "Active Exercise of Rights," states that KIP "shall select intellectual property rights that can be actively exercised by continuously investigating and analyzing cases of unauthorized execution of third parties on intellectual property rights held by KAIST." (*Id*.) Article 2-2 adds that KIP "may request KAIST grant exclusive licenses or transfer rights of the relevant intellectual property rights when it selects intellectual property rights that can be actively exercised. . .." (*Id*. at 2.) Furthermore, Article 2-2 states KIP "shall do its best to generate maximum profits by actively utilizing the exclusive licenses granted or rights transferred by KAIST. . .." (*Id*.)

Article 14 of the Business Agreement contains the following mandatory arbitration provision: "In the event of a dispute over the contents of this Agreement, it shall be finally resolved by arbitration in accordance with the arbitration rules of the Korea Commercial Arbitration Board."  (*Id*. at 4.) Plaintiff alleges in its Amended Complaint that the Business Agreement was terminated on July 2, 2017. (Dkt. 30, ¶ 23.)

### *Funding Agreement with Paulina and U.S. Patent Infringement Litigation*

In July 2016, KIP organized its U.S. subsidiary KIPB LLC ("KIPB") (Dkt. 30, ¶ 24.)  KIPB is a limited liability company organized under the laws of the State of Texas with its address in Frisco, Texas. (*Id*. ¶ 9.) Because KAIST explicitly forwent assisting non-party Jong-Ho Lee, the inventor of FinFET technology, in prosecuting the U.S. patent for the technology (the "U.S. Patent"), Lee independently prosecuted the U.S Patent, initially secured the ownership of it, and

subsequently assigned all of the rights in the patent to KIPB. (*Id.* ¶ 24.) Thus KIPB wholly owns the U.S. Patent. (*Id.*) Plaintiff alleges that, on or around July 29, 2016, KIPB, the owner of the U.S. Patent, and Defendant Paulina FundingCo, LLC ("Paulina") executed an agreement pursuant to which Paulina would provide up to $6,000,000 in funding for the "Patent Litigation" and receive a portion of KIPB's resulting profit if the litigation was successful. (*Id.* ¶¶ 43-44.) Paulina is thus a source of costs to KIPB and KIP, not a source of revenue.

 In November 2016, KIPB filed a suit against Samsung corporate entities, Global Foundries U.S. Inc., and Qualcomm Inc. in the federal district court for the Eastern District of Texas for infringement of the U.S. Patent (the "U.S. Patent Litigation"). (*Id.* ¶ 25.) The U.S. Patent Litigation resulted in a jury verdict in the amount of $400 million. (*Id.* ¶ 26.) Notwithstanding the jury verdict, the court subsequently found that a reduced damage award of $203,003,416 was proper in that case. (*Id.* ¶ 27.) KIPB accepted the reduced judgment amount, and the final judgment of the case was entered on February, 21, 2020. (*Id.* ¶ 28.)

### *2019 Management and Revenue Sharing Agreements and the Korean Patent*

In addition to actively exercising the U.S. Patent rights held by its subsidiary KIPB, KIP had distinct and separate roles and obligations as a licensee of the Korean Patent to enforce the patent rights against third-party infringers <u>in Korea</u> on behalf of KAIST. Accordingly, the KIP Entities sought to formalize the manner in which KAIST would receive revenue from the use of KAIST's intellectual property by KIP. (*Id.* ¶ 29.) On October 2, 2019, P&IB and KAIST entered into a "Basic Management Agreement for Management of KIP Co., Ltd" (the "Management Agreement"), which changed KIP's ownership structure. (Dkt. 30, ¶ 31.) Article 11 of the Management Agreement contains the following mandatory arbitration provision:

> In the event that any dispute arises between the parties to the agreement related to the performance of the duties stipulated under this agreement, violation of this

agreement, and so on, the parties shall try to resolve such a dispute smoothly based on mutual agreement first, and any issues that still remain to be resolved based on the arbitration of Korea Commercial Arbitration Board.

(Ex. B, at 9.)

Article 10 of the Management Agreement provides that a separate revenue sharing agreement concerning the FinFET patent litigation in progress shall be prepared. (Dkt. 30, ¶ 36.) The agreement to which Article 10 of the Management Agreement refers is the Revenue Sharing Agreement for the Use of FinFET Patent entered into by KAIST, KIP, and KIPB on October 2, 2019 (the "Revenue Sharing Agreement"). (Ex. C; *see Id.* ¶ 37.) The Revenue Sharing Agreement states that KAIST, KIP, and KIPB "shall agree on the revenue sharing for "FinFET technology" related patents (referring to Korean patent registration no. 10-0458288, US patent registration no. 6,885,055 . . ..)" (Ex. C, at 1). The "FinFET technology" in the Revenue Sharing Agreement thus means both the Korean Patent and the U.S. Patent collectively, and any FinFET patent litigation under the Management Agreement means litigation**s** concerning <u>both</u> the Korean Patent and the U.S. Patent. Article 2-A of the Revenue Sharing Agreement states that "[the Revenue Sharing Agreement] is a supplementary agreement concluded according to Article 10 (Supplementary Agreement) of the [Management Agreement] concluded on October 2, 2019. . .." (Ex. C, at 2.)

### *Arbitration Between Paulina and KIP Entities and Non-Party Jong-Ho Lee*

Erroneously believing KIP, KIPB, Lee, and P&IB have fraudulently allocated the share of proceeds from certain entities for licensing the U.S. Patent, on August 31, 2020, Paulina initiated an arbitration proceeding against KIP, KIPB, Lee, and P&IB with the American Arbitration Association's International Centre for Dispute Resolution. (Dkt. 30, ¶ 45.) Paulina further filed an Emergency Relief application requesting an order to place a certain amount of proceeds in trust pending completion of arbitration. (*Id.* ¶ 46.) The Emergency Arbitrator ordered KIP Entities and Lee to deposit $21 million of a certain amount of money KIP received from a licensee as a royalty

5

payment into a trust account pending arbitration. (*Id.* ¶ 47.) KIP complied with the order and deposited the $21 million into a U.S. Bank trust account (the "Escrow Account"). (*Id.* ¶ 48.) A certain of amount of proceeds remain held in the Escrow Account. (*Id.* ¶ 49.)

On March 2, 2022, KAIST filed its Verified Complaint for Declaratory and Equitable Relief ("Complaint") against the KIP Entities, In Gyoo Kang ("Kang"), Paulina, and U.S. Bank National Association ("US Bank") (collectively, the "Defendants") in the Circuit Court of Milwaukee County, Wisconsin. (Dkt. 1-1.) Defendants timely removed the case to this Court on March 12, 2022. (Dkt. 1.) On March 30, 2022, Defendants in this case filed Motions to Dismiss and the supporting memoranda of law in response to the complaint. (Dkt. 26-29.) On April 20, 2022, KAIST filed its Amended Complaint against the Defendants. (Dkt. 30.) The Amended Complaint consists of five causes of action against KIP Entities and Kang titled Breach of Business Agreement ("Count I"), Breach of Management Agreement ("Count II"), Breach of Revenue Sharing Agreement ("Count III"), Breach of Duty of Good Faith and Fair Dealing (Count IV), and Breach of Fiduciary Duty (Court V). (Dkt. 30, ¶¶ 56-83.)

Counts I through III allege breaches by one or more of KIP Entities of their contractual obligations under the Business Agreement, the Management Agreement, and the Revenue Sharing Agreement, the terms of which are fully incorporated by reference in the Management Agreement. (*Id.* ¶¶ 56-75.) Similarly, Count IV alleges breaches by P&IB and KIP of their duties of good faith and fair dealing under the Business Agreement, the Management Agreement, and the Revenue Sharing Agreement. (*Id.* ¶¶ 76-79.) Count V alleges breaches by KIP, P&IB and Kang of their fiduciary duties under an unidentified contract or a combined controlling interest in KIP or both. (*Id.* ¶¶ 80-83.)

**ARGUMENT**

## I. Standard of Review

A district court may dismiss a case on *forum non conveniens* grounds when it finds that there exist "strong reasons for believing it should be litigated in the courts of another, normally a foreign, jurisdiction." *Fischer v. Magyar Allamvasutak Zrt.*, 777 F.3d 847, 866, *cert. denied*, 135 S. Ct. 2817, 192 L. Ed. 2d 850 (2015) (*citing Sinochem*, 549 U.S. at 429-30). Indeed, "the doctrine applies in the federal courts only when the other jurisdiction is a foreign one." *Deb v. Sirva, Inc.*, 832 F.3d 800, 805 (7th Cir. 2016). The doctrine requires "the sound exercise of equitable discretion, and that discretion belongs to the district judge." *ISI Int'l, Inc. v. Borden Ladner Gervais LLP*, 256 F.3d 548, 554 (7th Cir. 2001).

For a plaintiff to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2019) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plaintiff's "'claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Volling v. Kurtz Paramedic Servs.*, 840 F.3d 378, 382 (7th Cir. 2016) (*quoting Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2019)). The essence of a Rule 12(b)(6) motion is, even assuming all of the plaintiff's pleaded facts were accurate, the plaintiff still did not piece together a viable legal claim. *See Renken v. Gregory*, 2005 U.S. Dist. LEXIS 45484, *5 (E.D. Wis. 2005).

Federal Rule of Civil Procedure 10(c) provides that "[a] copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes." Fed. R. Civ. P. 10(c). Moreover, the Seventh Circuit has consistently held that "documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the plaintiff's] claim." *Mueller v. Apple Leisure Corp.*, 880 F.3d 890, 895 (7th Cir. 2018) (citing

*188 LLC v. Trinity Indus., Inc.*, 300 F.3d 730, 735 (7th Cir. 2002)); *see also Hecker v. Deere & Co.*, 556 F.3d 575 (7th Cir. 2009); *see McCready v. eBay, Inc.*, 453 F.3d 882, 891 (7th Cir. 2006) (quoting *188 LLC v. Trinity Indus., Inc.*, 300 F.3d 730, 735 (7th Cir. 2002)). Here, the Business Agreement, Management Agreement, and Revenue Sharing Agreement are all referred to in the Complaint and are central to all of Plaintiff's substantive claims alleging breaches. The agreements are therefore part of Plaintiff's pleading for all purposes and the Court may consider them in ruling on KIP Entities and Kang's Motion to Dismiss.

**II.    KAIST's Counts I through V Should Be Dismissed Because KAIST and KIP Entities Are Parties to Binding, Enforceable Arbitration Agreements.**

Written agreements to arbitrate are "valid, irrevocable, and enforceable" under Federal Arbitration Act, 9 U.S.C. § 1, *et seq*. ("FAA"). 9 U.S.C. § 2. The FAA creates "a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the [FAA]." *Moses H. Cone Mem'l. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). When a dispute is arbitrable and a party does not honor the arbitration agreement between the parties, the court must enter an order to compel arbitration. *See* 9 U.S.C. §§ 3-4 (emphasis added). However, the FAA puts a limit as to which district court can enter such order.

Section 4 of the FAA provides that, if a district court issues an order to compel arbitration in accordance with the terms of the parties' agreement, the aforesaid arbitration must take place "within the district the petition for an order directing such arbitration is filed." 9 U.S.C. § 4. That is, the parties' arbitration proceedings and the order to compel the arbitration must occur in the same judicial district. Accordingly, if an arbitration clause in a contract contains a forum selection clause, *only* the district court in that forum may issue an order to compel arbitration pursuant to the FAA. *Haber v. Biomet, Inc.*, 578 F.3d 553, 558 (7th Cir. 2009) (emphasis added); *see also Merrill Lynch, Pierce, Fenner & Smith v. Lauer*, 49 F.3d 323, 327 (7th Cir. 1995) ("Otherwise,

the clause of § 4 mandating that the arbitration and the order to compel issue from the same district would be meaningless."). However, in a case where (as here) the parties' forum selection clause mandates arbitration in a forum outside of the court's judicial district, the district court cannot compel arbitration but must instead dismiss the action under the doctrine of *forum non conveniens*. *See Haber*, 578 F.3d at 558; *see also Faulkenberg v. CB Tax Franchise Sys., LP*, 637 F.3d 801, 808 (7th Cir. 2011) (holding "under § 4 of the FAA, a district court cannot compel arbitration outside the confines of its district.").

Under the well-established doctrine of *forum non conveniens*, KAIST's claims for Counts I through V must be dismissed. "*Forum non conveniens* is codified at § 1404(a), which allows a federal district court to transfer a civil action to 'any other district or division where it might have been brought or to any district or division to which all parties have consented.'" *Mueller v. Apple Leisure Corp.*, 2016 U.S. Dist. LEXIS 79817, *3 (E.D. Wis. 2016), *aff'd*, 880 F.3d 890 (7th Cir. 2018). When a case involves a forum-selection clause and the clause points to a nonfederal forum (outside of the present judicial district), "courts apply the <u>residual</u> *forum non conveniens* doctrine instead of § 1404(a)." *Id.* (emphasis added). The residual *forum non conveniens* doctrine "is procedural; instead of a direct transfer from another court in the federal system, the case is dismissed and (presumably) refiled in the correct forum." *Id.*

A.    **2012 Business Agreement**

In this case, a broad mandatory arbitration provision in the Business Agreement requires the parties to resolve "any dispute over the contents of the agreement" by arbitration and in accordance with the arbitration rules of the Korea Commercial Arbitration Board. (Ex. A, at 4.) KAIST's Count I alleging KIP's breach of duty under the Business Agreement, and Count IV alleging KIP's breach of duty to deal in good faith and fairly under the Business Agreement are

9

subject to this provision because such claims fall under disputes over the contents of the Business Agreement.

For purposes of determining whether or not the arbitration provision of the Business Agreement is valid, it is irrelevant whether the Business Agreement was terminated in July of 2017, as KAIST alleges in its Amended Complaint. The Supreme Court has held that "the parties' obligations under their arbitration clause survived contract termination when the dispute was over an obligation arguably created by the expired agreement." *Nolde Bros., Inc. v. Local No. 358, Bakery & Confectionery Workers Union,* 430 U.S. 243, 252 (1977). Indeed, "[t]he invalidity of other sections of an agreement neither infects nor undermines the binding force of its arbitration provisions." *International Union of Operating Engineers v. Carl A. Morse, Inc.*, 529 F.2d 574, 578 (7th Cir. 1976).

In this case, KAIST alleged in its Amended Complaint that KIP breached the Business Agreement in 2016, when it failed to discuss U.S. Patent litigation funding from Paulina with KAIST and disclose the resulting funding agreement with Paulina, and the alleged breaches occurred prior to the expiration of the Business Agreement in 2017. (Dkt. 30, ¶¶ 58-60.) That is, the dispute KAIST raises under Counts I and IV in its Amended Complaint, KIP's alleged breaches of the Business Agreement, was over KIP's alleged contractual obligations which were created by the expired agreement. Therefore, under *Nolde Bros.*, KIP and KAIST's obligations under the arbitration clause of the Business Agreement survive after the expiration of the agreement.

### B.     2019 Management Agreement and Revenue Sharing Agreement

Similarly, the Management Agreement also contains a broad mandatory arbitration provision stating, among other things, "[i]n the event . . . any dispute arises between the parties . . . related to the performance of the duties stipulated under this agreement, violation of this

agreement, and so on . . . to be resolved based on the arbitration of Korea Commercial Arbitration Board." (Ex. B, at 10.) The Seven Circuit Court of Appeals held in *Gore*, that "the parties can be compelled to arbitration only if (1) the clause itself broad enough to encompass their dispute, or (2) the agreement containing the arbitration clause incorporates the other agreement [that does not contain an arbitration clause] by reference." *Gore v. Alltel Communs.*, LLC, 666 F.3d 1027, 1033 (7th Cir. 2012). Indeed, when reference is made to another writing in a contract for a particularly designated purpose, the other writing becomes a part of the contract for the purpose specified. *See Shriner v. Signal Fin*. Co., 92 Fed. Appx. 322, 327 (7th Cir. 2003). Moreover, the Supreme Court of Korea held in Case No. 96Da24385 that arbitration is binding to the parties of a contract not only when that contract contains an arbitration provision, but also when it references other documents, including more general documents, that contain an arbitration provision. Supreme Court [S. Ct.], 96Da24385, Feb. 25, 1997 (S. Kor.).

Here, Article 10 of the Management Agreement provides that a separate revenue sharing agreement concerning the FinFET patent litigation in progress shall be prepared, and the agreement to which Article 10 of the Management Agreement refers is the Revenue Sharing Agreement. (Dkt. 30, ¶¶ 36-37; *see* Ex. C.) The Revenue Sharing Agreement states that the parties to the contract "shall agree on the revenue sharing for "FinFET technology" related patents (referring to Korean patent registration no. 10-0458288 and US patent registration no. 6,885,055. . ..) (Ex. C, at 1) Article 2-A of the Revenue Sharing Agreement states that the Revenue Sharing Agreement is a supplementary agreement entered in accordance with Article 10 of the Management Agreement." (Ex. C, at 2.) Thus under *Shriner*, the references to the Revenue Sharing Agreement are made in the Management Agreement for a particularly designated purpose of distributing profit for the patent related to the FinFET technology, and the Revenue Sharing

Agreement also confirms that it is the agreement supplemental to the Management Agreement for the same purpose. Because the Management Agreement explicitly references the Revenue Sharing Agreement for a particularly specified purpose and the Revenue Sharing Agreement confirms that all of its terms are supplemental to and thus incorporated in the Management Agreement, all of the terms in the Revenue Sharing Agreement are incorporated by reference and part of the Management Agreement, that are thus subject to the Management Agreement's arbitration clause.

KAIST's Counts II and III allege P&IB's breach of duty under the Management Agreement and KIP and KIPB's breaches of duty under the Revenue Sharing Agreement, and Count IV alleges P&IB and KIP's breaches of duty to deal in good faith and fairly with KAIST under the Management Agreement and the Revenue Sharing Agreement. (Dkt. 30, ¶¶ 62-79.) The claims all relate to disputes regarding KIP, KIPB, and P&IB's performance of their duties arising under, and their (alleged) violation of, the Management Agreement. As such, Counts II, III, and IV are subject to the mandatory arbitration clause of the Management Agreement.

While Count V fails to clearly identify the alleged wrongdoer or the claim's factual basis, it appears to allege KIP, P&IB, and Kang allegedly breached their fiduciary duties to KAIST arising out of contract, which presumably means either Business Agreement, Management Agreement, or Revenue Sharing Agreement, or a combined controlling interest in KIP. (Dkt. 30, ¶ 81). Regardless of which contract Count V refers to when it alleges KIP, P&IB, and Kang had fiduciary duties arising "out of contract," because any such claim will fall within the ambit of "any dispute over the contents of the [Business Agreement]" or "any dispute . . . related to the performance of the duties stipulated under [the Management Agreement], or "violation of [the

Management Agreement]," Count V must be subject to either of the aforementioned two arbitration clauses[2].

Also, even assuming KAIST's breach of fiduciary duty claim arose out of KIP, P&IB, and Kang's "controlling interest in KIP," any and all duties concerning such controlling interest in KIP are governed exclusively by Article 3 (Governance Structure) of the Management Agreement (titled "Basic Agreement for the Management of KIP Co., Ltd.") that contains the arbitration provision. Only P&IB, Kang, and KAIST[3] have ownership interests in KIP under Article 3. (Ex. B, at 8.)

Indeed, the arbitration provision of the Management Agreement provides any dispute "*related to the performance of the duties stipulated* under this agreement" must "be resolved based on the arbitration of Korea Commercial Arbitration Board." If the Court were to accept KAIST's allegation as true that there exist fiduciary duties by P&IB and Kang to KAIST (a shareholder of

---

[2] KAIST named Kang as a defendant in this case in his role and capacity as the CEO of P&IB and part owner of KIP and appears to allege breach of Kang's fiduciary duty (allegedly as a decision-making figure of KIP) to KAIST, a shareholder of KIP under the Management Agreement. (Dkt. 1-1, ¶¶ 9, 92.) Kang is not a signatory to the Management Agreement (or the Business Agreement). (Ex. A, Ex. B) However, federal courts have consistently held "in a derivative claim brought by a plaintiff against non-signatories to a contract, that non-signatory officers and directors may utilize a corporation's agreement to arbitrate where, as here, those officers and directors control the activities of the corporation." *McPheely v. Adams*, 2013 U.S. Dist. LEXIS 177591, *26 (D.S.C. 2013) (citing *Long v. Silver*, 248 F.3d 309, 319 (4th Cir. 2001)); *see also Arnold v. Arnold Corp.*, 920 F.2d 1269, 1281 (6th Cir. 1990) (holding that non-signatory corporate officers sued in their individual capacity can, under agency principles, invoke the arbitration agreement between the plaintiff and the corporate defendant for conduct that occurred during their official corporate duties and capacities); *see Benefits in a Card, LLC v. TALX Corp.*, No. 6:06-cv-03655-GRA, 2007 U.S. Dist. LEXIS 16321, 2007 WL 750638, at *10 (D.S.C. Mar. 7, 2007) (holding that "a non-signatory officer of a signatory corporation may compel arbitration when the disputed actions are intertwined with his duties to the corporation"); *Collie v. Wehr Dissolution Corp.*, 345 F. Supp. 2d 555, 562 (M.D.N.C. 2004) (holding that non-signatories to an arbitration agreement may be bound by or enforce an arbitration agreement executed by other parties under principles of contract and agency law). Accordingly, the non-signatory Kang, allegedly a decision-making figure of KIP who controls the activities of the entity, may enforce the arbitration clause under the Management Agreement.

[3] KIP cannot have fiduciary duty arising out of its controlling interest in itself.

KIP) arising out of their controlling interests in KIP (they do not), then the performance of such duties are created and stipulated under the Management Agreement, which renders any dispute regarding the performance of P&IB or Kang's duties to be subject to the arbitration clause of the agreement.

While two arbitration clauses in the Business Agreement and the Management Agreement require the parties to arbitrate before the Korean arbitral forum, Korea Commercial Arbitration Board[4], they do not specifically designate a location of the arbitration. Article 21-2 of the Korean Arbitration Act ("KAA") provides that, if parties have not agreed on a location of arbitration, the arbitration tribunal must decide the location by considering convenience of the parties and all circumstances concerning the case at hand.[5] *See* Joongjaebeob [Arbitration Act], Act No. 1767, Mar. 16, 1966, *amended by* Act No. 16918, Feb. 4, 2020 (S. Kor.). Here, the parties to the agreements, KAIST, KIP, and P&IB, are created under the laws of Korea and reside in Korea, any discoverable documents and potential witnesses concerning the parties' proceeding will be found in Korea, and the native language of the parties and potential witnesses of such proceeding is Korean. Any location outside of Korea will be significantly inconvenient to the parties and all surrounding circumstances concerning the parties' dispute point to Korea as the adequate physical location of arbitration. As such, the tribunal of such proceeding is bound to order the location to be in Korea pursuant to Art. 21-2 of the KAA.

---

[4] While KIPB is a Texas entity, because it is a party to the Revenue Sharing Agreement, the terms of which are fully incorporated by Reference in the Management Agreement (Dkt. 1-1, ¶ 38.), it is also subject to the arbitration provision in the Management Agreement.

[5] The original Korean language of Article 21-2 of the Korean Arbitration Act is "제 1 항의 합의가 없는 경우 중재판정부는 당사자의 편의와 해당 사건에 관한 모든 사정을 고려하여 중재지를 정한다."

In sum, Counts I, II, III, IV, and V are clearly the kinds of disputes which the parties had agreed in writing to arbitrate before the Korea Commercial Arbitration Board and, when they arbitrate in KCAB, must do so in Korea. As this Court is outside the parties' agreed-upon non-federal forum in Korea and thus cannot compel the parties to arbitrate any of their substantive claims related to the Business Agreement or Management Agreement in Korea, it should instead order a dismissal of the claims in accordance with the meaning of Section 4 of the FAA. Dismissal of a case is particularly appropriate when a "[p]laintiff has violated a contractual obligation by filing suit in a forum other than one specified in a valid forum selection clause and *the court lacks authority to transfer the case to the contractually selected forum*." *Watch & Accessory Co. v. Garmin Int'l, Inc.*, 2021 U.S. Dist. LEXIS 247893, *5 (E.D. Wis. 2021) (emphasis added). That is precisely what happened in this case. KAIST has violated the forum selection clauses of the Business and Management Agreements by filing a lawsuit in a forum other than the one specified in the clauses. While § 1404(a) enables a federal court to transfer a case to another federal forum, it is powerless to transfer a case to an adjudicative authority in foreign nation. *See AMSOIL, Inc. v. Remver, LLC*, 2021 U.S. Dist. LEXIS 152642, *15 (W.D. Wis. 2021). Thus, the Court lacks authority to transfer this case under § 1404(a) to the contractually selected, foreign forum in this case. The application of the residual doctrine of *forum non conveniens* is therefore particularly warranted.

Moreover, when the case involves a valid forum selection clause, that clause is given controlling weight. *Hupy & Abraham, S.C. v. Quintessa LLC*, 2021 U.S. Dist. LEXIS 223633, *8 (E.D. Wis. 2021). In such case, the parties' private interests drop out of the equation in considering whether a § 1404(a) motion or a *forum non conveniens* motion is proper and "the court's analysis is limited to 'public-interest factors.'" *Id*. "Public interest factors may include 'the administrative

difficulties flowing from court congestion; *the local interest in having localized controversies decided at home*; and the interest in having the trial of a diversity case in a forum that is at home with the law.'" *Atl. Marine Constr. Co. v. United States Dist. Court*, 571 U.S. 49, 68 n.6. (2013) (emphasis added).

Here, the KIP Entities (all except KIPB) are organized under the laws of Korea, they and Kang reside in Korea, the original agreements at issue were written in Korean, the parties to the agreements had presumably discussed and negotiated the terms of the agreements in Korea in Korean, and they intended to resolve any dispute among them before a Korean adjudicatory authority as evidenced by the agreements' forum selection clauses. The public interest factor of "the local interest in having localized controversies decided at home" under *Atl. Marine* weighs significantly in favor of granting KIP Entities and Kang's *forum non conveniens* motion. For these reasons, KAIST's Counts I, II, III, IV, and V should be dismissed and presumably re-filed before the Korea Commercial Arbitration Board in Korea.

III. **KAIST's Counts I and II Should Be Dismissed Because KIP Has No Obligations Concerning the U.S. Patent Under the Business Agreement and P&IB Has No Obligations Concerning the Actions of a Non-Party Under the Management Agreement**

Under Wisconsin law, in order to plead a viable breach of contract claim, the plaintiff must prove (a) "a contract between the plaintiff and the defendant," (b) "failure of the defendant to do what it undertook to do," and (c) "damages." *Brunclik v. Keystone Insights*, 2019 Wisc. App. LEXIS 356, *4-5 (Ct. App. 2019) (emphasis added). Indeed, when a party did not agree to undertake something under the contract, there exists no obligation on the party and thus no binding contract as to such thing. *See Pessin v. Fox Head Waukesha Corp.*, 230 Wis. 277, 282 N.W. 582 (1938) (holding that beer distributor contract failed where distributor had no obligation to sell beer he purchased).

Such a rudimental principle of contract is certainly recognized under Korean law as well. Seoul Eastern District Court held in Case No. 2010Ga-Hap4217 that, when there was no agreement between the parties regarding the plaintiff's obligation to package cottonseed products in a 40-foot container under a cottonseed sales contract, the plaintiff's not performing the aforesaid, alleged obligation does not constitute a breach of contract. Seoul Eastern District Court [Dist. Ct.], 2010Ga-Hap4217, Dec. 10, 2010 (S. Kor.), aff'd, Seoul High Court [Seoul High. Ct.], 2011Na8463, Oct. 27, 2011 (S. Kor.). Furthermore, the Supreme Court of Korea held in Case No. 95Da5615 that, when a method of dividing a joint real property was agreed upon by a limited number of co-owners of the property, the obligation to divide the property pursuant to that method of division is not binding upon the owners who were not parties to the agreement on the method. Supreme Court [S. Ct.], 95Da5615, Sep. 6, 1996 (S. Kor.).

A.    KAIST's Business Agreement with KIP

It is undisputed in this case that (1) KAIST is the owner of the Korean Patent and (2) KAIST has had no rights in the U.S. Patent at any time. (Dkt. 30, ¶¶ 16, 24.) According to KAIST, the litigation funding agreement states that Paulina would provide KIP and KIPB up to $6,000,000 in funding for the Patent Litigation and receive a 350% return on the $6,000,000 if the litigation was successful (*Id.* ¶ 43, 24) Because the only patent litigation KAIST pleads in its Amended Complaint is the U.S. Patent Litigation which KIPB filed against Samsung corporate entities, Global Foundries U.S. Inc., and Qualcomm Inc. in the federal district court for the Eastern District of Texas, and KIPB is the sole owner of the U.S. Patent, the Patent Litigation under the litigation funding agreement must mean the patent litigation concerning **the U.S. Patent** in the Eastern District of Texas. That is, the litigation funding agreement between KIP or KIPB and Paulina was for the U.S. Patent infringement suit and the agreement solely concerns the U.S. Patent. Indeed,

17

neither of the parties to the funding agreement has any ownership interests in the Korean Patent, which KAIST owns and can dispose any or all of the rights therein.

The Amended Complaint alleges KIP violated the Business Agreement because KIP failed to discuss KIPB's U.S. Patent litigation funding from Paulina with KAIST and disclose the funding agreement with Paulina, erroneously believing any matters concerning the U.S. Patent must also be discussed mutually by KAIST and KIP under the Business Agreement (*Id.*, ¶¶ 58-60.) However, the actual language of Article 9 of the Business Agreement provides that matters not stated in this agreement must be consulted mutually by KAIST and KIP "*to achieve the purpose of this Agreement.*" (Ex. A, at 3.) Article 1 of the agreement provides such purpose is "to promote maximum profit generation through active exercise of such Strong Intellectual Property Rights." (*Id.*, at 1.) Article 2, Subsection 2(A) of the agreement clarifies the meaning of the "active exercise of such Strong Intellectual Property Rights" under Article 1 by stating that KIP "shall select intellectual property rights that can be actively exercised by continuously investigating and analyzing cases of unauthorized execution of third parties on ***intellectual property rights held by KAIST.***" (*Id.* (emphasis added).) Article 2, Subsection 2(B) also clarifies the meaning of it by noting that KIP "may request KAIST to grant exclusive licenses or transfer rights of the relevant intellectual property rights when it selects intellectual property rights that can be actively exercised. . . ." (*Id.*, at 2.) In short, the purpose of the Business Agreement is unambiguously to promote maximum profit generation through exercise of **the intellectual property rights owned by KAIST**, which is the Korean Patent in this case. Nowhere in the four corners of the Business Agreement discusses the rights or imposes on KIP any obligations concerning the U.S. Patent. Indeed, the Business Agreement imposes no contractual obligation on KIP as to what KIP or KIPB should do in connection with the patent that KAIST does not own.

Therefore, even assuming the truth of KAIST's allegations that KIP failed to discuss U.S. Patent litigation funding with KAIST and also failed to disclose the funding agreement concerning the exercise of the U.S. Patent with Paulina, KAIST's claim that KIP breached the Business Agreement must fail. KIPB or KIP's entering into a funding agreement with Paulina in enforcing the U.S. Patent with which KAIST has no relationship whatsoever is completely outside the scope of KIP's obligations under the agreement. KAIST pled itself out of court. There exists no binding agreement between KAIST and KIP in connection with the U.S. Patent, and KIP never undertook to do anything in connection with the U.S. Patent under the Business Agreement. Accordingly, KAIST wholly failed to piece together a viable claim against KIP under Count I.

**B.     KAIST's Management Agreement with P&IB**

The Amended Complaint alleges in Count II that (1) KIP was required to "obtain KAIST's informed consent and approval before proceeding with any revenue generating activity", and (2) P&IB breached the Management Agreement "by directing KIP to distribute settlement proceeds to Paulina and to engage in settlement negotiations with Paulina without informing KAIST in a timely manner or involving KAIST in any meaningful way." (Dkt. 30, ¶¶ 64-65.). KAIST's alleged breach allegations against P&IB must also fail on its face because the Management Agreement does not impose any contractual obligation on P&IB to supervise KIP or direct KIP to act in any particular manner. Thus, assuming that KIP was required to act in a particular manner under the Management Agreement (as alleged by KAIST), KAIST still failed to piece together a viable breach of claim against P&IB under Count II because P&IB had no obligation to direct KIP in the aforesaid manner under the Management Agreement to begin with.

# CONCLUSION

For these reasons, the Court should dismiss KAIST's Counts I, II, III, IV, and V under the doctrine of *forum non conveniens*, and Counts I and II, in the alternative, for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6).

Dated: June 3, 2022

Respectfully submitted,

*/s/ Hyung Gyu Sun*
Hyung Gyu Sun (No. VA 93070)
David Ludiwg (No. VA 73157)
DUNLAP BENNETT & LUDWIG
211 Church Street SE
Leesburg, VA 20175
(703) 777-7319
hsun@dbllawyers.com
dludwig@dbllawyers.com

Robert P. Greenspoon (No. IL 6229357)
DUNLAP BENNETT & LUDWIG
333 N. Michigan Ave
Suite 2700
Chicago, IL 60601
(312) 551-9500
rgreenspoon@dbllawyers.com

*Counsel for Defendants KIP Co., Ltd., P&IB Co., Ltd., In Gyoo Kang, and KIPB LLC*

## CERTIFICATE OF SERVICE

        I hereby certify that on this 3rd day of June 2022, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing. Based on the records currently on file, the foregoing was served by electronic delivery to the following registrants:

| | |
|---|---|
| Jerome C. Mohsen<br>Daniel Manna<br>GASS TUREK LLC<br>241 N. Broadway, Suite 300<br>Milwaukee, Wisconsin 53202<br>(414) 223-3300<br>mohsen@gassturek.com<br>manna@gassturek.com | Christopher J. Schreiber<br>Alexander M. DeGuire<br>MICHAEL BEST & FRIEDRICH LLP<br>790 North Water Street, Suite 2500<br>Milwaukee, WI 53202<br>(414)271-6560<br>cjschreiber@michaelbest.com<br>amdeguire@michaelbest.com |
| Steven M. Biskupic, SBN 1018217<br>Justin J. Dreikosen, SBN 1094426<br>BISKUPIC & JACOBS, S.C.<br>1045 West Glen Oaks Lane, Suite 106<br>Mequon, WI 53092<br>(262) 241-3300<br>sbiskupic@biskupicjacobs.com<br><br>Adam L. Hoeflich (No. IL 6209163)<br>Anastasiya Maione (No. IL 6327120)<br>Lee Mason (No. IL 6330090)<br>BARTLIT BECK LLP<br>54 W. Hubbard Street, Suite 300<br>Chicago, IL 60654<br>(312) 494-4400<br>adam.hoeflich@bartlitbeck.com<br>stacy.maione@bartlitbeck.com<br>lee.mason@bartlitbeck.com<br><br>Jason C. Murray (No. CO 43652)<br>BARTLIT BECK LLP<br>1801 Wewatta Street, Suite 1200<br>Denver, CO 80202<br>(303) 592-3100<br>jason.murray@bartlitbeck.com | |

                      */s/ Hyung Gyu Sun*_____
                      Hyung Gyu Sun