# EXHIBIT B

# 주식회사 케이아이피 운영을 위한 기본협약서

이 협약은 한국과학기술원(이하 "KAIST")와 주식회사 피앤아이비(이하 "P&IB") 사이에 2012. 5. 29. 체결된 (가칭) "카이스트 아이피 설립협약서" 및 "'(가칭)카이스트 아이피 설립협약서'의 이행과 준수를 위한 부속합의서" (이하 "기존 협약")의 후속 협약으로서 주식회사 케이아이피 운영을 위한 기본 협약이다.

## 제1조(기본사실)

1. KAIST와 P&IB는 기존 협약에 따라 2012. 6. 18. 카이스트아이피 주식회사(KAIST-IP Co.,Ltd)를 설립하였고, 카이스트아이피 주식회사(KAIST-IP Co.,Ltd)는 2017. 6. 9. 주식회사 케이아이피(이하 "KIP")로 상호를 변경하였다.
2. KAIST는 KIP 발행주식 65%를 소유한 최대주주이고, P&IB는 KIP 발행주식 35%를 소유한 2대주주이다.
3. KIP는 KAIST 소유 특허권 등 지식재산권의 기술이전 및 수익 창출을 목적으로 설립되었다.
4. KIP는 목적 사업의 수행을 위하여 자회사를 설립하였다.

## 제2조(협약의 효력 등)

이 협약은 기존 협약을 대체하는 기본 협약이고, 이 협약이 효력 발생함과 동시에 기존 협약은 효력을 상실한다. 기존 협약에 부수하여 작성된 2012. 7. 2.자 업무협약서를 대체할 새로운 업무협약

서도 체결하기로 한다.

### 제3조(지배구조)

1. KAIST와 P&IB는 KIP의 발행주식 보유지분을 KAIST 48.5%, P&IB 48.5%, KIP 대표이사 3%로 각각 변경하기로 한다.
2. 전항의 보유지분 변경은 KIP 유상증자를 통하여 실시하되, P&IB와 KIP 대표이사가 유상증자로 신규 발행되는 주식 전부를 인수하고 인수대금을 전액 납입하기로 한다.
3. 보유지분 변경을 위한 유상증자 등 절차의 실무는 P&IB가 진행하며 세부사항은 KAIST와 협의하여 진행한다. 유상증자 절차는 이 협약 효력발생일로부터 1개월 이내에 완료하기로 한다.
4. KAIST의 보유 지분율은 협약 이후에도 유지되도록 보장된다.

### 제4조(이사 및 감사)

1. 이사회는 KIP의 경영을 책임지는 P&IB가 구성하며, 감사는 KAIST가 추천권을 갖는다.
2. 전항의 이사회 구성 및 감사의 추천에 관한 사항은 양당사자의 합의로 변경할 수 있다.
3. KAIST는 KIP의 대표이사가 이 협약을 위반하거나 KIP 정관을 위반하거나 범죄행위 기타의 사유로 KAIST의 명예를 손상시킨 경우 대표이사 교체를 요구할 수 있고 P&IB는 이에 따라야 한다. 여기서, 범죄행위나 KAIST의 명예를 손상시킨 행위는 객관적으로 입증된 경우에 한한다.

## 제5조(수익의 배분)

1. KIP(KIP의 자회사를 포함한다. 이하 이 조에서 같다)가 KAIST 소유 특허권 등 지식재산권을 이용하여 기술이전, 침해소송 기타 형태를 불문하고 수익을 창출한 경우 수익 창출에 사용된 필요경비를 제외한 수익 중 회사 유보금으로 5%를 공제한 후 이의 65%를 KAIST에, 35%를 P&IB에 지급한다.
2. KIP가 KAIST 소유의 지식재산권과 제3자 소유의 지식재산권을 포함한 포트폴리오를 구성하여 기술이전, 침해소송 또는 기타 형태의 수익을 창출하고자 하는 경우에는 양당사자 간의 협의를 통해 수익 배분율을 사전에 정하여야 한다.
3. 전 1항 및 2항의 수익 창출에 사용된 경비는 그 내역이 수익 창출을 위해 지출된 증빙이 있는 경우에 한하여 인정된다.
4. 수익의 지급은 수익이 발생한 건별로 지체없이 시행하며 세부적인 사항은 KAIST와 합의하여 시행한다.

## 제6조(사전 통지 및 승인 절차)

1. KIP는 제3자를 상대로 KAIST 소유 특허권 등 지식재산권의 기술이전, 침해소송 제기 등 구체적 수익 창출을 위한 행위를 개시하기에 앞서 KAIST에 사전에 문서로써 그 사실을 통지하여야 한다.
2. KAIST는 전항을 통지를 받은 즉시 기존 계약 존재 여부, 소송의 승소가능성, 장애요소 등에 대한 검토를 하고 KIP에 승인 여부를 통지한다.

3. KIP는 KAIST의 사전 승인 문서를 받지 못하면 수익 창출 행위에 착수하지 못한다.

4. KAIST는 전 항에 의해 승인된 수익 창출 행위가 착수된 사안에 대해서는 이후에 수익 창출 행위를 직·간접적으로 방해하거나 직권으로 이의 승인을 취소하지 못한다.

## 제7조(KIP의 정관 변경)

이 협약의 내용을 반영하고 KIP의 운영기준을 확립하기 위하여 KIP 정관을 변경하기로 한다. 정관 변경의 세부안은 임시주주총회를 개최하여 확정하기로 한다.

## 제8조(당사자의 협조)

1. KIP는 사업 수행을 위하여 필요한 경우, 해당 지식재산권의 발명신고서, 국가 또는 기업 수탁 과제 협약서, 출원 명세서 등의 정보의 열람 및 KAIST 소유 특허권의 양도 또는 전용 실시권 부여 등을 요청할 수 있고, KAIST는 이에 최대한 협조하여야 한다.

2. KIP는 전 1항에 따라 열람 또는 제공받은 발명신고서, 국가 또는 기업 수탁 과제 협약서, 출원 명세서(특허 공개 전인 경우에 한함) 등의 정보를 포함하여 사업 수행 과정에서 KAIST로부터 취득한 정보를 비밀로 취급할 의무가 있으며, KAIST의 사전 서면 승인 없이는 이를 외부에 공개 또는 제3자에게 제공하여서는 안 된다.

## 제9조(협약의 해지)

1. 양 당사자는 상대방이 본 협약의 내용을 위반한 경우 이를 바로잡아 줄 것을 청구할 수 있으며 그러함에도 협약 위반이 계속될 경우 본 협약을 해지할 수 있다.
2. KAIST는 KIP, P&IB가 법령 위반 기타 사유로 KAIST의 명예나 신용을 손상시키는 행위를 하였다고 인정되는 경우 즉시 본 협약을 해지할 수 있다. 여기서, 범죄행위나 KAIST의 명예를 손상시킨 행위는 객관적으로 입증된 경우에 한한다.
3. 양 당사자는 어느 일방의 본 협약 위반을 이유로 협약이 해지되는 경우 상대방에게 손해배상을 청구할 수 있으며, KAIST의 경우에는 KAIST보유 지분의 매수를 청구할 수 있다.

## 제10조(보충 협약)

양 당사자는 이 협약의 이행을 위하여 또는 이 협약에 없는 사항을 정하기 위하여 보충적인 업무협약서를 체결할 수 있다. 현재 진행중인 Fin-FET 특허 소송과 관련된 수익의 배분 협약은 별도로 작성하기로 한다.

## 제11조(분쟁의 해결)

본 협약의 규정에 대한 이행 여부, 위반 여부 등과 관련하여 양 당사자 간에 분쟁이 발생하는 경우, 일차적으로는 양 당사자 간의 원만한 협의를 통해 해결하기로 하며, 협의로 해결되지 않는 사안에 대해서는 대한상사중재원의 중재 판정에 따라 최종 해결하기

로 한다.

2019. 10. 2.

KAIST                                   P&IB

한국과학기술원                          주식회사 피앤아이비
대전 유성구 대학로 291                서울 송파구 법원로 11길7
총장 신성철 (인)                        대표이사 강인규 (인)



# Basic Agreement for the Management of KIP Co., Ltd.

This agreement follows the (so called) "KAIST IP Setup Agreement" and the "Supplementary Agreement for the Implementation of and Adherence to the '(so called) KAIST IP Setup Agreement'" (hereinafter referred to as "the existing agreements") entered between Korea Advanced Institute of Science and Technology (hereinafter referred to as "KAIST") and P&IB Co., Ltd. (hereinafter referred to as "P&IB") on May 29, 2012, and constitutes the basic agreement to manage KIP Co., Ltd.

**Article 1 (Basic Facts)**
1. In accordance with the existing agreements, on June 18, 2012 KAIST and P&IB set up KAIST-IP Co., Ltd., and on June 9, 2017 KAIST-IP Co., Ltd. changed its trade name to KIP Co., Ltd. (hereinafter referred to as "KIP").
2. KAIST is the largest shareholder with ownership percentage of 65% of the shares issued by KIP, and P&IB is the second largest shareholder with ownership percentage of 35% of the shares issued by KIP.
3. KIP was established in order to transfer intellectual property rights owned by KAIST such as patents, and so on, and to generate profit.
4. KIP set up a subsidiary company in order to carry out its intended business activities.

**Article 2 (Effectiveness of the Agreement)**
This agreement is the basic agreement that replaces the existing agreements, and the existing agreements lose validity when this agreement becomes effective. New work agreement that will replace the work agreement prepared on July 2, 2012 to supplement the existing agreements will be entered as well.

**Article 3 (Governance Structure)**
1. KAIST and P&IB shall change ownership percentages of the shares issued to 48.5% for KAIST, 48.5% for P&IB, and 3% for KIP's representative director.
2. The share percentage changes of Article 3.1 above shall be carried out through additional paid-in capital from KIP, with P&IB and KIP's representative director acquiring all new shares issued through the additional paid-in capital and paying the entire amount for the new shares.
3. P&IB shall carry out the actual procedures such as the procedures for additional paid-in capital to change the share ownership percentages, and shall discuss with KAIST in carrying out the detailed procedures. The additional paid-in capital procedures shall be completed within one month after this agreement takes effect.
4. KAIST ownership percentage shall be guaranteed even after this agreement is entered.

**Article 4 (Directors and Auditors)**
1. The board of directors shall be composed by P&IB, which is responsible for managing KIP, and KAIST shall have the right to recommend auditors.

2. Details regarding the composition of the board of directors and recommendation of auditors may be changed based on mutual agreement between the parties.
3. In the event KIP's representative director violates this agreement or violates KIP's articles of incorporation, or damages KAIST's reputation by committing crimes or by any other activities, KAIST may demand to replace the representative director, and P&IB shall acquiesce to such a demand. Here, criminal activities or activities that damage KAIST's reputation must be proven with objective facts.

**Article 5 (Distribution of Profits)**
1. In the event that KIP (including KIP's subsidiary companies, same in the remainder of Article 5) generates profit by transferring technologies using intellectual properties such as the patents owned by KAIST, by filing infringement litigations, or by any other means, after deducting 5% to be kept by the company after subtracting the necessary expenses used for generating profit, 65% shall be paid to KAIST, and 35% shall be paid to P&IB.
2. In the event that KIP intends to transfer technologies by forming a portfolio that includes intellectual property rights owned by KAIST as well as intellectual property rights owned by third parties, by filing infringement litigations, or by other means, the profit distribution rates shall be determined in advance based on mutual agreement between the parties.
3. The expenses incurred to generate profit mentioned in Article 5.1 and Article 5.2 above shall be accepted only if there is evidence to prove that the expenses were incurred to generate profit.
4. Profit shall be distributed without delay as soon as profit is generated, and detailed procedures shall be carried out based on mutual agreement with KAIST.

**Article 6 (Advance Notification and Approval Procedures)**
1. Prior starting specific activities to generate profit such as transferring technologies based on the intellectual properties owned by KAIST such as its patents to a third party, filing an infringement lawsuit against a third party, and so on, KIP shall notify KAIST in advance in writing of KIP's intentions.
2. As soon as being notified as described in Article 6.1 above, KAIST shall review whether there are any existing contracts, probability of winning the litigation, obstacles, and so on, and shall notify KIP regarding KIP's approval or disapproval.
3. KIP shall not start profit generating activities unless obtaining KAIST's prior written approval.
4. KAIST shall not obstruct direction/indirectly profit-generating activities or cancel approval for any case for which approval was obtained in accordance with Article 6.3 above and for which profit generating activities have already started.

**Article 7 (Modification of the Articles of Incorporation of KIP)**
In order to reflect the content of this agreement and in order to establish operational standards of KIP, KIP's articles of incorporation shall be modified. Details of the modification of the articles of incorporation shall be confirmed at a temporary shareholders' meeting.

**Article 8 (Cooperation of the Parties)**

1. If necessary in order to carry out business activities, KIP may request to have access to such information as the invention notifications of applicable intellectual property rights, governmental or corporate project agreements, patent applications, etc., may request to be transferred or have exclusive license for patents owned by KAIST, and so on, and KAIST shall cooperate as much possible to satisfy such requests.
2. KIP has the obligation to treat information obtained from KAIST in the process of carrying out its business activities including the invention notifications, national or corporate project agreements, patent applications (limited to applications prior to public disclosure), and so on to which access was granted or which was provided in accordance with Article 8.1 above, and shall not disclose this information to outside parties or provide this information to any third party without prior written approval of KAIST.

**Article 9 (Cancellation of the Agreement)**
1. In the event that either party violates this agreement, the party not at fault may request the party at fault to rectify the situation, and may cancel this agreement in the event that violations of the agreement continue.
2. In the event that it is acknowledged that KIP or P&IB engaged in activities that damaged KAIST's reputation or credibility by violating the law or for any other reasons, KAIST may cancel this agreement immediately.  Here, criminal activities or activities that damaged KAIST's reputation must be proven objectively.
3. In the event that the agreement is cancelled due to violation of this agreement by either party, the party not at fault may demand the party at fault to compensate for damages, and in the case of KAIST, KAIST may demand to purchase the shares owned by KAIST.

**Article 10 (Supplementary Agreements)**
Both parties to this agreement may enter into supplementary work agreements in order to carry out the duties under this agreement or to stipulate those issues not included in this agreement.  A separate profit distribution agreement related to the Fin-FET patent litigation in progress shall be drawn up.

**Article 11 (Resolution of Disputes)**
In the event that any dispute arises between the parties to the agreement related to the performance of the duties stipulated under this agreement, violation of this agreement, and so on, the parties shall try to resolve such a dispute smoothly based on mutual agreement first, and any issues that still remain to be resolved shall be resolved based on the arbitration of Korea Commercial Arbitration Board.

October 2, 2919

**KAIST**

**Korea Advanced Institute of Science and Technology**
**291 Dehak-ro, Yuseong-gu, Daejeon**
**President Sungcheol Shin (seal)**

**P&IB**
**P&IB Co, Ltd.**
**7 11-gil, Beopwon-ro, Songpa-gu, Seoul**
**Representative director Inkyu Kang (seal)**



# TRANSLATION CERTIFICATION

Date: August 16, 2021

To whom it may concern:

This is to certify that the attached translation is an accurate representation of the documents received by this office. The translation was completed from:

- **Korean**

To:

- **English**

The documents are designated as:

- **38**

Taylor Liff, Project Manager in this company, attests to the following:

"To the best of my knowledge, the aforementioned documents are a true, full and accurate translation of the specified documents."

_____
Signature of Taylor Liff

CERT-07, 2020-JUN-26, V7