**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**

---

KOREA ADVANCED INSTITUTE OF
SCIENCE AND TECHNOLOGY

            Plaintiff,

v.                                      Case No. 2022-CV-317

KIP CO., LTD. f/k/a KAIST IP Co., Ltd.;
P&IB CO., LTD.; IN GYOO KANG;
KIPB LLC f/k/a KAIST IP US LLC;
PAULINA FUNDINGCO, LLC; and
U.S. BANK NATIONAL ASSOCIATION

            Defendants.

---

### KAIST'S MEMORANDUM OF LAW IN OPPOSITION TO
### U.S. BANK'S MOTION TO DISMISS

---

      U.S. Bank is a proper party to this lawsuit because it has an interest in the declaratory relief KAIST has requested. KAIST did not intend to state a claim against U.S. Bank and does not need to do so for U.S. Bank to remain a party. U.S. Bank's motion to dismiss should therefore be denied.

### RELEVANT FACTS

      KAIST is a national research university in the Republic of Korea. (First Am. Compl. ("FAC"), ECF No. 30 ¶ 1.) KAIST owns a Korean patent for the fin field-effect transistor ("FinFET"), a component used by companies such as Apple and Samsung to manufacture their products. (*Id.* ¶¶ 16–17.)

      In 2012, P&IB (a Korean corporation) and KAIST formed KIP, a Korean corporation, to generate revenue using intellectual property to which KAIST has rights.

(FAC ¶¶ 19–20.) Defendant In Gyoo Kang is the CEO of P&IB. (*Id.* ¶ 8.) In a Business Agreement dated July 2, 2012, KIP undertook to generate revenue from intellectual property owned by KAIST (*Id.* ¶ 20.)

In 2016, KIP organized subsidiary KIPB, a Texas LLC, which KIP wholly owns. (FAC ¶ 24.) KIPB owns the U.S. patent for FinFET technology. (*Id.*) KIPB proceeded to sue several Samsung corporate entities, Global Foundries U.S. Inc., and Qualcomm Inc. in the U.S. District Court for the Eastern District of Texas for infringement of the U.S. FinFET patent (the "Infringement Lawsuit"). (*Id.* ¶ 25.) The court entered judgment in favor of KIPB for $203,003,416 on February 19, 2020 after reducing a larger jury award. (*Id.* ¶¶ 26–28.)

KAIST, KIP, and P&IB formalized how they would share revenue from the use of FinFET through two separate agreements executed on October 2, 2019. (FAC ¶¶ 29–30.) First, KAIST and P&IB entered a "Basic Agreement for the Management of KIP Co. Ltd" (the "Management Agreement") under which KIP was required to consult before sharing revenue generated using KAIST's intellectual property. (*Id.* ¶ 31, 32.) KAIST, KIP, and KIPB also executed a separate agreement (the "Revenue Sharing Agreement") which required KIP and KIPB to "deposit in cash on the amount for revenue sharing to KAIST through the KAIST bank account . . . within thirty (30) days from receiving the revenue amount from the licensee" (the Business Agreement, the Management Agreement, and the Revenue Sharing Agreement hereinafter the "Agreements"). (FAC ¶¶ 37–39.)

In late 2020, KAIST learned that KIP and Paulina FundingCo LLC had entered a litigation finance agreement (the "Purchase Agreement") without consulting KAIST.

(FAC ¶¶ 43–44.) KAIST further learned that without consulting KAIST, KIP had already paid Paulina millions of dollars taken from a Korean patent license fee paid by Samsung. (*Id.* ¶¶ 48–50, 74.) KAIST also learned that Paulina had filed an arbitration demand against KIP, KIPB, Jong-Ho Lee, and P&IB with the International Centre for Dispute Resolution, claiming KIP breached the Purchase Agreement (the "Paulina Arbitration"). (*Id.* ¶ 45.) The Paulina Arbitration is still pending. (*Id.* ¶ 51.)

An emergency arbitrator ordered on September 8, 2020, that KIP place money in a trust account pending the end of the Paulina Arbitration, the parties to the arbitration chose a Milwaukee branch of U.S. Bank National Association to create and manage the Trust Account, and at the time of the filing of the FAC, more than 20 million dollars were in the Trust Account. (FAC ¶¶ 47–49.) KAIST alleges the KIP defendants' interactions with Paulina, payments to Paulina, and failure to consult with KAIST regarding those interactions and payments were and are in breach of the three Agreements and related duties. (*Id.* ¶¶ 56–83.)

After KAIST filed this Action in the Circuit Court for Milwaukee County, Paulina removed the Action to this Court under 9 U.S.C. § 203. (ECF No. 1.) No party has disputed that this Court has jurisdiction over this Action. U.S. Bank moved to dismiss under Fed. R. Civ. P. 12(b)6 or in the alternative to be dropped as a party under Fed. R. Civ. P. 21. (ECF No. 37.)

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion, a plaintiff need only allege "enough facts to state a claim to relief that is plausible on its face." *Chicago Studio Rental, Inc. v. Illinois Dep't of*

3

*Com.*, 940 F.3d 971, 977 (7th Cir. 2019) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Thus the plaintiff need only "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

## ARGUMENT

**I.     KAIST alleges facts sufficient to seek declaratory relief as to U.S. Bank.**

There must be an underlying controversy to obtain declaratory relief, and it is sufficient for a person to have an interest in the controversy to be named as a defendant. In fact, "[t]o avoid a partial disposition of a controversy, all persons who have an interest in the determination of the questions raised in a declaratory judgment suit should be before the court." *Diamond Shamrock Corp. v. Lumbermens Mut. Cas. Co.*, 416 F.2d 707, 710 (7th Cir. 1969). In a declaratory judgment action, all interested parties should be joined, even if they did not cause the plaintiff's damages. *Lee v. Bd. of Regents of State Colleges*, 306 F. Supp. 1097, 1100 (W.D. Wis. 1969), *aff'd,* 441 F.2d 1257 (7th Cir. 1971); Notes of Advisory Committee on Federal Rules of Civil Procedure, Fed. R. Civ. P. 57 ("Declaratory Judgment") ("all parties having an interest therein or adversely affected must be made parties or be cited.").

There is no question U.S. Bank has an interest in the determination of the questions raised in this declaratory judgment suit. U.S. Bank does not allege that any of KAIST's claims against other defendants are insufficient. Nor does U.S. Bank allege that the relief sought is not premised on the causes of action. Among other relief, KAIST seeks "declaration that . . . (3) KIP may not cause or consent to the disbursement of funds from

4

the Trust Account without KAIST's informed consent and approval; and (4) KAIST is legally entitled to the funds in the Trust Account." (FAC at 17.) U.S. Bank is the custodian of the funds in the Trust Account, it has an interest in knowing who is legally entitled to the funds, and it has an interest in knowing whether a client's request to disburse funds is in violation of a court order. Whether U.S. Bank wants to passively monitor or actively participate in this action (or do nothing, for that matter), U.S. Bank must be a defendant so that it has an opportunity to decide what to do or not do. Otherwise, the action may result in "a partial disposition of the controversy."

Because U.S. Bank has an interest in the controversy underlying the prayer for declaratory relief, the Court should deny U.S. Bank's motion to dismiss.

## II. KAIST alleges facts sufficient to seek an injunction against U.S. Bank.

U.S. Bank's participation in this case is further appropriate because KAIST has asked for a permanent injunction dictating when U.S. Bank may disburse the funds in the Trust Account. U.S. Bank argues there are insufficient allegations to support KAIST's request, but that is simply incorrect under the law.

Again, U.S. Bank does not allege that any of KAIST's claims against other defendants are insufficient. To issue a permanent injunction, a court considers "(1) whether the plaintiff has suffered or will suffer irreparable injury, (2) whether there are inadequate remedies available at law to compensate for the injury, (3) the balance of hardships, and (4) the public interest." *Sierra Club v. Franklin Cnty. Power of Illinois, LLC*, 546 F.3d 918, 935 (7th Cir. 2008). U.S. Bank does not address those factors and simply argues that KAIST may not be entitled

5

Case 2:22-cv-00317-WED   Filed 07/25/22   Page 5 of 9   Document 44

to an injunction without an underlying cause of action. But KAIST has cognizable causes of action, which U.S. Bank does not challenge, entitling KAIST to the injunction it seeks.

While a court cannot enjoin the "universe of potential violators of its orders," it may enjoin nonparties to prevent parties from violating its orders by proxy. *Eli Lilly & Co. v. Gottstein*, 617 F.3d 186, 195 (2d Cir. 2010). To reach this conclusion, the *Eli Lilly* court, although addressing a request for a permanent injunction, relied on Fed. R. Civ. P. 65 which governs preliminary injunctions. *Id.* Under Rule 65, a court may enjoin parties who are in "active concert or participation" with parties. *Id.* (quoting Fed. R. Civ. P. 65). In that context, the court found that being in active concert or participation mattered, but the motives behind being in active concert or participation were irrelevant. *Id.* at 193.

The purpose and the letter of the rule apply here. U.S. Bank created the Trust Account with other defendants for the purpose of holding funds in trust and disbursing the funds upon resolution of a controversy as to the funds' ownership. U.S. Bank and other defendants acted in concert when they created the account. They are acting in concert in maintaining the account. They will act in concert when U.S. Bank ultimately disburses funds from the account. It does not matter what the motive behind U.S. Bank's acts (providing a service to handle the funds) is different from other defendants (hoping to receive the funds). An injunction against U.S. Bank is proper so that no one finds a loophole and has U.S. Bank disburse funds at the request of a nonparty. An injunction would not harm U.S. Bank and it serves justice.

U.S. Bank may not want to be a party, but it has given the Court no convincing reason to remove it from this case. U.S. Bank's motion should be denied, and it should remain a party until KAIST's requests for declaratory and injunctive relief are decided.

**III. KAIST complied with the permissive requirements of Fed. R. Civ. P. 20.**

Under Fed. R. Civ. P. 20, "[p]ersons . . . may be joined in one action as defendants if . . . any right to relief is asserted against them . . . with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and . . . any question of law or fact common to all defendants will arise in the action."

Here KAIST asserts a right to relief against U.S. Bank (injunctive relief) with respect to a series of transactions or occurrences and common questions of law or fact common to all defendants. Trying to show the contrary, U.S. Bank relies mainly on *Intercon Rsch. Assocs., Ltd. v. Dresser Indus., Inc.*, 696 F.2d 53 (7th Cir. 1982) and claims the facts here are nearly indistinguishable. A closer reading of the decision shows that it does not support U.S. Bank's position and KAIST properly joined U.S. Bank as a defendant.

In *Intercon*, the plaintiff entered into a contract with a French company and its principal shareholder (the French defendants). 696 F.2d at 54. The plaintiff was to secure customers for the French defendants in the American market for a 20% commission. *Id.* The plaintiff found an American company (the U.S. defendant) as a customer, but the French defendants did not pay the plaintiff commissions related to its subsequent transaction with the U.S. defendant. *Id.* at 55. The plaintiff sued the French defendants for breach of contract—and added the U.S. defendant as a defendant only to ask the court to "declar[e]" a lien on sums payable to the French defendants and to "enjoin" the U.S. defendant from

7

paying sums without paying plaintiff first. *Id.* The court found that joinder was improper because, inter alia, Rule 20(a) requirements were not met. *Id.* at 57. The request for a lien did not arise out of the same transaction as the principal action. *Id.* There was no privity between the plaintiff and the U.S. defendant. *Intercon*, 696 F.2d at 57. And the plaintiff's claims against the French defendants were separate and distinct from the events giving rise to the plaintiff's claim for a lien against U.S. defendant. *Id.* Therefore the U.S. defendant was properly dismissed. *Id.* at 57–58. The court also found that keeping the U.S. defendant in the action would violate principles of fundamental fairness, a factor a court should consider when evaluating Rule 20 joinder. *Id.* The court noted that the U.S. defendant should not have to "expend the time and expense of defending" in that action. *Id.* at 58.

Here the principal claims are against the KIP defendants and Paulina, and they are closely related to the requested injunction against U.S. Bank. KAIST alleges that the formation of the Purchase Agreement and subsequent actions, including the Paulina Arbitration and the creation of the Trust Account, were in breach of contracts between KAIST and defendants. (FAC ¶¶ 56–66.) The arbitrator caused the creation of the Trust Account in direct relation with the Paulina Arbitration and its expected outcome. In *Intercon*, the U.S. defendant simply had money of its own, which by itself is not actionable: here the creation of the Trust Account in itself is a breach underlying KAIST's causes of action.

Moreover, U.S. Bank does not have to fight to protect its own assets here, while the U.S. defendant did in *Intercon*. U.S. Bank is already holding assets in trust only to distribute them after the resolution of a dispute. KAIST asks the Court to enjoin U.S. Bank to hold the assets in trust only to distribute them after the resolution of *another* dispute—not a dramatic

8

departure from what U.S. Bank is already doing. In *Intercon*, a hapless customer of the French defendants had its own money threatened by the requested relief. The sanctity of its property was jeopardized. The U.S. defendant was hit by surprise by a broker who wanted to freeze the U.S. defendants' assets in order to get a commission, which the court appropriately found to be unjust. Here, U.S. Bank has no horse in the race, and it may be asked to hold in trust funds until a dispute is resolved, something U.S. Bank was doing in the first place as a service it provides clients.

Thus, KAIST asserts a right to relief against U.S. Bank related to the same series of transactions or occurrences and common questions of law or fact common to all defendants and U.S. Bank was properly joined under Rule 20.

## CONCLUSION

For the above reasons, the Court should deny U.S. Bank's motion and this case should proceed with U.S. Bank as a defendant.

Dated this 25th day of July 2022.

        GASS TUREK LLC

        *s/Daniel A. Manna*
        Daniel A. Manna, SBN 1071827
        Jerome C. Mohsen, SBN 1097525
        241 N. Broadway, Suite 300
        Milwaukee, Wisconsin 53202
        Tel: 414-223-3300
        Fax: 414-224-6116
        manna@gassturek.com
        mohsen@gassturek.com

        *Attorneys for Plaintiff Korea Advanced Institute*
        *of Science and Technology*