**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN**

---

KOREA ADVANCED INSTITUTE OF
SCIENCE AND TECHNOLOGY

                Plaintiff,

v.

KIP CO., LTD. f/k/a KAIST IP Co., Ltd.;
P&IB CO., LTD.;
IN GYOO KANG;
KIPB LLC f/k/a KAIST IP US LLC;
PAULINA FUNDINGCO, LLC; and
U.S. BANK NATIONAL ASSOCIATION

                Defendants.

Case No. 2022-CV-00317

---

### KAIST'S MEMORANDUM OF LAW IN OPPOSITION TO PAULINA FUNDINGCO, LLC'S MOTION TO DISMISS

---

Defendant Paulina FundingCo, LLC incorrectly argues it should be dismissed from this case based upon two fundamental misunderstandings. First, Paulina fails to acknowledge its interest in the declaratory relief KAIST requests, which includes a declaration that KAIST is legally entitled to the escrow fund at the heart of this dispute. Such a declaration would affect Paulina's rights, so Paulina is a proper defendant irrespective of KAIST's claims against Paulina.

Second, Paulina misconstrues KAIST's claims as being premised upon liability for successful litigation, when in reality KAIST's claims against Paulina are based upon past and potential future private agreements with the KIP entities to misdirect a license fee owed to KAIST. KIP's disbursement of $24 million to Paulina was not ordered by any court or

arbitrator, nor will any future payment based upon an agreement of the parties. Paulina received funds outside of the arbitration process to which it is not entitled and that are properly owed to KAIST. Paulina continues to pursue similar voluntary payments despite having full knowledge of contracts between KAIST and the KIP parties that entitle KAIST to certain funds. When KAIST proves these allegations, they will satisfy the elements of both unjust enrichment and tortious interference with contract.

Paulina also deliberately avoids discussing KAIST's ownership of the Korean FinFET patent, which entitles KAIST to the $30 million Korean patent license fee paid by Samsung. KIPB was merely an intermediary for this payment and never owned or had any legal right to the funds. Paulina's security interest does not extend to assets held but not owned by KIPB, so Paulina's argument regarding creditor priority is irrelevant.

## ADDITIONAL PERTINENT BACKGROUND

For a full recitation of the factual history of this case, KAIST refers the Court to the facts and defined terms in its Memorandum of Law in Opposition to Defendants KIP Co., Ltd., P&IB Co., Ltd., In Gyoo Kang, and KIPB LLC'S (the "KIP defendants") Motion to Dismiss (ECF No. 42).

Although Samsung's settlement with KIPB concluded the Infringement Lawsuit, not all funds paid by Samsung were intended to satisfy the judgment arising out of that case. Most significantly, Samsung paid $30 million as a license fee for the Korean FinFET patent, which was not at issue in the Infringement Lawsuit. (First Am. Compl. ("FAC") ¶¶ 25, 74, ECF No. 30.) KAIST, not KIPB, is the sole owner of the Korean FinFET patent. (*Id.* ¶ 16.)

2

Paulina has already collected $24 million of the $30 million Samsung paid for the Korean patent license fee. (FAC ¶¶ 50, 74.) Paulina seeks to force KIP and KIPB to misdirect the remaining funds from the Korean patent license fee, even though KIP and KIPB have no right to do so and such misdirection would directly breach KIP and KIPB's contract with KAIST. (*Id.* ¶ 95.)

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion, a plaintiff need only allege "enough facts to state a claim to relief that is plausible on its face." *Chicago Studio Rental, Inc. v. Illinois Dep't of Com.*, 940 F.3d 971, 977 (7th Cir. 2019) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Thus the plaintiff need only "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Even after *Twombly,* courts must "constru[e] the complaint in the light most favorable to the plaintiff, accepting as true all well-pleaded facts alleged, and drawing all possible inferences in [the plaintiff's] favor." *Odogba v. Wisconsin Dep't of Just.*, 22 F. Supp. 3d 895, 901 (E.D. Wis. 2014) (citing *Tamayo v. Blagojevich,* 526 F.3d 1074, 1081 (7th Cir. 2008)). "A complaint does not need 'detailed factual allegations,' but rather just enough facts to raise it above the level of mere speculation." *Riley v. Vilsack*, 665 F. Supp. 2d 994, 997 (W.D. Wis. 2009). In other words, "*Iqbal* and *Twombly* did not reinstate a regime of code pleading." *Id.*

**ARGUMENT**

**I.   Paulina is a proper party because it has an interest in KAIST's request for declaratory judgment.**

Paulina argues it "has no place in this case," (ECF No. 35 at 20), yet Paulina claims entitlement to the escrow fund at the center of this dispute. Paulina's argument is both inconsistent with its behavior and directly contrary to binding case law. Under Seventh Circuit precedent, Paulina's interest in the escrow fund makes its presence in this case not only appropriate, but mandatory.

"To avoid a partial disposition of a controversy, all persons who have an interest in the determination of the questions raised in a declaratory judgment suit should be before the court." *Diamond Shamrock Corp. v. Lumbermens Mut. Cas. Co.*, 416 F.2d 707, 710 (7th Cir. 1969); *see also Lee v. Bd. of Regents of State Colleges*, 306 F. Supp. 1097, 1100 (W.D. Wis. 1969), *aff'd*, 441 F.2d 1257 (7th Cir. 1971) ("In a declaratory judgment action, wherever possible, all interested parties are to be joined."); *Arvida/JMB Managers, Inc. ex rel. Arvida/JMB Partners, L.P. v. U.S. Fire Ins. Co.*, No. 03 C 988, 2003 WL 21148841, at *2 (N.D. Ill. May 14, 2003) (unreported) ("An entity who has an interest in the determination of questions raised in declaratory actions should be before the court when those questions are resolved.). This is one of the most basic requirements of a declaratory judgment action; as the Advisory Committee explained in 1937, "[t]he petitioner must have a practical interest in the declaration sought and **all parties having an interest therein or adversely affected must be made parties or be cited**." Notes of Advisory Committee on Federal Rules of Civil Procedure, Fed. R. Civ. P. 57 ("Declaratory Judgment") (emphasis added). "An 'interest'

4

Case 2:22-cv-00317-WED   Filed 07/25/22   Page 4 of 12   Document 45

arises if that entity may be affected in some way by the judgment." *Arvida*, 2003 WL 21148841, at *2 (citing cases).

The reason for including all interested or adversely affected parties is rooted in the law of preclusion. If a party is likely to be bound by a declaratory judgment, that party should be a part of the proceedings to have an opportunity to protect its interests. It is only when "all parties who have an interest in the outcome of a declaratory judgment action are joined and will be bound by the judgment of the court [that] a full disposition can be made and this fulfills the purpose of the Declaratory Judgment Act." *Diamond Shamrock Corp.*, 416 F. 2d at 710.

Paulina has an interest in the declaratory relief KAIST seeks and is therefore a proper defendant. KAIST requests a declaration that, *inter alia*, "KIP may not cause or consent to the disbursement of funds from the Trust Account without KAIST's informed consent and approval," and "KAIST is legally entitled to the funds in the Trust Account." (FAC at 17.) Paulina seeks to recover those same funds in arbitration and, should it attempt to settle with KIP, would require KIP's consent to disbursement of the funds to consummate a settlement. A declaration that KAIST is legally entitled to the escrow funds would plainly impact Paulina's ability to recover those funds. A declaration that KIP may not consent to the disbursement of funds would just as plainly impact Paulina's ability to resolve the arbitration. There is no principled argument that Paulina does not have an interest in the declaratory relief KAIST seeks.

KAIST also asks the Court to impose a constructive trust over the escrow funds, to enjoin the trustee, U.S. Bank, from distributing any escrow funds "until KAIST has collected

5

its judgment in this action, and, if KAIST's ability to collect is disputed, such disputes have been resolved in courts of competent jurisdiction." (FAC at 17.) For the same reason Paulina has an interest in KAIST's requested declaratory relief, Paulina also has an interest in KAIST's requested injunctive relief. Paulina would be significantly impacted by any injunction relating to the Trust Account and should be present in this action to avoid "a partial deposition of the controversy." Accordingly, Paulina's request to be dismissed from this case must be denied.

## II. KAIST has alleged sufficient facts to satisfy each of the elements of its unjust enrichment claim against Paulina.

Paulina attempts to cast KAIST's claims against it as a simple fight between creditors, with one creditor (KAIST) bitter about another creditor (Paulina) collecting limited funds from the debtor (KIP/KIPB). This characterization is incorrect and misleading. The funds Paulina improperly received from KIPB were never KIPB's to distribute and KAIST is not simply another creditor trying to leapfrog Paulina in priority. KAIST is and always was the proper owner of the license fee Samsung paid for use of the Korean FinFET patent—a fee KIPB should have transferred to KAIST immediately upon receiving it. Instead, KIP and KIPB diverted the license fee to pay Paulina for an alleged debt completely unrelated to the Korean patent.

Paulina concedes that most of the elements of an unjust enrichment claim are satisfied, arguing only that KAIST failed to properly allege facts showing that Paulina's enrichment was inequitable or unjust. This argument requires the willful disregard of allegations concerning the Korean patent license fee and KAIST's ownership of the Korean

6

patent, because those allegations satisfy the final element of KAIST's unjust enrichment claim.

### a. Factual allegations support KAIST's allegation that it would be inequitable and unjust for Paulina to retain funds meant to compensate KAIST as owner of the Korean FinFET patent.

The only element of unjust enrichment Paulina puts in issue is the final one: "acceptance or retention of the benefit by the defendant under circumstances making it inequitable for the defendant to retain the benefit." *Ulrich v. Zemke*, 2002 WI App 246, ¶¶ 10-11, 258 Wis.2d 180, 654 N.W.2d 458 (citation omitted). KAIST's allegations establish a strong factual basis upon which a finding of inequitable retention may rest. KAIST has alleged that it is the owner of the Korean FinFET patent, (FAC ¶ 16), and that the funds Paulina has received from KIPB were taken from a $30 million payment from Samsung that was designated as a license fee for the Korean patent (*id.* ¶ 74). Paulina has therefore taken funds that were specifically intended to pay KAIST for use of the Korean patent, even though Paulina had no role in funding the defense or enforcement of the Korean patent. Paulina may have funded the action to enforce the U.S. patent, (*see id.* ¶ 25), but Paulina did nothing to earn a share of the Korean patent license fee.

These facts are more than sufficient to support a claim for unjust enrichment. Paulina's improper acquisition and retention of the Korean patent license fee must be redressed. This is true even if Paulina did not deliberately force KIPB to transfer funds to which Paulina had no right. When asserting an unjust enrichment claim under Wisconsin law, "[i]t is not necessary to prove that the recipient of the benefit was at fault or guilty of wrongdoing in any way, but it must be established that as between the parties is would be

7

unfair for the recipient to retain the benefit[.]" Wis. JI-Civil 3028 (2021). As between KAIST, the owner of the Korean patent and intended recipient of the Korean patent license fee, and Paulina, the alleged financier of litigation to enforce the U.S. patent, it is only fair for KAIST to receive the license fee. Paulina had no business receiving it in the first place and has no business retaining it now.

### b. Paulina's alleged creditor priority has no bearing on whether it is entitled to retain funds never owned by KIPB.

Aside from disregarding KAIST's allegations about ownership of and payment for the Korean FinFET patent, Paulina's argument is limited to discussion of irrelevant case law dealing with creditor priority. This case does not resemble the cases Paulina cites where a defendant has collected a debt from a limited, fungible pool of funds and a competing creditor is upset the pool has been drained. Rather, this is a case where specific funds were paid to a pass-through entity for a specific purpose, but the pass-through entity misdirected them.

If Paulina is allowed to retain the Korean patent license fee, it would be problematic for several reasons. First, it would deprive KAIST of a fee associated directly with its ownership of the Korean FinFET patent. Second, it would deprive Samsung of the security of knowing the license fee it paid went to the entity with authority to grant a license, i.e., KAIST. Third, it would enrich Paulina when Paulina had no involvement in the enforcement or defense of the Korean patent. Paulina's creditor priority argument is merely an artifice designed to prolong this unjust enrichment and does not constitute grounds for dismissal.

### III. The Amended Complaint contains sufficient allegations to establish that Paulina's tortious interference is intentional, ongoing, and unjustified.

Similar to its attack on KAIST's unjust enrichment claim, Paulina utilizes mischaracterization and misdirection in an attempt to paint KAIST's tortious interference claim as unsustainable. Paulina claims the facts alleged in the Amended Complaint do not satisfy the "intentional interference" element, yet Paulina's tortious conduct continues in an obviously intentional fashion to this day. Paulina also baldly asserts that KAIST's allegations prove Paulina is justified to interfere, but this cannot be true given Paulina's knowledge of the Korean patent license fee. Paulina knows any settlement money it leverages out of KIPB will come from the remaining Korean patent license fee, which is not a legally viable source of funds for Paulina.

Paulina's principal argument against KAIST's tortious interference claim is that there are no allegations regarding Paulina's past knowledge of KAIST's contracts with the KIP defendants and even if there were, enforcing competing contracts does not constitute tortious conduct. In making this argument, Paulina either misunderstands or deliberately misstates the basis for KAIST's tortious interference cause of action. KAIST's allegations establish that Paulina is engaged in an ongoing effort to force KIP/KIPB to pay Paulina funds that are not covered by Paulina's contract with KIPB and not subject to Paulina's alleged security interest. Paulina is certainly aware of KAIST's contracts now and is doing everything in its power to force the KIP defendants to breach those contracts by transferring more of the Korean patent license fee to Paulina.

KAIST specifically alleged that Paulina "*is intentionally inducing* KIP to breach the contracts and rendering KIP's performance under the contracts impossible." (FAC ¶ 95

9

(emphasis added).) KAIST also alleged that the funds paid to Paulina were "taken from a $30 million payment designated as a license fee for the Korean patent under" and that Paulina "is aware of the contractual relationships [with the KIP defendants] and has access to the original as well as certified translations of the contracts." (*Id.* ¶¶ 74, 94.) These allegations are sufficient to establish that Paulina is, at present, intentionally interfering with KAIST's contracts in a way that is not authorized or protected by Paulina's contract with KIPB.

While KAIST does not have access to Paulina's contract with KIPB, neither Paulina nor any other defendant denies that contract relates only to enforcement of the U.S. FinFET patent. This is logical: KIPB owns that patent but has no ownership interest in the Korean FinFET patent, so there would be no reason for Paulina and KIPB to discuss funds derived from enforcement of the Korean patent. Yet Paulina claims KAIST "has pleaded itself out of court," (ECF No. 35 at 19), by explaining the basis of Paulina's arbitration and the arbitrator's temporary order. Again, Paulina misunderstands or deliberately misconstrues the Amended Complaint. Paulina claims KAIST alleged "the success of Paulina's arbitration," (*id.*), but in fact KAIST's allegations establish that Paulina has merely misappropriated (and seeks to further misappropriate) funds unrelated to the Purchase Agreement and rightfully due to KAIST.

Paulina cites a Connecticut case for the proposition that tortious interference claims "centering on legal claims cannot be maintained when the underlying lawsuit whose propriety is at issue terminated in a good faith negotiated settlement," (ECF No. 35 at 18 (quotation omitted)), but any settlement that misdirects funds from the Korean patent

10

license fee is not a good faith settlement. Nor does KAIST's claim center on Paulina's legal claims; it is irrelevant whether Paulina's claim is valid or not. What is relevant is Paulina's effort to leverage the claim to force transfer of a license fee intended for KAIST. Even if Paulina wins an award for additional money from KIPB, that money may not come from the remaining $6 million of the $30 million Korean patent license fee.

Only by incorrectly characterizing KAIST's tortious interference claim as being dependent upon successful arbitration can Paulina claim its interference is justified. The truth is that KAIST's claim is dependent only upon Paulina continuing to improperly compel the KIP defendants to continue to shirk their contractual duties and to further misdirect the Korean patent license fee away from the Korean patent owner.

## IV. If the Court accepts Paulina's arguments, KAIST should be granted leave to replead.

Although KAIST's claims against Paulina satisfy the *Iqbal/Twombly* pleading standard as pled, if the Court disagrees then KAIST should have the opportunity to supplement and clarify its allegations against Paulina. "[T]he pleading rules favor decisions on the merits rather than technicalities . . . and also that leave to amend pleadings should be freely given." *Standard v. Nygren*, 658 F.3d 792, 801-802 (7th Cir. 2011) (citing *Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227 (1962) and Fed. R. Civ. P. 15(a)(2)). Rule 15 states that "[t]he court should freely give leave [to amend] when justice so requires," which will be the situation here if the Court finds KAIST's allegations insufficient. Justice would not be served by allowing Paulina to improperly retain the Korean patent license fee, so leave to amend is warranted if the Court feels the FAC needs to be clearer or more detailed regarding the origin, purpose, or misappropriation of the license fee.

## CONCLUSION

Try as it might to paint this dispute as a simple matter of creditor priority, Paulina cannot evade the facts that it has wrongly acquired a license fee belonging to KAIST and continues to interfere with KAIST's contracts. The First Amended Complaint contains allegations sufficient to support both of KAIST's claims against Paulina and KAIST should have the opportunity to prove those allegations through discovery and trial. Accordingly, Paulina's motion to dismiss must be denied.

Dated this 25th day of July 2022.

                                                          GASS TUREK LLC

                                                          *s/Daniel A. Manna*
Daniel A. Manna, SBN 1071827
Jerome C. Mohsen, SBN 1097525
241 N. Broadway, Suite 300
Milwaukee, Wisconsin 53202
Tel: 414-223-3300
Fax: 414-224-6116
manna@gassturek.com
mohsen@gassturek.com

*Attorneys for Plaintiff Korea Advanced Institute Of Science and Technology*