UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| KOREA ADVANCED INSTITUTE OF SCIENCE AND TECHNOLOGY<br><br>    Plaintiff,<br><br>    v.<br><br>KIP CO., LTD. f/k/a KAIST IP Co., Ltd.;<br>P&IB CO., LTD.;<br>IN GYOO KANG;<br>KIPB LLC f/k/a KAIST IP US LLC;<br>PAULINA FUNDINGCO, LLC; and<br>U.S. BANK NATIONAL ASSOCIATION<br><br>    Defendants. | CASE NO.: 2022-CV-00317 |

## U.S. BANK NATIONAL ASSOCIATION'S REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6) OR, IN THE ALTERNATIVE, TO DROP U.S. BANK AS A PARTY TO THIS ACTION UNDER FEDERAL RULE OF CIVIL PROCEDURE 21

### INTRODUCTION

To justify U.S. Bank's continued inclusion in this lawsuit, KAIST argues that its claims against *other* defendants—KIP Co., Ltd., P&IB Co, Ltd., In Gyoo Kang; KIPB LLC, KAIST IP US LLC, and Paulina FundingCo, LLC (collectively, the "Principal Defendants")—are sufficient to state a claim against U.S. Bank. This is an admission by KAIST that it has no claims against U.S. Bank, so there is nothing to be viewed in the light most favorable to KAIST.

KAIST further strains credibility by asserting that U.S. Bank is "acting in concert" with the other parties to the Escrow Agreement, evidencing an apparent misunderstanding of the benign custodial role of an escrow agent, which may explain why U.S. Bank has been dragged into this business dispute.

Ultimately the most revealing aspect of KAIST's Memorandum of Law in Opposition to U.S. Bank's Motion to Dismiss (Dkt. #44; the "Opposition Memorandum") is KAIST's failure to connect any dots between U.S. Bank and KAIST which is the principal failure of the Complaint, which should be dismissed as to U.S. Bank.

## ARGUMENT

### I. There are no allegations in the Amended Complaint against U.S. Bank that, when taken as true, would entitle to KAIST to any relief against U.S. Bank.

KAIST's response brief begins with the remarkable proposition that it need not state a claim directly against U.S. Bank to maintain a lawsuit against U.S. Bank. (Dkt. #44 at 1.) KAIST concedes that the only substantive allegation against U.S. Bank is its status as escrow agent. (Dkt. #44 at 1 ("KAIST did not intend to state a claim against U.S. Bank and need not do so for U.S. Bank to remain a party."); *id.* at 3 (reciting only allegation against U.S. Bank).)

KAIST's (admitted) failure to plead any operative facts against U.S. Bank compels dismissal of U.S. Bank from this action. Since KAIST is not a party to the Escrow Agreement, it is forced to argue that claims which *may* exist against *other* defendants form the legal justification to keep U.S. Bank in the case. KAIST thus fails to allege any "injury" that is "fairly traceable to the challenged action of [U.S. Bank], and not the result of the independent action of some third party . . . ." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992) quoting *Simon v. Eastern Ky. Welfare Rights Organization*, 426 U.S. 26, 41-42 (1976) (internal quotations and alterations omitted). KAIST's failure to allege an injury traceable to any conduct of U.S. Bank as opposed to that of the Principal Defendants is fatal to its standing to sue U.S. Bank. *Id.*; *see also Owens v. Hinsley*, 635 F.3d 950, 955 (7th Cir. 2011) ("A plaintiff cannot state a claim against a defendant by including the defendant's name in the caption." quoting *Collins v. Kilbort*, 143 F.3d 331, 334 (7th Cir. 1998)).

KAIST does not allege that U.S. Bank has harmed KAIST's interests or otherwise breached any obligations owed to KAIST because it cannot in good faith bring these allegations. Rather, KAIST builds its argument on KAIST's unfounded concern that U.S. Bank *might* harm KAIST's interests at some indeterminate future date *if* KAIST prevails on its claims against the Principal Defendants *and* the escrowed funds (to which KAIST presently has no legal interest) are no longer held by U.S. Bank. This reasoning fails to survive a motion to dismiss. *Cent. States v. Am. Int'l Grp., Inc.*, 840 F.3d 448, 451-52 (7th Cir. 2016).

**A. There is no case or controversy between KAIST and U.S. Bank which could be the foundation for entry of a declaratory judgment as to U.S. Bank.**

KAIST does not argue that it has stated a claim upon which relief can be granted against U.S. Bank. Instead, KAIST directs attention away from the deficient Amended Complaint by characterizing this action more broadly in the Opposition Memorandum as a "declaratory judgment suit." (Dkt. #44 at 4.) KAIST believes that this justifies its baseless assertion that there is "no question" as to whether U.S. Bank has an interest in the outcome of the litigation. (*Id.*) There are two fundamental and ultimately fatal flaws to this argument.

First, KAIST's request for a declaratory judgment (appearing only in the prayer section of the Amended Complaint; *see* Dkt. #30 at p. 17 (Prayer For Relief, ¶ A)) is not only overly broad and insufficiently pleaded, but it is directed solely at KIP. The declaration sought has nothing to do with U.S. Bank.

Second, the applicable standard is not whether U.S. Bank has any interest in the determination of the case. (Dkt. #44 at 4.) To have standing to sue U.S. Bank, KAIST must establish the existence of a case or controversy with U.S. Bank to justify the entry of a declaratory judgment. *See Lujan*, 504 U.S. at 41-42 (injury that is traceable to defendant's conduct is a requisite for an Article III case or controversy); *Amling v. Harrow Indus. LLC*, 943

3

F.3d 373, 377 7th Cir. 2019 ("The phrase "case of actual controversy" in the Declaratory Judgment Act refers to the type of Cases and Controversies that are justiciable under Article III. The requirements of the Act and those of Article III are therefore coextensive." (internal citations and quotation marks omitted)).

No such allegations are in the Amended Complaint because none exist. And a claim based on a possible future injury does not rise to the level of a case or controversy to support declaratory relief. *Cent. States*, 840 F.3d at 451-52 (dismissing claim for a declaration relating to future insurance payments for injuries that have not yet occurred, describing those payments as presenting "hypothetical" claims, and thus unripe); *Pub. Water Supply Dist. No. 8 v. City of Kearney*, 401 F.3d 930, 932 (8th Cir. 2005) ("Before a [declaratory judgment] is ripe for adjudication, however, the plaintiff must face an injury that is 'certainly impending.'"); *Emory v. Peeler*, 756 F.2d 1547, 1551-52 (11th Cir. 1985) ("The remote possibility that a future injury may happen is not sufficient to satisfy the 'actual controversy' requirement for declaratory judgments.")

U.S. Bank's status as escrow agent between parties that have been sued by KAIST is not enough to manufacture a case or controversy. An escrow agent has no legal interest in the property that it holds in escrow, and the agent may only transfer the escrowed property on direction of its principals. *E.g.* 28 Am. Jur. 2d Escrow § 15 ("An escrow agent is not vested with title to the property placed in escrow. Legal title remains in the depositor or grantor when funds are placed in escrow. No legal title or estate passes until the condition has been performed or the event has happened upon which it is to be delivered to the grantee and it has been delivered by the depositary to the grantee."); 28 Am. Jur. 2d Escrow § 16; 28 Am. Jur. 2d Escrow § 17 ("The function of an escrow agent is to serve as intermediary. By definition, an escrow agent or depositary is not party to the transaction but acts as a neutral party to the transaction."); 28 Am.

4

Jur. 2d Escrow § 18 (". . . the agency created by the escrow is limited – limited to the obligation of the escrow holder to carry out the instructions of each of the parties to the escrow. He or she is empowered to aid neither, being merely the conduit used in the transaction for convenience and safety."). And, as escrow agent, U.S. Bank would owe a duty to a third party (such as KAIST) if "the escrow agreement shows a clear intent to directly and substantially benefit the third party", 28 Am. Jur. 2d Escrow § 25, which facts KAIST has not pled.

To sidestep this requirement, KAIST cites to *Lee v. Bd. Of Regents of State Colleges*, 306 F. Supp. 1097 (W.D. Wis. 1969), *aff'd*, 441 F.2d 1257 (7th Cir. 1971) for the proposition that all parties interested in a declaratory judgment action should be joined, irrespective of whether they caused the alleged damages. (Dkt. #44 at 4.) However, U.S. Bank's relationship to the Principal Defendants, and through the Principal Defendants to KAIST's claimed injury, is drastically different from that in *Lee*. That case does not control here.

There, the plaintiffs sued, among other parties, the board of regents of a state university that plaintiffs claimed violated their constitutional rights. *Lee*, 441 F.2d at 1258. The court reasoned that the board had a sufficient interest in the declaratory action because, although the board did not directly set the policy complained of by plaintiffs, the board held control over the school administrators and bodies who did set the policy:

> [T]he board's undoubted power of the administration of the state universities, including policies like the one in issue, [ ] makes it a proper party in an action for declaratory relief, brought against other defendants, **subject to the board's control**, who actually created and enforced the policy out of which the controversy arose.

*Id*. at 1260 (emphasis added). By contrast, KAIST has not alleged (because it cannot) that U.S. Bank exercises any amount of control over the Principal Defendants, that U.S. Bank was involved in the underlying conduct giving rise to KAIST's claims, or that U.S. Bank possesses any authority over the escrowed funds beyond its limited role as escrow agent to solely act at

5

the direction of the escrow principals. U.S. Bank's limited involvement with the underlying parties and claims in this action is simply insufficient to generate an "interest" necessary for KAIST to maintain a declaratory action against it.

U.S. Bank has no independent control over the funds at issue. The parties to the Escrow Agreement, KIPB and Paulina, are defendants in this lawsuit. KAIST can therefore achieve its desired results in this case without U.S. Bank's involvement[1] and there is no risk of "a partial disposition of the controversy" if the Amended Complaint is dismissed as to U.S. Bank.

### B. U.S. Bank's activities as an escrow agent do not satisfy the requirements for injunctive relief.

KAIST's sole argument in support of injunctive relief—that because U.S. Bank is holding funds in escrow it is in "active concert or participation" with the Principal Defendants—is even more flimsy. (Dkt. #44 at 5-7.) In order to obtain an injunction over U.S. Bank, KAIST must show not only concerted action between U.S. Bank and the Principal Defendants, but also that the concerted action violates some legal duty or court order. *Eli Lilly v. Gottstein*, 617 F.3d 186, 192-93 (2d Cir. 2010). KAIST has not alleged (and cannot establish) this latter requirement.

KAIST relies heavily on the Second Circuit's decision in *Eli Lilly v. Gottstein* for the proposition that any concerted action between parties and nonparties is sufficient to invoke the court's authority under Rule 65 to grant injunctive relief. (Dkt. #44 at 6-7.) According to KAIST, since U.S. Bank has acted and will act in concert with the Principal Defendants by simply serving as an escrow agent, this is sufficient concerted action to justify an injunction. (*Id*. at 6.)

---

[1] KAIST concedes in the Opposition Memo that it seeks a declaration related to KIP's ability to transfer the escrowed funds and as to the ownership of those funds, which illustrates that the manufactured controversy with U.S. Bank should be disregarded because KAIST can obtain that relief without U.S. Bank's involvement in this action.

6

KAIST's reliance on *Eli Lilly* represents a vast over-reading of the court's authority. There, an expert in litigation, Dr. Egilman, desired to publicly disclose documents from Eli Lilly that had been provided subject to a protective order entered by the court, requiring strict confidentiality of those documents. *Eli Lilly*, 617 F.3d at 190. To effectuate his scheme, Dr. Egilman enlisted the services of Gottstein, an Alaska attorney, who used the pretense of a subpoena in a separate action to obtain and publicly disclose the confidential documents from Dr. Egilman. *Id*. Eli Lilly sought and obtained emergency injunctive relief, which the trial court granted as to both Dr. Egilman and Gottstein. *Id*.

On appeal, the Court of Appeals affirmed. *Id*. The trial court had found that Gottstein's use of the separate action to obtain the confidential documents was a sham intended to circumvent the lawful protective order. *Id*. at 192-93. This, the Court reasoned, supported dual findings by the trial court. *Id*. at 193. First, Gottstein's work with Dr. Egilman to obtain the confidential documents constituted concerted action between the two. *Id*. And second, that this concerted action "aided and abetted Egilman's violation of" the protective order. *Id*.

This is where KAIST's argument faulters. The Escrow Agreement is not a sham. KAIST's list of ways in which U.S. Bank has worked "in concert" is nothing more than a recitation of the customary ways in which an escrow agent interacts with parties to an escrow agreement. (Dkt. #44 at 6.) This falls woefully short of meeting the standard to establish a violation of any legal duty or order. Nor would U.S. Bank's hypothetical future distribution of those funds violate a legal duty, order, or any of KAIST's present rights.

KAIST fails to state a claim as to U.S. Bank because it has failed to allege, and cannot establish, that an injunction against U.S. Bank would prevent the violation of an established right or court order.

7

## II. KAIST has failed to distinguish the relevant facts of this case from *Intercon*, which justifies the alternative yet appropriate outcome of dropping U.S. Bank from this lawsuit involving a business dispute among other parties.

KAIST admits that U.S. Bank "has no horse in the race" (Dkt. #44 at 9). U.S. Bank wholeheartedly agrees, which is why U.S. Bank also asserts that it should be dropped from this action under Fed. R. Civ. P. 20 and 21 and *Intercon Research Assocs., Ltd v. Dresser Indus., Inc.*, 696 F.2d 53 (1982).

KAIST discusses *Intercon* at length yet it cannot overcome the virtually indistinguishable relevant facts which justify the same outcome in this case. KAIST attempts to distinguish *Intercon* by claiming that U.S. Bank does not have an interest in the property that is the subject of the dispute, whereas in *Intercon,* the U.S.-based defendant seeking misjoinder had his own property threatened by a legal dispute to which he was a stranger. (Dkt. #44 at 7-8 citing *Intercon*, 696 F.2d at 54-58.) This argument is irrelevant to the misjoinder analysis. Indeed, in both cases the plaintiff has joined a party for the sole and express purpose of securing funds to satisfy a potential judgment; this is the fact that controls the analysis. The fact that U.S. Bank is an escrow agent and therefore lacks legal or equitable title to the property is all the more reason to drop it from this case. U.S. Bank's ability to transfer the escrowed funds is wholly contingent on the orders of the escrow principals. All of those principals are already joined as defendants in this action already. This distinction, then, supports U.S. Bank's position, not KAIST's.

KAIST further argues that the Principal Defendants committed a "breach underlying KAIST's causes of action" in creating the escrow account with U.S. Bank. (Dkt. #44 at 8.) But KAIST has not alleged that U.S. Bank had any duty – in contract, at law, or otherwise – to KAIST that it might have breached (and, even if it did, KAIST has not alleged that duty here). Rather, any dispute KAIST might possibly have with U.S. Bank relates to a future potential injury, i.e., a transfer of the escrowed funds with which KAIST disagrees, alluded to in KAIST's

8

prayer for relief. (*See* Dkt. #30 at p. 17, ¶ B; Dkt. 44 at 6 (describing the injunction KAIST seeks as preventing a party from "find[ing] a loophole and has U.S. Bank disburse funds at the request of a nonparty.").)

Not only is such a claim unripe here, it also does not "aris[e] out of the same transaction, occurrence, or series of transactions or occurrences" as KAIST's claims against the Principal Defendants. Rather, KAIST's hypothetical claim against U.S. Bank turns on a whole host of contingencies, including the outcome of its present claims against the Principal Defendants. But, such a future claim is the subject of an action to collect on KAIST's hypothetical judgment entitling it to the escrowed funds, which is inherently a separate transaction from that giving rise the instant suit.[2]

KAIST's inclusion of U.S. Bank in this action represents an improper attempt "to ensure satisfaction of a potential judgment" that KAIST might win against the Principal Defendants. *See Intercon*, 696 F.2d at 57. U.S. Bank is not a proper party to this action under Rules 20 and 21. The Court should drop U.S. Bank as a party.

## CONCLUSION

KAIST and U.S. Bank have no privity and no case or controversy between them. KAIST has failed to plead that it has been or will imminently be harmed by U.S. Bank. KAIST can prevail in this action against the Principal Defendants and obtain all of the relief requested in the Amended Complaint without U.S. Bank's continued involvement in this case. For these reasons, the Court should dismiss KAIST's complaint as against U.S. Bank.

---

[2] If KAIST were correct, a plaintiff would be permitted to name as defendants and seek injunctions against any third-party that might have assets that could be used to satisfy a theoretical judgment against other defendants, such as each and every bank at which the defendants had accounts. This, of course, is not the law.

9

Dated: August 15, 2022.

*/s/ Christopher J. Schreiber*
Christopher J. Schreiber, SBN 1039091
Alexander M. DeGuire, SBN 1097948
MICHAEL BEST & FRIEDRICH LLP
790 N. Water Street, Suite 2500
Milwaukee, WI 53202
(414) 271-6560

*Counsel for Defendant U.S. Bank National Association*