UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| KOREA ADVANCED INSTITUTE OF SCIENCE AND TECHNOLOGY, <br><br> Plaintiff, <br><br> v. <br><br> KIP CO., LTD. f/k/a KAIST IP CO., LTD.; <br> P&IB CO., LTD.; <br> IN GYOO KANG; <br> KIPB LLC f/k/a KAIST IP US LLC; <br> PAULINA FUNDINGCO, LLC; and <br> U.S. BANK NATIONAL ASSOCIATION, <br><br> Defendants. | CASE NO.: 2022-CV-00317 |

**PAULINA FUNDINGCO, LLC'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS**

# TABLE OF CONTENTS

I.  KAIST's Tortious Interference Claim Should Be Dismissed ............................................. 1

    A.  KAIST Has Not Pleaded That Paulina Has Done Anything Except Enter and Enforce Its Contracts Through Arbitration ....................................................... 1

    B.  KAIST's Tortious Interference Claim Fails as a Matter of Law ........................... 5

II. KAIST's Unjust Enrichment Claim Should Be Dismissed ................................................ 7

    A.  Paulina's Enforcement of a Valid Contract Is Not Unjust Enrichment ................. 7

    B.  Paulina's Valid and Secured Interest in KIP's Assets Takes Priority .................. 10

III. Paulina Does Not Object to Remaining a Nominal Party .................................................. 11

IV. KAIST's Claims Against Paulina Should Be Dismissed With Prejudice .......................... 11

V.  Conclusion ......................................................................................................................... 12

# TABLE OF AUTHORITIES

**Cases**

*Always Towing & Recovery, Inc. v. City of Milwaukee*,
  2 F.4th 695 (7th Cir. 2021) .................................................................................................. 12

*Briesemeister v. Lehner*,
  720 N.W.2d 531 (Wis. Ct. App. 1985) ..................................................................................... 6

*Car Carriers, Inc. v. Ford Motor Co.*,
  745 F.2d 1101 (7th Cir. 1984) ............................................................................................. 2, 9

*Fischer v. Renner*,
  348 Wis. 2d 763, 833 N.W.2d 873 (Table), 2013 WL 2319487 (Wis. Ct. App. 2013) .............. 8

*Foseid v. St. Bank of Cross Plains*,
  541 N.W.2d 203 (Wis. Ct. App. 1995) ..................................................................................... 5

*Nat'l Am. Ins. Co. v. Ind. Lumbermens Mut. Ins. Co.*,
  221 F.3d 1339 (Table), 2000 WL 975176 (7th Cir. 2000) ....................................................... 8

*Philips Med. Sys. Int'l B.V. v. Bruetman*,
  8 F.3d 600 (7th Cir. 1993) ..................................................................................................... 10

*Standard v. Nygren*,
  658 F.3d 792 (7th Cir. 2011) ................................................................................................. 11

*Suffield Dev. Assocs. Ltd. P'ship v. Nat'l Loan Invs., L.P.*,
  779 A.2d 822 (Conn. App. 2001), *aff'd in relevant part, rev'd on other grounds*,
  802 A.2d 44 (Conn. 2002) ................................................................................................... 3, 6

*Tax Servs. of Am., Inc. v. Mitchell*,
  No. 07-CV-00249-REB-PAC, 2007 WL 4522472 (D. Colo. Dec. 18, 2007) ........................... 6

*Texas v. United States*,
  523 U.S. 296 (1998) ................................................................................................................ 5

*Tri-State Mech., Inc. v. Northland Coll.*,
  273 Wis. 2d 471, 681 N.W.2d 302 (Wis. Ct. App. 2004) ......................................................... 7

*Tyler v. Runyon*,
  70 F.3d 458 (7th Cir. 1995) ..................................................................................................... 8

*Ulrich v. Zemke*,
  258 Wis. 2d 180, 654 N.W.2d 458 (2002) ............................................................................... 8

*United States v. Goforth*,
  465 F.3d 730 (6th Cir. 2006) ................................................................................................... 8

**Other Authorities**

Dan B. Dobbs, Law of Remedies § 4.1(2) (1993) .......................................................................... 8

*Restatement (Second) of Torts* § 766, cmt. n (1979) ................................................................. 3, 6

*Restatement of Restitution* § 14(a) (1937) .................................................................................... 8

KAIST's opposition to Paulina's motion to dismiss reinforces the legal deficiency of its tortious interference and unjust enrichment claims. KAIST's lead argument implicitly concedes the futility of its claims against Paulina, arguing that if the claims against Paulina do not survive, this Court should keep Paulina in as a nominal party to KAIST's claims against the KIP Entities.[1] KAIST's substantive defense of its claims falls flat, engaging with virtually none of the law cited in Paulina's motion and instead recasting its claims with allegations that are not contained in, and indeed that are contradicted by, the Complaint itself. Paulina's arbitration against the KIP Entities is a good-faith effort to collect on a contract that predates KAIST's contracts by years. Paulina's pursuit of its own rights under its own contracts in front of a legitimate arbitral Tribunal comprises neither unjust enrichment nor tortious interference. The Court should dismiss both claims against Paulina with prejudice.

**I.     KAIST's Tortious Interference Claim Should Be Dismissed**

Regardless of where one would set the bar for stating a tortious interference claim, KAIST does not clear it. KAIST fails to cite a single case and does not even attempt to engage with dispositive legal failings that Paulina identified. Instead, KAIST attempts to transform the threadbare allegations in its Complaint into something they are not, adding new factual assertions unsupported by, and in many cases contradicted by, its pleadings. None of this justifies allowing the Complaint to stand or allowing KAIST to amend it yet again.

**A.     KAIST Has Not Pleaded That Paulina Has Done Anything Except Enter and Enforce Its Contracts Through Arbitration**

The allegations of KAIST's tortious interference claim against Paulina derive from Paulina's enforcement of its contract with KIP. KAIST pleads that Paulina executed a Prepaid

---

[1] An outcome to which Paulina would not object.

1

Forward Purchase Agreement [with KIP Entities] on July 29, 2016. Dkt. 30 ("Compl.") ¶ 44. KAIST also pleads that KIP "informed KAIST that KIP could not pay because of the PFPA and that … Paulina had initiated arbitration proceedings against KIP, KIPB, Jong-Ho Lee, and P&IB." *Id.* ¶ 45. KAIST pleads that Paulina obtained successful preliminary relief in its arbitration to enforce its contract, *id.* ¶ 47, that the KIP Entities agreed to pay Paulina tens of millions of dollars in partial settlement of Paulina's claims, *id.* ¶ 48, and, upon information and belief, that "KIP and Paulina are engaged in settlement discussions regarding how to apportion the settlement proceeds held in trust." *Id.* ¶ 52. The Complaint does not allege that Paulina initiated the arbitration in bad faith, that Paulina's claims in the arbitration are objectively baseless, or that Paulina is seeking to collect damages in excess of that to which Paulina has a valid claim. These allegations therefore fail to satisfy the essential requirements of a tortious interference claim. Dkt. 35 ("Mot.") at 7–14.

KAIST wrongly accuses Paulina of "either misunderstand[ing] or deliberately misstat[ing] the basis for KAIST's tortious interference claim." Dkt. 45 ("Opp.") at 9. But it is KAIST, not Paulina, that mischaracterizes the Complaint. Paulina filed a motion to dismiss based on the actual allegations in KAIST's Complaint, and now KAIST seeks to respond with references to speculation and falsities unsupported by, and in many cases contradicted by, its own Complaint. "[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984). Paulina's motion to dismiss must be decided on "the well-pleaded allegations of the complaint," and KAIST cannot rely on its "briefs to embellish the conclusory allegations of the complaint." *Id.*

For instance, to burnish its threadbare allegation that Paulina is "intentionally inducing KIP to breach the contracts," Compl. ¶ 95, KAIST asserts that "Paulina knows any settlement money it leverages out of KIPB will come from the remaining Korean patent license fee" rather than from

2

the U.S. litigation funds to which Paulina is entitled. Opp. at 9. But KAIST cites no allegation supporting this claim, which is directly contrary to the Complaint. The Complaint alleges that a prior "$21 million payment to Paulina ***was associated solely with enforcement of the U.S. patent*** and therefore was required to be deducted [by KIP] only from U.S. license fees." Compl. ¶ 74 (emphasis added). It further alleges that any future settlement or judgment in Paulina's favor would "result in disbursement [to Paulina] of the Trust funds"—namely, "$23 million in proceeds *from the Infringement Lawsuit* [that] remain held in trust by U.S. Bank." *Id.* ¶¶ 42, 53 (emphasis added). The Complaint expressly defines the "Infringement Lawsuit" as a case "in the United States District Court for the Eastern District of Texas for the infringement of the U.S. FinFET patent, No. 6,885,055." *Id.* ¶ 42. In other words, KIP previously made payments to Paulina in partial satisfaction of Paulina's right to obtain U.S. patent proceeds, and any further award would come from the U.S. patent litigation proceeds currently held in trust. Thus, the claim in KAIST's brief that Paulina *knows* a future award would come from Korean patent licensing fees rather than U.S. patent proceeds is directly contrary to the accurate facts pleaded in the Complaint.

But even if KAIST's opposition were allowed to contradict the Complaint, it would not matter. Money is fungible. Collecting on a valid debt cannot constitute tortious interference even if payment comes from money that would otherwise be used to satisfy a debt to another creditor. *Suffield Dev. Assocs. Ltd. P'ship v. Nat'l Loan Invs., L.P.*, 779 A.2d 822, 830–31 (Conn. App. 2001), *aff'd in relevant part, rev'd on other grounds*, 802 A.2d 44 (Conn. 2002); *see also Restatement (Second) of Torts* § 766, cmt. n (1979). Thus, regardless of where the KIP Entities received the money they used to pay Paulina (whether it was from Korean patent licensing fees or U.S. patent proceeds), there could be no tortious interference by Paulina in the absence of

3

allegations that Paulina had prosecuted or settled its claims against the KIP Entities in bad faith. *See infra* at 6.

Perhaps recognizing that insurmountable hurdle, KAIST also claims that "any settlement that misdirects funds from the Korean patent license fee is not a good faith settlement," Opp. at 10–11, and that "Paulina is engaged in an ongoing effort to force KIP/KIPB to pay Paulina funds that are not covered by Paulina's contract," *Id*. at 9. Once again, KAIST cites no allegations in the Complaint supporting either proposition. The Complaint does not even contain a conclusory (much less a factually supported) allegation that Paulina's litigation and settlement activities are in bad faith. The only supposed fact (which, although immaterial, is false) about settlement that KAIST pleads is that "upon information and belief, KIP and Paulina are engaged in settlement discussions regarding how to apportion the settlement proceeds held in trust." Compl. ¶ 52. The Complaint contains no allegation that Paulina's breach of contract claims against the KIP Entities are factually or legally meritless, much less any allegation that Paulina *knows* they are meritless. Nor has KAIST pleaded any facts to suggest why the KIP Entities would settle claims with Paulina for more than those claims are worth, let alone why a Tribunal would order relief to which Paulina is not entitled. To the contrary, KAIST pleads that the only ruling to date "ordered KIP and KIPB to deposit $21 million into a trust account pending arbitration." *Id.* ¶ 47. The Emergency Arbitrator did so because she found Paulina was likely to prevail on the merits.

In short, KAIST has not identified any facts to support its unpled speculation that Paulina is doing anything other than making a good faith effort to enforce its contract through arbitration. Nor could KAIST amend its complaint to add such allegations without running afoul of Rule 11. Instead, the Complaint's factual allegations—including that Paulina successfully obtained emergency relief from an Award of the Emergency Arbitrator, and that Paulina has successfully

4

secured millions of dollars in partial settlement—support the contrary inference that Paulina's claims are meritorious. *Id.* ¶¶ 47–50.

B.     **KAIST's Tortious Interference Claim Fails as a Matter of Law**

KAIST's opposition fails to engage with any of Paulina's legal arguments. Dismissal of the tortious interference claims is necessary for at least three independent reasons.

***First***, Wisconsin law requires that "it is apparent *at the outset* that the alleged tortfeasor acted with the intention to interfere." *Foseid v. St. Bank of Cross Plains*, 541 N.W.2d 203, 210 n.11 (Wis. Ct. App. 1995). KAIST, which does not contest this legal principle, has not pleaded that Paulina had knowledge of its contracts with the KIP Entities at the time it signed the Purchase Agreement or at the time Paulina initiated the arbitration. Mot. at 10. KAIST does not even plead that Paulina had knowledge of KAIST's contracts at the time that Paulina obtained funds from the KIP Entities through partial settlements in the arbitration. KAIST pleads only that Paulina *currently knows* of those contracts as of the date of the Amended Complaint on April 20, 2022. Compl. ¶ 94. This is doubly fatal because KAIST does not even attempt to allege that Paulina has induced any actual breach by KIP since KAIST filed this Complaint. KAIST speculates that Paulina may enter another settlement with the KIP Entities in the future, Opp. at 11; *see also* Compl. ¶¶ 52–53, but speculation about potential future conduct alone cannot give rise to a ripe claim. *E.g. Texas v. United States*, 523 U.S. 296, 300 (1998) ("A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all."). In short, the Complaint does not allege Paulina's knowledge of KAIST's contracts "at the outset" of Paulina's alleged interference—nor could it possibly do so, because Paulina's own contract pre-dates KAIST's contracts by several years.

***Second***, KAIST does not dispute that entering an agreement "with knowledge that the other cannot perform both it and his contract with the third person" is not a basis for a tortious

5

interference claim. *Restatement (Second) of Torts* § 766, cmt. n (1979). That is all KAIST alleges here; KAIST claims that Paulina's arbitration and related settlement may leave KIP without funds to pay KAIST. Compl. ¶ 53. Paulina's mere enforcement of its own contracts through arbitration—even if KAIST believes it has an entitlement to money from the same Samsung settlement—is not tortious. *Suffield Dev. Assocs.*, 779 A.2d at 830–31.

**Third,** KAIST does not dispute that a good faith settlement of litigation, or a payment ordered by a court, is justified conduct that cannot amount to tortious interference. Opp. at 10–11; *see also Briesemeister v. Lehner*, 720 N.W.2d 531, 543–44 (Wis. Ct. App. 1985). KAIST's only response is to falsely argue that these cases are distinguishable because Paulina's settlements are not in good faith, Opp. at 10–11, which (as explained above) is not an allegation KAIST made in the Complaint. KAIST has pleaded "no facts suggesting that [Paulina] had no belief in the merit of this litigation." *Tax Servs. of Am., Inc. v. Mitchell*, No. 07-CV-00249-REB-PAC, 2007 WL 4522472, at *2 (D. Colo. Dec. 18, 2007). Nor has KAIST pleaded facts showing that Paulina has negotiated settlements for amounts beyond that to which Paulina believes it is contractually entitled. Even if KAIST had properly pleaded that the settlements were taken from Korean patent licensing fee, that would not show tortious interference; the relevant question is whether Paulina has a good faith claim to payment by the KIP entities, not where the KIP Entities originally got the money they used to pay the debt. *See supra* at 3–4.

The crux of KAIST's tortious interference claim is that Paulina's successful enforcement (whether through litigation or settlement) of a contract that predates KAIST's own contracts will leave the KIP Entities without funds to pay a potential future judgment in favor of KAIST. But KAIST has not pleaded any *facts* to suggest that Paulina's arbitration was brought in bad faith or

6

that settlement talks have extended beyond Paulina's belief about its own contractual entitlement. This simply isn't the basis for a tortious interference claim.

## II.    KAIST's Unjust Enrichment Claim Should Be Dismissed

The Court should grant Paulina's motion to dismiss KAIST's unjust enrichment claim for much the same reason: KAIST has failed to plead any facts showing that Paulina's collection of funds from the Arbitration Escrow Fund pursuant to the Purchase Agreement is unjust or inequitable. *See Tri-State Mech., Inc. v. Northland Coll.*, 273 Wis. 2d 471, 479, 681 N.W.2d 302, 306 (Wis. Ct. App. 2004). Paulina seeks to collect on its debts from the KIP entities pursuant to a valid contract—ironically, in much the same way that KAIST seeks to do in its own claims against the KIP entities. KAIST has not pleaded any facts to establish why Paulina's good faith attempts to collect from the KIP Entities somehow constitute unjust enrichment while the same actions by KAIST do not. And KAIST does not engage with any of the case law cited by Paulina establishing that collection of a valid debt does not constitute unjust enrichment. *Compare* Mot. at Section III *with* Opp. at Section II. Instead—seemingly acknowledging the deficiencies in its complaint—KAIST once again resorts to citing supposed facts in its response brief that it did not plead. But the Court should not consider these newly conjured facts when ruling on a motion to dismiss. Even if it does, KAIST's new allegations are plainly insufficient to allow its unjust enrichment claim to survive.

### A.    Paulina's Enforcement of a Valid Contract Is Not Unjust Enrichment

KAIST fails to engage with any of the legal authority Paulina cited holding that enforcement of a valid contract cannot constitute unjust enrichment. This includes *Fischer v. Renner*, in which the Wisconsin Court of Appeals ruled that "contractually established" outcomes (such as the KIP entities' payments to Paulina) cannot constitute unjust enrichment, and that "the mere fact that there may have been an incidental benefit" to Paulina to the detriment of KAIST as

7

a result of those payments does not require Paulina to make restitution to KAIST. 348 Wis. 2d 763, 833 N.W.2d 873 (Table), 2013 WL 2319487, at *4 (Wis. Ct. App. 2013). KAIST similarly fails to address *United States v. Goforth*, in which the Sixth Circuit made plain that "the theory of unjust enrichment may not be used to allow a stranger to a loan contract or promissory note to seek funds repaid pursuant to such an agreement," as KAIST attempts to do here. 465 F.3d 730, 734 (6th Cir. 2006). Nor does KAIST address *National American Insurance Co. v. Indiana Lumbermens Mutual Insurance Co.*, in which the Seventh Circuit rejected an unjust enrichment claim on similar facts because "one who is enriched by what he is entitled to under a contract or otherwise is not unjustly enriched." 221 F.3d 1339 (Table), 2000 WL 975176, at *3 (7th Cir. 2000) (citing Dan B. Dobbs, Law of Remedies § 4.1(2) (1993)).

KAIST does not even dispute that "no court has ever allowed" an unjust enrichment claim like the one it asserts against Paulina, and KAIST cannot cite a single case to convince this Court otherwise. *See id.* (citing *Restatement of Restitution* § 14(a) (1937)). Failing to address these cases in its response brief, KAIST has waived its ability to challenge their authority or applicability. *See Tyler v. Runyon*, 70 F.3d 458, 464 (7th Cir. 1995) ("[A] litigant who fails to press a point by supporting it with pertinent authority, or by showing why it is sound despite a lack of supporting authority, forfeits the point."). In fact, the *only* case cited by KAIST in the unjust enrichment section of its response brief is *Ulrich v. Zemke*, 258 Wis. 2d 180, 654 N.W.2d 458 (2002), which KAIST cites only for the uncontroversial proposition that an unjust enrichment claim requires proof of "circumstances making it inequitable for the defendant to retain the benefit." *See* Opp. at 7. Paulina agrees that KAIST must prove this element—and it has failed to do so.

Instead of engaging with Paulina's case law, KAIST dismisses it as "irrelevant" and again cites facts that are *contradictory* to those in its Complaint. KAIST claims in its response brief that

8

Paulina has been unjustly enriched because it has "taken funds that were specifically intended to pay KAIST for use of the Korean patent." *Id*. But in its Complaint, KAIST pleads exactly the opposite. It pleads that the prior "$21 million payment to Paulina ***was associated solely with enforcement of the U.S. patent*** and therefore was required to be deducted [by KIP] only from U.S. license fees" rather than from Korean patent licensing fees. Compl. ¶ 74 (emphasis added). It also pleads that the funds held in the Arbitration Escrow Fund are "proceeds from the Infringement Lawsuit," which was filed to enforce the *U.S. Patent*, and to which KAIST does not and cannot claim any right. *Id.* ¶ 42. KAIST repeats this allegation throughout its Complaint. *Id.* ¶ 49 ("$23 million in proceeds *from the Infringement Lawsuit* remain held in trust by U.S. Bank in Milwaukee") (emphasis added); *id.* ¶ 46 ("Paulina further filed an Emergency Relief Application requesting an order to place the proceeds *of the Infringement Lawsuit* in trust pending completion of arbitration.") (emphasis added); *see also id.* ¶ 25 (defining "Infringement Lawsuit" as the litigation filed in Texas to enforce the *U.S. Patent*).

KAIST thereby admits in its Complaint that the money Paulina has collected from the Arbitration Escrow Fund (and seeks to continue to collect) relates to the *U.S. Patent*, not the Korean Patent. The Court should decide Paulina's motion to dismiss based on the facts pleaded by KAIST in its Complaint, not the new and contradictory facts KAIST asserts in its response brief in a last-ditch effort to save its claim. *See Car Carriers, Inc.*, 745 F.2d at 1107. And because KAIST's Complaint pleads that the Arbitration Escrow Fund contains proceeds from the U.S. Patent Infringement Lawsuit, Paulina had (and continues to have) a good-faith basis to seek collection of those funds pursuant to its Purchase Agreement with the KIP entities. KAIST also pleads that Paulina successfully secured preliminary relief from the Emergency Arbitrator,

9

underscoring its good-faith basis to collect. Compl. ¶ 47. Paulina's actions, based on the overwhelming authority cited by Paulina and unrebutted by KAIST, are not unjust enrichment.

Here too, even if KAIST's opposition brief were correct and its own Complaint wrong about where KIP got the money it paid Paulina, it would not matter. "Money is fungible." *Philips Med. Sys. Int'l B.V. v. Bruetman*, 8 F.3d 600, 604 (7th Cir. 1993) ("[I]f the asset that had been ordered to be deposited … had been dissipated, an equivalent asset could be substituted"); *id.* (calling defendant's attempt to distinguish between specific "proceeds" and "any old cash" as a "technical and indeed nonsensical" distinction). KAIST does not (and cannot) dispute that Paulina had a valid contract with the KIP Entities, or that this contract entitled Paulina to at least the amount of $24 million in proceeds that Paulina has so far received. *See* Compl. ¶¶ 43–50. Regardless of whether KAIST wishes that the KIP entities had reserved their assets to pay KAIST for the Korean Patent, KAIST cannot dispute that the payments to Paulina out of the Arbitration Escrow Fund were made to repay a debt pursuant to a valid and legally enforceable contract. *See id.* The unchallenged case law Paulina cited in its opening brief shows that payment of money due under a valid contract is not unjust enrichment even if it leaves the debtor without sufficient funds to pay other creditors. Thus, even if the Court allowed KAIST to amend its Complaint by asserting contradictory allegations in its opposition brief, those allegations still would not substantiate a claim for unjust enrichment.

### B. Paulina's Valid and Secured Interest in KIP's Assets Takes Priority

As between two creditors seeking to collect from the KIP entities, KAIST also does not dispute that Paulina's interest takes priority over KAIST's interest. *See* Mot. at Section III(B). Instead of disputing that Paulina's interest must come first under the laws of creditor priority, KAIST argues that Paulina's retention of Arbitration Escrow Funds "would be problematic" because it would (1) deprive KAIST of Korean Patent money and (2) would "deprive Samsung of

10

Case 2:22-cv-00317-WED   Filed 08/15/22   Page 13 of 16   Document 49

the security of knowing" its license fee went to the right entity. Opp. at 8. Neither KAIST's feelings of "deprivation" nor Samsung's feelings of "security" are legal reasons to allow KAIST to jump Paulina's priority interest in the KIP entities' assets—as evidenced by the fact that this section of KAIST's brief contains zero citation to any legal authority whatsoever. *See id.* at Section II(b). Nor does KAIST include any citation for these facts to its Complaint, acknowledging that it has (once again) conjured up new facts in lieu of responding to Paulina's arguments. Ultimately, KAIST has no argument grounded in law or fact for why the law of unjust enrichment could allow an unsecured creditor like KAIST to leapfrog over a secured creditor like Paulina.

### III.     Paulina Does Not Object to Remaining a Nominal Party

Perhaps understanding the futility of its affirmative claims against Paulina, KAIST argues that even if dismissal is appropriate, Paulina should remain in this litigation as a nominal party due to Paulina's potential interest in KAIST's requests for declaratory and injunctive relief against the KIP Entities. Paulina has no objection to remaining a nominal party if any of KAIST's claims survive the KIP entities' motion to dismiss. However, Paulina waives none of its rights, and vigorously disputes that KAIST could ever be entitled to any relief that would preclude the KIP entities from satisfying Paulina's own claims or judgment against them.

### IV.     KAIST's Claims Against Paulina Should Be Dismissed With Prejudice

KAIST's tortious interference and unjust enrichment claims against Paulina should be dismissed with prejudice. While true that "leave to amend pleadings should be freely given," *Standard v. Nygren*, 658 F.3d 792, 801–02 (7th Cir. 2011), KAIST has already had two opportunities to craft a complaint against Paulina that could state a proper claim, and it has failed even to engage with the case law Paulina cited in its brief. What's more, even KAIST's attempted re-engineering of the facts in its opposition brief fails to identify any potential facts KAIST might assert that could state a plausible claim. KAIST has "already received an opportunity to remedy

11

these deficiencies" in its complaint, and its opposition brief makes clear it has no law to support its claims. *Always Towing & Recovery, Inc. v. City of Milwaukee*, 2 F.4th 695, 707 (7th Cir. 2021). Three attempts are enough. Dismissal should be granted with prejudice.

## V. Conclusion

For the reasons stated herein and in its initial memorandum and motion, Dkt. 34 & 35, Paulina's motion to dismiss Counts VI and VII should be granted.

Dated: August 15, 2022

Respectfully submitted,

*/s/ Steven M. Biskupic*
Steven M. Biskupic, SBN 1018217
Justin J. Dreikosen, SBN 1094426
BISKUPIC & JACOBS, S.C.
1045 West Glen Oaks Lane, Suite 106
Mequon, WI 53092
sbiskupic@biskupicjacobs.com
Office: (262) 241-3300
Fax: (866) 700-7640

*/s/ Adam L. Hoeflich*
Adam L. Hoeflich (No. IL 6209163)
Anastasiya Maione (No. IL 6327120)
Lee Mason (No. IL 6330090)
BARTLIT BECK LLP
54 W. Hubbard Street, Suite 300
Chicago, IL 60654
(312) 494-4400
adam.hoeflich@bartlitbeck.com
stacy.maione@bartlitbeck.com
lee.mason@bartlitbeck.com

Jason C. Murray (No. CO 43652)
BARTLIT BECK LLP
1801 Wewatta Street, Suite 1200
Denver, CO 80202
(303) 592-3100
jason.murray@bartlitbeck.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 15th day of August, 2022, a copy of the foregoing document was served via electronic service through the Court's electronic filing system on all counsel of record.

*/s/ Steven M. Biskupic*
Steven M. Biskupic
